1  EVAN R. MOSES, CA Bar No. 198099
   evan.moses@ogletree.com
2  OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
   400 South Hope Street, Suite 1200
3  Los Angeles, CA  90071
   Telephone:    213-239-9800
4  Facsimile:    213-239-9045

5  ERICA J. CHEE, CA Bar No. 255720
   erica.chee@ogletree.com
6  OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
   3800 Howard Hughes Parkway, Suite 1500
7  Las Vegas, NV  89169
   Telephone:    702-369-6800
8  Facsimile:    702-369-6888

9

   Attorneys for Defendant
10 FASTENAL COMPANY

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIESHIA MARIE JACKSON, on behalf of herself and all others similarly situated;<br><br>Plaintiff,<br><br>vs.<br><br>FASTENAL COMPANY, a Minnesota Corporation; and Does 1 through 20, inclusive;<br><br>Defendants. | Case No.<br><br>**DEFENDANT FASTENAL COMPANY'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441, 1446, AND 1453**<br><br>[Filed concurrently Declaration of Sheryl Lisowski; Declaration of Mary Malmin; Declaration of Evan R. Moses; Certification of Interested Entities or Persons; and Civil Case Cover Sheet]<br><br>[Stanislaus County Superior Court<br>Case No. CV-20-000431]<br><br>State Court Action Filed: January 21, 2020 |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, PLAINTIFF AND HER ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that Defendant Fastenal Company ("Fastenal" or "Defendant") hereby removes the above-captioned action from the Superior Court of the State of California, County of Stanislaus ("Stanislaus County Superior Court"), to this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453. As discussed below, this Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA").

I. **THE STATE COURT ACTION**

1. On January 21, 2020, Plaintiff initiated the action by filing an unverified Class Action Complaint ("Complaint") in the Stanislaus County Superior Court, entitled *Mieshia Marie Jackson v. Fastenal Company, and Does 1 through 20,* Case No. CV-20-000431. The Complaint asserts claims for: (1) Failure to Pay Overtime Wages (California Labor Code §§ 510 and 1198); (2) Failure to Provide Compliant Rest Breaks and/or Pay Missed Rest Break Premiums (California Labor Code § 226.7; IWC Wage Order); (3) Failure to Provide Compliant Meal Periods and/or Pay Missed Meal Period Premiums (California Labor Code §§ 226.7; 512); (4) Failure to Reimburse Business Expenses (California Labor Code § 2802); (5) Failure to Provide Complete and Accurate Wage Statements (California Labor Code § 226(A)); (6) Waiting Time Penalties (California Labor Code §§ 201-203); (7) UCL Violations; and (8) PAGA Penalties (California Labor Code § 2699, *et seq.*).

2. Plaintiff mailed Fastenal copies of the Summons and Complaint on January 24, 2020 to Fastenal's attorney of record, and service was completed on February 3, 2020 pursuant to California Code of Civil Procedure § 415.20(a). Declaration of Evan R. Moses ("Moses Decl.") ¶ 2. A true and correct copy of the Complaint, Summons and other documents that Plaintiff served on Fastenal are attached hereto as **Exhibit A**.

3. On February 3, 2020, Fastenal acknowledged receipt of a copy of the Summons, Complaint, and other documents that Plaintiff served on Fastenal. Moses Decl., ¶ 3. A true and correct copy of Fastenal's Notice and Acknowledgment of Receipt is attached hereto as **Exhibit B**.

4. On February 20, 2020, Plaintiff filed a Notice of Change of Address for Plaintiff's co-counsel, Melmed Law Group, P.C. Moses Decl., ¶ 4. A true and correct copy of the Notice of Change of Address is attached hereto as **Exhibit C**. Fastenal is informed and believes that Exhibits A, B, and C constitute the entire case file in Stanislaus County Superior Court related to this action.

5. Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the First Amended Complaint and the citizenship of "Doe" defendants is disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

6. <u>This Notice is Timely</u>. This Notice of Removal is timely filed within 30 days following service on February 3, 2020 of the Summons and Complaint upon Defendant. *See* 28 U.S.C. § 1446(b); *Murphy Bros, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) (30-day deadline to remove to federal court commences upon service of the summons and complaint).

## II. THE FEDERAL COURT'S JURISDICTION AND REMOVABILITY UNDER CLASS ACTION FAIRNESS ACT ("CAFA")

7. This action is one over which this Court has original jurisdiction under CAFA and is one which may be removed by Crown pursuant to 28 U.S.C. §§ 1332, 1441 and 1453, because (1) the number of putative class members in the plaintiff class exceeds 100, (2) the amount in controversy exceeds $5 million, and (3) there exists minimal diversity between the plaintiffs and defendants. 28 U.S.C. § 1332(d)(2),(6). *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).[1]

### A. The Size of the Putative Class Exceeds 100

8. In his Complaint, Plaintiff defines the proposed class as follows: "[A]ll hourly non-exempt individuals who are or were employed by Defendant in California from four years prior to the filing of this Complaint through the date of trial." Ex. A, ¶ 2.

////

---

[1] Defendant is the only named defendant in this matter and, thus, there are no other defendants to consent to removal. Furthermore, an action may be removed by a single defendant under CAFA without the consent of the other defendants. *See* 28 U.S.C. § 1453(a).

9. Fastenal's employment records show that there are over 968 full-time and 1,728 part-time current and former employees of Fastenal within the four-year period prior to filing the lawsuit ("putative class members"). Declaration of Mary Malmin ("Malmin Decl.") ¶ 4.

10. Accordingly, the CAFA numerosity requirement is fulfilled because there are more than 100 class members implicated in Plaintiff's Complaint. 28 U.S.C. § 1332(d).

### B. The Parties Have Diversity of Citizenship

11. <u>Plaintiff Is A Citizen Of California</u>. For purposes of diversity, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Moreover, a party's residence is *prima facie* evidence of his or her domicile. *State Farm Mutual Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).

12. Plaintiff alleges (and therefore concedes) that she "is and was at all times relevant . . . a resident of Stanislaus County, California." Ex A, ¶ 12. Likewise, Defendant's payroll and employment-related records confirm that throughout her employment with Defendant, Plaintiff has lived in the State of California, including the home address that Plaintiff provided for payroll purposes. Malmin Decl., ¶ 2. Therefore, Plaintiff is a citizen of the State of California.

13. Members of the proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California. *See, e.g.*, *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of citizenship).

14. <u>Defendant Is A Citizen Of Minnesota; It Is Not A Citizen of California</u>. Pursuant to 28 U.S.C § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The United States Supreme Court established that the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *The Hertz Corporation v. Friend,* 130 S.Ct. 1181 (2010). There, the Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 1184. The Court further clarified that the principal place of

business is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control and coordination."

15. Fastenal, both at the time of the filing of this action and currently is incorporated in the State of Minnesota. *See* Declaration of Sheryl Lisowski ("Lisowski Decl.") filed herewith, ¶ 2. Defendant's principal place of business, both at the time of the filing of this action and currently is located in the State of Minnesota. *See* Lisowski Decl., ¶ 2. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." For the purposes of federal diversity jurisdiction, Fastenal is a citizen of the State of Minnesota. Fastenal is not a citizen of the State of California.

16. The citizenship of fictitiously-named "Doe" defendants is to be disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *Newcomb v. Adolf Coors Co.*, 157 F.3d 686 (9th Cir. 1998). As such, complete diversity of citizenship exists in this matter between Plaintiff and all non-fraudulently joined defendants.

17. Accordingly, the minimal diversity requirement of 28 U.S.C. 1332(d) is met in this action because Defendant is a citizen of Minnesota while Plaintiff, a putative class member, is a citizen of California.

**C.     The Amount in Controversy Exceeds an Aggregate of $5,000,000**

18. Plaintiff has not alleged a specific amount in controversy in the Complaint. In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

////

19. In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements" adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

20. While Fastenal denies the validity of Plaintiff's claims and requests for relief, and does not concede in any way that the allegations in the Complaint are accurate, that Plaintiff's claims are amenable to classwide treatment, or that Plaintiff or the purported class are entitled to any of the requested relief, if the allegations in the Complaint are accepted as true it is more likely than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino*, 506 F.3d at 700. This conclusion is supported by the plain language of Plaintiff's Complaint, the concurrently filed declaration from Mary Malmin,[2] and the business records upon which Ms. Malmin's testimony is predicated.

////

---

[2] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from defendants and their counsel constitute sufficient evidence to establish the amount in controversy. *See, e.g.*, *Muniz*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N. D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, payperiods [sic] and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold).

21. In determining the amount in controversy to support its Notice of Removal, Fastenal relies here on a conservative calculation of the amount in controversy based only on damages sought by Plaintiff as a result of the alleged: (1) unpaid overtime wages; (2) unpaid meal and rest break premiums (3) failure to timely pay all wages owed upon termination; and (4) failure to provide accurate wage statements. Because the amounts in controversy for these claims alone satisfy the jurisdictional minimum requirement of $5 million, Defendant does not include additional amounts placed in controversy by Plaintiff's remaining allegations, including potential recoveries relating to Defendant's alleged (1) failure to pay minimum wages; (2) unreimbursed expenses; (3) wages not timely paid during employment; (4) failure to keep requisite payroll records; and (5) PAGA penalties resulting from Labor Code violations.

### 1. The Amount Placed in Controversy by the Overtime Claim Exceeds $1,599,768.00

22. In her First Cause of Action, Plaintiff alleges that Defendant "willfully violated the provisions of Labor Code §§ 510, 1194 and 1199" when it required "Plaintiff, the Class Members, and the Aggrieved Employees to work in excess of eight (8) hours in a day, and/or excess of forty (40) hours in a workweek without compensating them at the rate of one-half ( 1/1/2) their regular rate of pay." Ex. A, ¶ 21.

23. Plaintiff also alleges that the failure to pay overtime constitutes unfair competition within the meaning of the UCL. Ex. A, ¶ 96. The statute of limitations for claims under the UCL is four years. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"); *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178-179 (2000) (the four-year statute of limitations applies to any UCL claim, notwithstanding that the underlying claims have shorter statutes of limitation). Accordingly, the measure of potential damages for the unpaid overtime claim is based on a four-year limitations period.

24. Based on Fastenal's records, the putative class members worked more than 533,256 shifts over 5 hours between the four years prior to the filing of the Complaint and the present

////

25. Malmin Decl., ¶ 5. By dividing this number by five, we arrive at 106,651.20 workweek equivalents (533,256 shifts / 5).

26. Between January 21, 2016 and January 2020, the lowest hourly rate received by any putative class member was $10.00 per hour, although the mean amount is substantially higher.[3] *Id.,* ¶ 6. Thus, the lowest hourly overtime rate of any putative class member from June 21, 2016 to the present is $15.00 per hour (the time and half value of the lowest hourly rate of $10.00).

27. Based on a conservative analysis of a violation rate of only one unpaid hour of overtime per employee per each five-day week, the amount placed in controversy on this claim exceeds **$1,599,768.00** ($15 x 1 x 106,651.20).[4]

28. An estimate of one hour of unpaid overtime for every week of work has been accepted by the federal courts as a reasonable and conservative figure. *See Jasso v. Money Mart Express, Inc*., No. 11-CV-5500 YGR, 2012 WL 699465, at *5-6 (N. D. Cal. Mar. 1, 2012) (holding that calculating at least one violation per week was a "sensible reading of the alleged amount in controversy"); *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM (JCx), 2011 WL 1790123, at *6-7 (C.D. Cal. May 9, 2011). This is especially the case where, as here, Plaintiff fails to provide specific allegations concerning the frequency of which she worked overtime without being provided the requisite compensation. *See Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKX), 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016).

////

////

---

[3] From January 21, 2016 to January 31, 2020, the hourly rate of pay for putative class members was at least $10.00 per hour. Malmin Decl., ¶ 6. From January 21, 2016 to January 31, 2020, the average hourly rate for non-exempt part-time employees was $13.13 per hour and for full-time employees was $16.85 per hour. *Id.* From January 21, 2017 to January 31, 2020, the average hourly base rate for non-exempt part-time employees was $13.58 per hour and for full-time employees was $16.69 per hour. *Id.* Between January 21, 2016 and January 31, 2020, the lowest hourly rate for any non-exempt part-time employee was $10.00 per hour and for non-exempt full-time employees was $11.54 per hour. *Id.* For purposes of these calculations, Fastenal has conservatively used the lowest hourly rate of $10.00.

[4] In light of the Complaint's allegations that Defendant's purported failure to pay overtime wages was extensive, "it is reasonable to assume a 100% violation rate in calculating the amount in controversy for this cause of action." *Altamirano v. Shaw Industies, Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, *11 (N.D. Cal. June 14, 2013).

### 2. The Amount Placed in Controversy by Plaintiff's Rest Break Claims Exceeds $1,157,374

29. In her Second Cause of Action, Plaintiff alleges "Defendant[] failed to provide Plaintiff, the Class Members and the Aggrieved Employees with a duty-free rest periods of not less than ten (10) minutes for every major fraction of four (4) worked as required by Labor Code § 226.7 and the applicable IWC Wage Order." Ex. A, ¶ 28. Plaintiff further alleges that "Defendant[] willfully required Plaintiff and the other class members to work during rest periods and failed to pay Plaintiff and the other class members the full rest period premium for work performed during rest periods. Ex. A, ¶ 61.

30. Plaintiff also alleges that the failure to pay rest break constitutes unfair competition within the meaning of the UCL, and therefore the applicable statute of limitations for the meal and rest break claims is four years. Bus. & Prof. Code § 17208.

31. Under California law, employees who miss rest and meal periods are entitled to one hour of premium pay for each day that a meal or a rest period is missed. *See Marlo v. United Parcel Serv., Inc.*, 2009 WL 1258491, at *7 (C.D. Cal. May 5, 2009). Rest and meal period claims are properly considered in determining the amount in controversy. *See, e.g., Muniz*, 2007 WL 1302504, at *4; *Helm v. Alderwoods Grp., Inc.*, 2008 WL 2002511, at *8 (N.D. Cal. May 7, 2008).

32. The putative class members worked more than 578,687 shifts over 3.5 hours during the four-year period from January 21, 2016, to the present. Malmin Decl. ¶ 5. Thus, the putative class members worked 115,737.40 workweek equivalents (578,687 shifts / 5).

33. Based on a conservative analysis of a violation rate of only one rest period per employee per five-day workweek equivalent[5], the putative class members the amount placed in controversy on this claim exceeds **$1,157,374** ($10.00 minimum regular hourly rate for putative class members x 1 missed rest period per workweek x 115,737.40 workweek equivalents).

---

[5] While Fastenal does not make the assumption of a 100% violation rate, here, it has the grounds to do so because no fact-specific allegations are set forth in the Complaint to indicate that the putative class or violation rate would be discernibly smaller than 100 percent. Therefore, it would be appropriate to rely on a 100 percent violation rate when calculating the amount in controversy. *See Muniz v. Pilot Travel Ctrs., LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007).

### 3. The Amount Placed in Controversy by Plaintiff's Meal Break Claims Exceeds $1,066,512

34. In her Third Cause of Action, Plaintiff alleges, "Defendant[] violated Labor Code § 512 by requiring Plaintiff, the Class Members, and the Aggrieved Employees to work through or shorten their meal periods without receiving proper compensation and without entering into a lawful on-duty meal period agreement." Ex. A, ¶ 24. Plaintiff further alleges, "Plaintiff and the Class Members were denied the 30-minute off-duty meal periods to which they were entitled." Ex. A, ¶ 69.

35. Plaintiff also alleges that the failure to pay meal break constitutes unfair competition within the meaning of the UCL, and therefore the applicable statute of limitations for the meal and rest break claims is four years. Bus. & Prof. Code § 17208.

36. Based on Fastenal's business records, between January 21, 2016 and the present, the putative class members worked more than 533,256 shifts over five hours in duration. Malmin Decl., ¶ 5. Thus, the putative class members worked 106,651.20 workweek equivalents (533,256 shifts / 5).

37. Based on a conservative analysis of a violation rate of only one meal period per employee per workweek[6], the amount placed in controversy on this claim exceeds **$1,066,512** ($10.00 minimum regular hourly rate for putative class members x 1 missed meal period per workweek x 106,651.20 workweek equivalents).

### 4. The Amount Placed in Controversy by the Non-Compliant Wage Statement Claim Exceeds $6,372,650.

38. In her Fifth Cause of Action, Plaintiff alleges that Defendant "knowingly and intentionally failed to provide Plaintiff, the Class Members and the Aggrieved Employees with accurate itemized wage statements in violation of Labor Code § 226(e)." Ex. A, ¶ 37. Plaintiff

---

[6] While Fastenal does not make the assumption of a 100% violation rate, here, it has the grounds to do so because no fact-specific allegations are set forth in the Complaint to indicate that the putative class or violation rate would be discernibly smaller than 100 percent. Therefore, it would be appropriate to rely on a 100 percent violation rate when calculating the amount in controversy. *See Muniz v. Pilot Travel Ctrs., LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007).

further alleges that "Defendant[] failed to include required information on Plaintiff's and the Class' wage statements, including the gross wages earned, the total hours worked, the net wages earned, and all the applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate." Ex. A, ¶ 84.

39. Labor Code § 226(e) provides that employees are entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which the violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000).

40. The statute of limitations for a claim for wage statement penalties under Labor Code § 226(e) is one year. Cal. Civ. Proc. Code § 340(a).

41. Fastenal issued in excess of 64,877 wage statements to 2,301 putative class members between January 21, 2019 and the present. Malmin Decl., ¶ 7. Thus, according to Plaintiff's allegations and the Labor Code, the amount placed in controversy on this claim exceeds **$6,372,65** ((2,301 initial wage statements x $50) + (62,576 subsequent wage statements x $100)) as the alleged amount in controversy for Plaintiff's class claim under the Fifth Cause of Action.

42. An estimate of one wage statement violation for every pay period is reasonable. In *Altamirano v. Shaw Industries, Inc.*, 2013 WL 2950600, *11 (N.D. Cal. June 14, 2013), the district court held that it was "reasonable to assume that each putative class member suffered at least one violation during any given pay period, resulting in an inaccurate wage statement," in light of the plaintiff's allegations "about the pervasiveness of the policies that are the subject of the first three causes of actions" for failure to pay minimum wages, failure to pay overtime wages, and failure to provide meal periods. Moreover, given Plaintiff's allegations that the putative class members were not properly compensated minimum wage, overtime, or meal and rest break premiums, Plaintiffs claim that each putative class members suffered at least one wage statement violation during any given pay period. Thus, "it is reasonable to assume a 100% violation rate in calculating the amount in controversy for this cause of action." *Id.*

43. In *Altamirano v. Shaw Industies, Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, *11 (N.D. Cal. June 14, 2013), the district court held that it was "reasonable to assume that each

putative class member suffered at least one violation during any given pay period, resulting in an inaccurate wage statement," in light of the plaintiff's allegations "about the pervasiveness of the policies that are the subject of the first three causes of actions" for failure to pay minimum wages, failure to pay overtime wages, and failure to provide meal periods. 2013 WL 2950600, at *11. Here, given Plaintiffs' allegations that the putative class members were not properly compensated on a *daily* basis, Plaintiffs' claim that each putative class members suffered at least one violation during any given pay period. Thus, "it is reasonable to assume a 100% violation rate in calculating the amount in controversy for this cause of action." *Altamirano*, 2013 WL 2950600, at *11.

### 5. **The Amount Placed in Controversy by Plaintiff's Failure to Timely Pay Final Wages and Waiting Time Penalties Claim Exceeds $2,565,000**

44. In their Sixth Cause of Action, Plaintiffs allege that Defendant "willfully failed to pay Waiting Time Penalty for their meal period premiums, rest period premiums, and unpaid overtime wages at the proper rates, prior to or upon termination or separation from employment" Ex. A, ¶ 91. In addition, Plaintiffs aver that Defendant owes its former employees continued compensation for each day they were not paid up to a thirty (30) day maximum pursuant to California Labor Code § 203, *Id*. at ¶¶ 91, 92.

45. Section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonwork days," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month." *Mamika v. Barca*, 68 Cal. App. 4th 487, 492-93 (1998). As the "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, that wrong "continues so long as payment is not made"; therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days." *Id*. at 493.

46. Here, Plaintiffs' Section 203 claim is not premised only on the theory that Defendant failed to timely deliver final paychecks to terminated employees; rather, Plaintiffs contend that Defendant owes penalties at least in part as a result of its purported failure to pay all wages owed during their employment, including, "meal period premiums, rest period premiums, and unpaid overtime wages." Ex. A, ¶ 91. In light of the fact that, through their Complaint,

Plaintiffs are also seeking to recover alleged unpaid minimum wage and overtime wages allegedly owed, it is clear that Plaintiffs' theory is that such alleged unpaid wages still have not been paid to Plaintiffs and putative class members. It is, therefore, reasonable to calculate the amount in controversy for this claim based on a maximum 30-day penalty calculated at each former employee's daily wage rate. *See Quintana v. Claire's Stores, Inc.*, No. 13-0368-PSG, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding that the defendants' waiting time penalties calculation was "supported by Plaintiffs' allegations" and was "a reasonable estimate of the potential value of the claims" where the complaint alleged that the defendants "'regularly required'" putative class members to work off-the-clock without compensation, and the defendants estimated that each putative class member "potentially suffered at least one violation that continues to be unpaid"); *Stevenson v. Dollar Tree Stores, Inc.*, No. CIV S-11-1433 KJM, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (finding it reasonable for the defendant to assume, in light of the allegations in the complaint that members of the putative class "'routinely'" missed meal periods, that "all members of the proposed class . . . would have missed a meal period as described in the complaint at least once and were thus entitled to the waiting time penalty").

47. The statute of limitations for waiting time penalty claims pursuant to Section 203 is three years. Cal. Code Civ. P. 338(a); *Pindeda v. Bank of Am.*, 50 Cal. 4th 1389 (2010).

48. Based on a review of Fastenal's business records, between January 21, 2017 (three years prior to the filing of the Complaint) and January 21, 2020, the employment of 1,425 putative class members ended. Malmin Decl., ¶ 8. During this period, the lowest hourly rate for putative class members was $10.00. Malmin Decl., ¶ 6. The terminated putative class members worked an average of 6.94 hours of employment. Malmin Decl., ¶ 8. However, for its calculations, Fastenal used a conservative calculation of a 6-hour workday.

49. Thus, according to Plaintiff's allegations, the terminated putative class members are entitled to recover **$2,565,000** (30 days x $10 x 6-hour workday x 1,425 terminated putative class

////

////

////

members) as the alleged amount in controversy for Plaintiff's class claim under the Sixth Cause of Action.[7]

### 6. **Plaintiff's Prayer for Attorneys' Fees Places An Additional $3,190,326.00 In Controversy**

50. Plaintiff seeks attorneys' fees on behalf of the putative class. Ex. A, Prayer for Relief. Attorneys' fees are properly included in the amount in controversy. *See, Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) (statutorily-mandated attorneys' fees are properly included in the amount in controversy for CAFA jurisdiction purposes); *see also Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (attorneys' fees may properly be included in calculation of the amount of controversy where an underlying statute authorizes an award of attorneys' fees).

51. In class action litigation, courts routinely grant attorneys' fees awards that range from 25% to 33% of the settlement or verdict amount. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (awarding 30% attorneys' fee award and compiling cases where a range of attorneys' fee award ranged between 25% and more than 40%). Accordingly, including attorneys' fees of 25% is reasonable when calculating the amount in controversy. *See, e.g., Giannini v. Northwestern Mut. Life Ins. Co.*, No. C 12-77 CW, 2012 WL 1535196, at *4 (N.D. Cal. Apr. 30, 2012) (holding that defendant's inclusion of attorneys' fees to satisfy amount in controversy was reasonable where defendant's "base this amount by multiplying by twenty-five percent the sum of the amounts placed in controversy by the four claims" asserted by plaintiff); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *6-7 (N.D. Cal. Mar. 1, 2012) (holding that "it was not unreasonable for [Defendant] to rely on" an "assumption about the attorneys' fees recovery as a percentage of the total amount in controversy" and noting that "it is well established

---

[7] In light of the Complaint's allegation that Defendant's purported failure to timely pay all wages due upon termination was extensive, "it is reasonable to assume a 100% violation rate in calculating the amount in controversy for this cause of action." *Altamirano*, 2013 WL 2950600, at *11.

that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees.'") (citation omitted).

52. Additionally, the Ninth Circuit has confirmed that future attorneys' fees must be included in an amount in controversy calculation under CAFA. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785 (9th Cir. 2018). Accordingly, assuming the low-end 25% figure reflected in the case law, a reasonable and conservative assumption for purposes of establishing the amount-in-controversy, attorneys' fees in this matter would amount to at least 25% of the unpaid wages and penalties sought, which, as detailed above, amount to $3,190,326 ($1,599,768 + $1,157,374 + $1,066,512 + $2,565,000 + $6,372,650). Plaintiff's prayer for attorney's fees therefore adds at least **$3,190,326** (25% of $12,761,304) to the amount-in-controversy.

### 7. Summary of the Amount Placed In Controversy

53. As described above, a reasonable and conservative calculation of the amount placed in controversy by Plaintiff's claims for unpaid overtime, meal break premiums, rest break premiums, waiting time penalties and wage statement penalties exceeds $5,000,000.

| Claim | Amount in Controversy |
|---|---|
| Unpaid Overtime | $1,599,768 |
| Rest Period Claims | $1,157,374 |
| Meal Period Claims | $1,066,512 |
| Waiting Time Penalty Claim | $2,565,000 |
| Wage Statement Claim | $6,372,650 |
| Attorneys' Fees | $3,190,326 |
| **Total** | **$15,951,630** |

54. Consequently, the amount placed in controversy by Plaintiff's claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

////

////

III. **THE PROCEDURAL REQUIREMENTS OF 28 U.S.C. § 1146 ARE SATISFIED**

55. In accordance with 28 U.S.C. §1446(a), this Notice of Removal is filed in the District in which the action is pending. The Stanislaus County Superior Court is located within the Eastern District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

56. In accordance with 28 U.S.C. §1446(a), copies of all process, pleadings, and orders served upon Defendants are attached as Exhibits to this Notice.

57. In accordance with 28 U.S.C. §1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Stanislaus. Notice of compliance shall be filed promptly afterward with this Court.

58. As required by Federal Rule of Civil Procedure 7.1, Defendant concurrently filed its Certificate of Interested Parties.

59. <u>Intradistrict Assignment</u>: Pursuant to Local Rule 3-2, Removal and Intradistrict Assignment to the Fresno Division of this Court is proper because the alleged acts and occurrences arose in the County of Stanislaus.

WHEREFORE, Fastenal removes the above-captioned action to the United States District Court for the Eastern District of California.

DATED: March 4, 2020

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: _____
EVAN R. MOSES
ERICA J. CHEE

Attorneys for Defendant
FASTENAL COMPANY