**ACKERMANN & TILAJEF, P.C.**
Craig J. Ackermann (SBN 229832)
cja@ackermanntilajef.com
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Phone: (310) 277-0614
Fax: (310) 277-0635

**MELMED LAW GROUP P.C.**
Jonathan Melmed (SBN 290218)
jm@melmedlaw.com
Kyle D. Smith (SBN 280489)
ks@melmedlaw.com
1801 Century Park East, Suite 850
Los Angeles, California 90067
Phone: (310) 824-3828
Fax: (310) 862-6851

Attorneys for Plaintiff, the Putative Class,
the LWDA and the Aggrieved Employees

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIESHIA MARIE JACKSON, an individual on behalf of herself, the State of California, as a private attorney general, and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>    v.<br><br>FASTENAL COMPANY, a Minnesota Corporation; and DOES 1 TO 20,<br><br>        Defendants. | CASE NO.:  1:20-cv-000345-NONE-SAB<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:      November 24, 2021<br>Time:     9:30 a.m.<br>Judge:    Stanley A. Boone<br>Dept.:     Courtroom 9<br><br>Action Filed: January 21, 2020<br>Removal Date: March 4, 2020 |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     BACKGROUND .................................................................................. 2

    A.    The Parties and the Putative Class ............................................ 2

    B.    Procedural History, Informal Discovery, Mediation, and Settlement ........... 2

III.    SUMMARY OF THE PROPOSED SETTLEMENT ................................ 3

IV.     THE COURT SHOULD APPROVE THE SETTLEMENT ....................... 6

    A.    The Settlement Class Satisfies Fed. R. Civ. P. 23(a) and (b) ............. 6

        1.    Rule 23(a)(1) Numerosity ............................................... 6
        2.    Rule 23(a)(2) Commonality ............................................. 6
        3.    Rule 23(a)(3) Typicality ................................................. 7
        4.    Rule 23(a)(4) Adequacy ................................................. 7
        5.    Rule 23(b)(3) Predominance ............................................ 8

    B.    The Settlement is Fair, Reasonable, and Adequate. ....................... 9

    C.    The Settlement Amount is a Fair Compromise in Light of the Litigation Risks and Uncertainties. ......................................... 10

    D.    Summary of Plaintiff's Claims ................................................. 10

    E.    Summary of Defendant's Defenses ........................................... 16

    F.    Fair Valuation of Plaintiff's Claims ......................................... 20

    G.    The Parties Investigated this Matter to Allow Counsel and this Court to Conclude that the Settlement is Fair and Reasonable. ................. 22

    H.    The Settlement was the Product of Informed, Non-Collusive, and Arms'-Length Negotiations Between Experienced Counsel Who Jointly Support the Settlement. ............................................... 22

    I.    The Proposed Class Notice is Adequate ................................... 23

    J.    The Requested Service Award is Reasonable. ............................. 24

    K.    The Requested Attorneys' Fees and Costs Are Reasonable. ............ 24

V.      CONCLUSION .................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Abdullah v. U.S. Security Associates, Inc.* (9th Cir. 2013) 731 F.3d 952, 958–959 ................................ 16

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).......................................................................................................................... 10

*Augustus v. ABM Security Services, Inc.* (2016) 2 Cal. 5th 257, 269 ........................................................ 9

*Bell, et al. v. Home Depot U.S.A., Inc.*, Case No. 2:12-cv-02499-JAM-CKD (E.D. Cal. April 10, 2017)
    .................................................................................................................................................... 12, 19

Bernstein v. Virgin America Inc., *2021 U.S. App. LEXIS 5197 (Feb. 23, 2021)* ..................................... 22

*Bond v. Ferguson Enterprises, Inc.*, No. 1:09–cv–1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. June
    30, 2011) ......................................................................................................................................... 27

*Bono Enterprises, Inc. v. Bradshaw*, 32 Cal.App.4th 968, 977 (1995) ..................................................... 20

*Brinker Rest. Corp. v. Sup. Ct.* (2012) 53 Cal.4th 1004 ........................................................................... 17

*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1039-1040................................... 14

*Cahilig v. IKEA U.S. Retail LLC*, Case No. 2:19-cv-01182-CJS-AS, Dkt. No,. 48, at pp. 4-5................. 9

*Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365, 375 (2005) .................................... 18

*Churchill Village, L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ........................................................................................................... 12

*Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178 (2000) ........................................... 18

*Donahue v. AMN Services, LLC*, Case No. S253677, Cal. Supreme Court (Feb 25, 2021).................... 15

*Fleming v. Covidien, Inc.* (C.D. Cal. Aug. 12, 2011) 2011 WL 7563047 ............................................... 22

Frlekin v. Apple Inc., 8 Cal. 5th 1038, 1051, 1056 (2020)........................................................................ 20

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17 n.8
    (N.D. Cal. Apr. 22, 2010) ............................................................................................................... 27

*General Tel. Co. v. Falcon*,
    457 U.S. 147, 157-8, n. 13 (1982) ................................................................................................... 10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ............................................................. 8

*Hubbs v. Big Lots Stores, Inc.*, No. LACV1501601JAKASX, 2018 WL 5264141, at *5 (C.D. Cal. Mar.
    16, 2018) ......................................................................................................................................... 19

*Ikonen v. Hartz Mountain Corp.*,
    122 F.R.D. 258, 262 (S.D.Cal. 1988) .............................................................................................. 9

*In re Beef Indus. Antitrust Litig.*,
607 F.2d 167 (5th Cir. 1979) ................................................................................ 11

*In Re Mercury Interactive Corp.*, 618 F.3d 988, 993-4 (9th Cir. 2010) ........................ 27

*In Re Mercury Interactive Sec. Litig.*, 618 F.3d 988, 993-4 (9th Cir. 2009) ..................... 5

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ............................................................................... 12

*Kileigh Carrington v.Starbucks Corporation, et al.*, San Diego Superior Court Case No. 37-2014-00018637-CU-OE-CTL (Apr. 3, 2017) ................................................................. 22

*Kirby v. Imoos Fire Protection, Inc.*, 53 Cal.4th 1244, 1248, 1255-57 (2012) .................. 6, 21

*Lampe v. Queen of the Valley*, 19 Cal.App.5th 832 (2018) ............................................ 21

*Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ........................................................................................ 24

*Lubin v. The Wackenhut Corp.* (2016) 5 Cal. App. 5th 926, 932 ..................................... 16

*Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308 (2018) ............................... 21

*Mamika v. Barca* (1998) 68 Cal.App.4th 487,492 ..................................................... 15

*Mendoza v. Tucson School Dist. No. 1*,
623 F.2d 1338, 1351 (9th Cir. 1980) ...................................................................... 26

*Moss et al. v. USF Reddaway, Inc.*, Case No. 5:15-cv-01541-JAK (FFM), Docket No. 80, at 11-12 ..... 10

Murphy v. Kenneth Cole Productions, Inc., 40 Cal.4th 1094, 1102 (2007) ........................ 6

*Naranjo v. Spectrum Security Services, Inc.,* 40 Cal. App. 5th 444 (Cal. Ct. App. Sept. 26, 2019) .......... 7

*Naranjo v. Spectrum Services, Inc.*, 40 Cal.App.5th 444, 474 (2019) ............................... 21

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ................................................................................ 11

*Ordonez v. Radio Shack, Inc.,* 2013 U.S. Dist. LEXIS 7868, *35-41 (C.D. Cal. Jan. 17, 2013) ............ 20

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) .................................................. 25

*Ritenour v. Carrington Mortg. Serves., LLC*, No. SACV1602011CJCDFMX, 2018 WL 5858658, at *10 (C.D. Cal. Sept. 12, 2018) ................................................................................. 19

*Stuart v. RadioShack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) .......... 27

*Wren v. RGIS Inventory Specialists*,
No. C–06–05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................................ 12

**Statutes**
Cal. Bus. & Prof. Code §§17200-17210 ................................................................. 17

Lab Code §§ 2699 .............................................................................................. 18

- iii -

Labor Code § 1194......................................................................................................... 14

Labor Code § 226........................................................................................................... 15

Labor Code § 226.7........................................................................................................ 12

Labor Code § 2802......................................................................................................... 17

Labor Code § 510........................................................................................................... 14

Labor Code § 512........................................................................................................... 16

Labor Code section 203 ................................................................................................. 15

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
1:20-CV-000345-NONE-SAB

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This motion seeks preliminary approval of a non-reversionary wage-and-hour class action settlement between Plaintiff Mieshia Marie Jackson ("Plaintiff") and Defendant Fastenal Company ("Defendant") for 1,771 employees of Defendant in the amount of $2,400,000. Plaintiff seeks to represent a settlement class of all hourly non-exempt individuals who are or were employed by Defendant in California at any point from January 21, 2016 through July 16, 2021 (the "Class Period") (hereinafter, "the Class" or "Class Members"). Plaintiff's principal claim was that, during the Class Period, Defendant promulgated an allegedly unlawful rest period policy that required Class Members to stay on the premises or in designated areas during their rest periods in violation of Labor Code § 226.7 and Section 12 of the applicable IWC Wage Order.  As shown below, courts disagree about whether such policies are, in fact, illegal and give rise to liability for rest break premiums and other derivative wage-hour claims.

Because the settlement is fair and reasonable, and was negotiated at arm's length between counsel at a private mediation presided over an experienced wage and hour mediator, it should be preliminarily approved. The settlement, if given approval by this Court, is to be paid out to all participating Class Members who do not opt-out, with approximately $1,738,000.00 to be distributed to participating Class Members (after deductions for the requested attorneys' fees, litigation costs, settlement administration costs, proposed PAGA payment to the LWDA, and Plaintiff's proposed Service Award).

Through this motion, Plaintiff respectfully requests that the Court enter an order: (1) conditionally certifying the Class under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only and preliminarily approving the settlement; (2) approving the proposed Class Notice and Share Form to be disseminated to Class Members pursuant to the Settlement Agreement;[1] (3) appointing CPT Group, Inc. ("CPT") as the Settlement

---

[1] The Notice of Proposed Class Action Settlement and Hearing Date for Court Approval and Share Form are attached to the Settlement Agreement as Exhibits 1 and 2, respectively.  (*See,* Declaration of Craig J.

Administrator; and (4) scheduling a hearing for final approval of the class settlement.

## II.  BACKGROUND

### A.  The Parties and the Putative Class

Defendant is an industrial supply company based in Winona, Minnesota. CJA Decl. ¶ 14. Plaintiff is a California resident and was employed by Defendant in California as a non-exempt employee during the relevant time period. Id. According to Defendant's counsel, as of October 31, 2020, the putative Class consisted of 1,771 Class Members. Id.

### B.  Procedural History, Informal Discovery, Mediation, and Settlement

On December 2, 2019, Plaintiff provided her notification to the LWDA that she intended on pursuing a PAGA representative action based on Defendant's violations of California Labor Code sections 201, 202, 203, 204, 210, 226.7, 510, 512, 1194, 1197.1, 1199, 2802, IWC Wage Order Nos. 9 and 7[2], UCL violations pursuant to Cal. Bus. & Prof Code section 17200, and statutory penalties based on the foregoing under PAGA.

On January 21, 2020, Plaintiff filed her class and representative action complaint in Stanislaus County Superior Court alleging the following causes of action: (1) failure to pay overtime wages (Labor Code §§ 510, 1198); (2) failure to provide compliant rest periods and/or pay rest period premiums (Labor Code § 226.7; IWC Wage Order); (3) failure to provide compliant meal periods and/or pay meal period premiums (Labor Code §§ 226.7, 512); (4) failure to reimburse business expenses (Labor Code §2802); (5) failure to provide compliant wage statements (Labor Code §226); (6) waiting time penalties (Labor Code §§ 201-203); (7) UCL violations; and (8) PAGA penalties (Labor Code § 2699 et seq.). Id. ¶ 15. On March 4, 2020, Defendant removed the case to the United States District Court, Eastern District of California. Id.

Shortly thereafter, the Parties agreed to a robust exchange of informal discovery and to attempt to resolve the action through private mediation. Id. ¶ 16. As part of its informal discovery production, Defendant produced, among other things, information

Ackermann in Support of Plaintiff's Motion for Order Granting Preliminary Approval of Class Action Settlement ("CJA Decl."), Ex. A).
[2] Some Class Members are subject to IWC Wage Order No. 9 and others to No. 7, but the relevant rest break provisions set forth at Section 12 of each Order are the same in both.

about the Class and Aggrieved Employees, including the class size, number of Aggrieved Employees and total number of weeks worked and pay periods during the Class Period and PAGA Periods, respectively; Plaintiff's personnel file and timesheets; a sampling of payroll data for the Class; and all relevant policies and handbooks. Id.

On March 1, 2021, the Parties attended a full-day mediation with wage and hour class action mediator Lou Marlin serving as the neutral. Id. ¶ 17. The negotiations at the mediation were at arm's length and non-collusive. Id. After a full-day mediation, the Parties were unable to settle the matter but after several weeks of further negotiations, with the assistance of Mr. Marlin, the Parties agreed to resolve the case on a class-wide basis and memorialized the agreement into a Memorandum of Understanding ("MOU"). Id. In the months that followed, the Parties drafted and executed the long form Settlement Agreement now before the Court for preliminary approval. Id.

### III.    SUMMARY OF THE PROPOSED SETTLEMENT

Under the terms of the Settlement Agreement ("S.A.") Defendant is discharged of all claims asserted in the lawsuit in exchange for Defendant's agreement to pay the Settlement Amount ("S.A.") of $2,400,000. The SA includes (1) the fees of the Settlement Administrator, not to exceed $20,000; (2) Plaintiff's Service Award of $7,500; (3) attorneys' fees of up to $600,000 (up to 25% of the Settlement Amount)[3]; (4) litigation expenses of up to $20,000; and (5) a payment to the LWDA in the amount of $18,000 as its share of the penalties pursuant to PAGA. (S.A., ¶ 7.1). The remaining net amount, an estimated $1,738,000.00 (the "Net Settlement Amount") will be distributed as Settlement Shares to all participating Class Members. Id. ¶ 1.9. The Net Settlement Amount will be distributed to Participating Class Members (i.e., all those who do not opt-out following the Class Notice distribution process) pro-rata based on their total workweeks worked as a Class Member during the Class Period. Id., ¶ 7.2.    No

---

[3] Plaintiff's counsel maintains that the attorneys' fees sought, and litigation costs are reasonable and appropriate, particularly given the Ninth Circuit's 25% benchmark for fees in common fund class action settlements. (CJA Decl., ¶¶ 74-78.). Nevertheless, ten calendar days prior to the end of the Class Notice Period, pursuant to In Re Mercury Interactive Sec. Litig., 618 F.3d 988, 993-4 (9th Cir. 2009), Plaintiff's counsel will file a motion for attorneys' fees and costs pursuant to Rule 54(d) that will be set for the same date as the final approval and fairness hearing. Id.

submission of a Claim Form will be required to receive a Settlement Share. Id.

No earlier than 28 days after the Preliminary Approval Date, Defendant shall provide the Settlement Administrator with data for each Class Member. Id., ¶ 6.4. Within 28 days following the Preliminary Approval Date, the Settlement Administrator shall determine the number of workweeks worked by each Class Member; populate the data for each Class Member accordingly; conduct a National Change of Address search to update any addresses provided; and thereafter mail a copy of the Notice to all Class Members by first class regular U.S. Mail, using the most current mailing address information provided by Defendant and/or obtained by the Settlement Administrator. Id. & Exs. 1 and 2. The Settlement Administrator will engage in address searches consistent with its normal practices, including skip tracing. Id.  The Class Notice will inform Class Members of their estimated share of the settlement and the number of workweeks they worked during the Class Period. Id. The Class Notice specifies the claims to be released.

The Parties agree that 20% of each Individual Settlement Amount shall constitute wages (each Class Participant will be issued an IRS Form W-2 for such payment), and 80% of each Individual Settlement Amount shall constitute penalties and interest (each Class Participant will be issued an IRS Form 1099 for such payment). Id. ¶ 5.5.[4]

Class Members may dispute their workweeks if they believe they worked more weeks in the Class Period than Defendant's records show by submitting information to the Settlement Administrator no later than 45 days after being mailed the Class Notice and Share Form by the Settlement Administrator, which is the defined Response Deadline. Id. ¶ 6.4. The Settlement Administrator will jointly work with Plaintiff and Defendant to resolve the dispute in good faith. Id. If Plaintiff and Defendant cannot agree

---

[4] Courts have issued conflicting rulings on whether rest break premiums are wage or non-wage claims under California law. *See, e.g., Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1102 (2007) (four year statute of limitations applies to premium claims, not the one year penalty limitations periods); cf. K*irby v. Imoos Fire Protection, Inc.*, 53 Cal.4th 1244, 1248, 1255-57 (2012) (no attorneys' fees pursuant to Labor Code sections 218.5 and 1194 because claim for rest break premium pay was not a suit to recover "wages"); *see also Naranjo v. Spectrum Security Services, Inc.,* 40 Cal. App. 5th 444 (Cal. Ct. App. Sept. 26, 2019) (rest break premiums do not trigger derivative wage statement penalties based on inaccurate listing of wages or penalties for failing to pay final wages due), review granted, 257 Cal. Rptr. 3rd 188 (Jan. 2, 2020).  Accordingly, this case could be viewed as having only resolved claims for non-wage premiums and derivative penalties that are all non-wage claims for tax purposes.

over the workweeks to be credited, the Settlement Administrator shall make the final decision based on the information presented by the Class Member and Defendant. Id.

Class Members who do not timely Opt Out of the Class Settlement will be deemed to participate in the Class Settlement without having to take any other action. Id. ¶ 6.5. To Opt Out of the Class Settlement, the Class Member must submit a letter or postcard to the Settlement Administrator by the Response Deadline. Id. Class Members who are also members of the PAGA Settlement Class shall have no right or ability to opt out of the portion of this Settlement Agreement releasing PAGA claims. Id.

The Class Notice shall inform Class Members of their right to object to the Settlement. Id. ¶ 6.6. Any Class Member who wishes to object to the Settlement must submit a written objection to the Settlement Administrator no later than the Response Deadline and must file with the Court, and serve on all parties a written statement of objection. Id. Only Class Participants may object to the Settlement. Id. If an objector also wishes to appear at the Final Approval and Fairness Hearing, in person or through an attorney, they must also file a notice of intention to appear at the same time as the objection is filed. Id. In the event that the Court approves this Settlement, Class Members who object to the Settlement will be bound by the Settlement.  Id. The class release in the Settlement Agreement corresponds to the claims pleaded in the Complaint. Id., ¶ I.34.[5]

Funds associated with checks that have not been cashed within 180 days will become void, and the amounts associated with those uncashed checks will be distributed

---

[5] "Released Claims" shall mean all claims, demands, suits, debts, obligations, damages, liabilities and causes of action alleged in the operative Complaint ("Complaint"), and all claims, demands, suits, debts, obligations, damages, liabilities, or causes of action which could have been alleged based on the facts and legal theories alleged in the Complaint, including: claims for failure to pay all wages due, failure to provide proper meal periods or proper meal premiums, failure to provide proper rest breaks or rest premiums, failure to reimburse for business expenses, failure to provide proper wage statements, failure to timely pay all wages when due or waiting time penalties; claims under California Labor Code §§ 201, 202, 203, 204, 210, 226, 226.2, 226.3, 226.7, 246, 510, 512, 1174, 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2802, Section 3, 11, and 12 of IWC Wage Order Nos. 9-201 and/or 7-2001; Unfair Competition Law (UCL) violations pursuant to Cal. Bus. & Prof. Code §17200 based on the foregoing; civil penalties based on the foregoing under California's Private Attorney Generals Act ("PAGA") (Labor Code §§ 2698-2699.5); and all damages, penalties, interest and other amounts recoverable under said causes of action under California and federal law, to the extent permissible, including but not limited to the California Labor Code as to the facts alleged in the Action, the applicable Wage Orders as to the facts alleged in the proposed complaint, and the California Unfair Competition Law. Id., ¶ I.34.

to Central California Legal Services, which provides free legal services to low-income populations in Fresno, Tulare, Kings, Merced, Mariposa, and Tuolumne Counties[6].

## IV.     THE COURT SHOULD APPROVE THE SETTLEMENT

Federal Rule of Civil Procedure 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification in Rule 23(a) and (b); and (2) that the settlement is fair, reasonable, and adequate (Rule 23(e)(2)). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Here, the requirements for preliminary approval are all satisfied.

### A. The Settlement Class Satisfies Fed. R. Civ. P. 23(a) and (b)

Rule 23(a) sets out four prerequisites for certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Rule 23(b)(3) further provides that a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

#### 1. *Rule 23(a)(1) Numerosity*

Numerosity is easily satisfied because there are approximately 1,771 members in the Settlement Class. *See, Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (40 members are numerous enough). CJA Decl., ¶ 14.

#### 2. *Rule 23(a)(2) Commonality*

The settlement class satisfies commonality in that all Class Members share, *inter alia,* the following legal and factual questions: (1) whether Defendant failed to provide and/or advise and authorize Plaintiff and the Class with compliant, duty free rest periods of not less than ten minutes for every major fraction of four hours worked and pay rest

---

[6] Further information about Central California Legal Services can be found at www.centralcallegal.org/pro-bono-opportunities.

period premiums[7]; (2) whether Defendant failed to provide Plaintiff and the Class complete wage statements in violation of Labor Code § 226(a); (3) whether Defendant failed to provide compliant meal periods and pay meal period premiums; (4) whether Defendant failed to pay overtime; (5) whether Defendant failed to reimburse the Class for business expenses incurred; and (6) whether Defendant failed to pay all wages due to former employees. *See e.g., Cahilig v. IKEA U.S. Retail LLC*, Case No. 2:19-cv-01182-CJS-AS, Dkt. No,. 48, at pp. 4-5 (finding commonality for settlement purposes in class action lawsuit challenge an on-premises rest break policy).

### 3. *Rule 23(a)(3) Typicality*

"Under [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. Here, typicality is satisfied because Plaintiff was subject to the same uniform policies and practices as the Class, and Plaintiff's claims are the same as claims that could be brought by Class Members. Declaration of Mieshia Marie Jackson ("MMJ Decl."), ¶¶ 2-6.

### 4. *Rule 23(a)(4) Adequacy*

Rule 23(a)(4) permits certification of a class only if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a)(4). Courts interpret this requirement to mean that (1) the proposed class representative(s) and their counsel do not have conflicts of interest with the proposed class; and (2) the plaintiff(s) and their counsel will vigorously prosecute the action on behalf of the class. *Hanlon*, 150 F.3d at 1020.  Here, the claims of the Class Members and the named Plaintiff are virtually coextensive and there is no conflict between Plaintiff or any other Class Member. CJA Decl. ¶ 2; *General Tel. Co. v. Falcon,* 457 U.S. 147, 157-8, n. 13 (1982). Additionally, Plaintiff understands the claims and theories that were alleged in the Action and have been involved throughout the litigation. CJA Decl. ¶ 53. Likewise,

---

[7] *See, Augustus v. ABM Security Services, Inc.* (2016) 2 Cal. 5th 257, 269 ("*ABM*" or "*Augustus*") (concluding that "during rest periods employers must relieve employees of all duties and relinquish control over how employees spend their time" and adding that employers in California cannot "tether" employees to their communication devices or to particular locations during their rest breaks).

Class Counsel have no conflicts of interest and have vigorously prosecuted the action on behalf of Plaintiff and the Settlement Class. Id.  ¶ 2. Ackermann & Tilajef, P.C. and Melmed Law Group P.C., both separately and together, have significant experience litigating class actions and have been certified by numerous state and federal courts as competent and adequate class counsel. Id. ¶¶ 4-12; Melmed Decl., ¶¶ 5-9.

5. *Rule 23(b)(3) Predominance*

Under Rule 23 (b)(3), plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating controversy. Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). In other words, courts must determine whether the focus of the proposed class action will be on the actions and conduct of the defendants rather than the behavior of individual class members. *Hanlon*, 150 F.3d at 1022-23. Here, as some courts have held, the common questions of whether Defendant failed to have a compliant written rest period policy, failed to relieve Class Members of all duties during their rest periods, failed to pay premium pay for non-compliant rest breaks in California, and whether these failures violate the law and trigger cascading 226 and 203 penalty claims, predominate over any potential individualized issues. *See, e.g.*, *El Pollo Loco*, Orange Ct. Sup. Ct., Case No. JCCP 4957 (July 30, 2018 ruling by Orange County Superior Court Judge William Claster certifying a class of El Pollo Loco employees in connection with Labor Code claims based on a challenge to a uniform on-premises rest break policy).

Further, this class action is a superior method of adjudication compared to numerous individual suits. To determine whether the class method is superior to other means of adjudicating the claims of many people, courts consider: (1) the interest of class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of

- 8 -

concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). Here, the superiority requirement is satisfied because it would be inefficient for 1,771 Class Members to file individual cases; certification will provide the Class with a viable method of obtaining redress for their relatively modest individual damages; and public policy supports the use of the class action device to secure the enforcement of statutes that focus on the workplace. *Hanlon*, 150 F.3d at 1023.

### B.    The Settlement is Fair, Reasonable, and Adequate.

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). In exercising their sound discretion to approve settlements, courts regularly consider whether the settlement is fair, non-collusive, and "all the normal perils of litigation as well as the additional uncertainties inherent in complex class actions." *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179-80 (5th Cir. 1979).   Included in this analysis are considerations of "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) citing *Hanlon*, 150 F.3d at 1026.

Importantly, there is a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C–06–05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Applying these factors, the proposed settlement is fair, reasonable, and adequate.

- 9 -

**C.**      **The Settlement Amount is a Fair Compromise in Light of the Litigation Risks and Uncertainties.**

The Settlement represents a fair compromise given the risks and uncertainties presented by continued litigation. CJA Decl. ¶ 53. Defendant asserted and would have continued to assert legal and factual grounds to defend against this action Id. ¶¶ 44-52. For instance, courts and the DLSE are split on whether on-premises rest break policies are illegal. See p. 20, below.[8] Thus, continued litigation would be costly, time consuming, and uncertain. There is always risk of the class not being certified or of adverse rulings on the merits. See *Id*. The Settlement here ensures timely relief and a substantial recovery of the amounts that Plaintiff contends are owed to the Class. Id. ¶ 67.

**D.**      **Summary of Plaintiff's Claims**

Plaintiff's principal claim was that Defendant allegedly promulgated a facially invalid rest period policy whereby Plaintiff and the Class were subject to Defendant's control during rest periods by virtue of Defendant's mandates that they remain on company premises/designated areas during their rest periods and that Defendant thus arguably failed to authorize rest periods every 4 hours or major fraction thereof.[9] Id. ¶ 20.

***Defendant Allegedly Failed to Provide the Class Off-Duty Rest Periods***

Plaintiff alleged that Defendant failed to provide Labor Code compliant rest periods based on two theories: (1) Defendant's written rest period policies required Plaintiff and the Class to remain on company premises and in designated areas during their rest periods; and (2) Defendant failed to authorize timely rest periods by failing to include the "major fraction thereof" language in their rest break policy. Id. ¶ 21.

Labor Code § 226.7 provides "an employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or

---

[8] In fact, before the DLSE changed its opinion on the matter, one federal Judge in this district held that on premises rest break policies were legal. *See Bell, et al. v. Home Depot U.S.A., Inc.*, Case No. 2:12-cv-02499-JAM-CKD, 2017 U.S. Dist. LEXIS 55442 (E.D. Cal. April 10, 2017) (Docket No. 145) (granting defendant's motion for summary judgment upholding an on premises rest break claim and denying a motion for reconsideration post-*ABM).*

[9] Although Defendant does not agree with all of Plaintiff's factual and legal assertions herein, Defendant does nevertheless support entry of an order granting preliminary approval.

applicable regulation, standard, or order of the Industrial Welfare Commission ("IWC"). Under the Wage Order an employer must authorize and permit all employees to take ten (10) minute duty free rest periods for every major fraction of four (4) hours worked. *See Augustus v. ABM Security Services, Inc.* (2016) 2 Cal. 5th 257, 269 (concluding that "during rest periods employers must relieve employees of all duties and relinquish control over how employees spend their time."). In *Augustus*, the court expressly rejected the employer's assertion that it could provide an on-duty rest period to employees who worked as security guards and further explained "that employers [must] relinquish any control over how employees spend their break time, and relieve their employees of all duties." *Id.* at 273.

First, as to the on-premises rest period claim, Defendant's on-premises rest break policy arguably tethers all employees to Defendant's work locations during their rest periods. Id. ¶ 23. This policy, allegedly, violates Labor Code section 226.7 and section 12 of the applicable Wage Order, because it constitutes a form of control that is inconsistent with an employer's obligation under California law to provide duty-free rest periods during which employees have full control over their rest periods. *See, Augustus*.

*Augustus* rejected the employer's assertion that it could provide an on-duty rest period to employees who worked as security guards, explaining "that employers [must] relinquish any control over how employees spend their break time, and relieve their employees of all duties." *Id.* at 273. Thus, as California's DLSE has concluded, citing *Augustus*, requiring a worker to remain on premises means that they are "on duty", and such a policy is violative of the Wage Order. *See* DLSE website, Q&A page, Question 5, which can be found at: http//:www.dir.ca.gov/dlse/faq_restperiods.htm ("Question 5: Q. Can my employer require that I stay on the work premises during my rest period? A: No. …")[10]. By requiring Class Members to remain on premises, Defendant arguably required them to work through rest breaks in violation of the Wage Order.

Second, as to the timing of rest periods, Defendant's California rest period policy

---

[10] An earlier DLSE Q&A, pre-*Augustus*, had concluded such policies, were, in fact, legal.

allegedly failed to make available compliant rest periods by maintaining an unlawful policy which fails to incorporate the necessary "major fraction" language of the Wage Order. Id. ¶ 25. Because Defendant's rest period policy utilized during the Class Period fails to give effect to the major fraction language of the Wage Order, it did not authorize and permit rest periods for shifts of 6.01 to 7.99, and/or 10.01-11.99 hours (as these are major fractions of 4-hour periods for which rest periods are required). In *Brinker*, the court held that under California law, employers must "authorize and permit" employees to take a 10-minute rest break for every four hours worked, or "major fraction thereof." The court held that the phrase "major fraction thereof" means any amount of time in excess of one-half of the four-hour period, *i.e.,* two hours. *See, Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1039-1040. Further, *Brinker* upheld class certification for the rest break claim, because the defendant had a uniform written policy that failed to include reference to rest breaks for "every major fraction" of four hours worked. In addition to failing to authorize and permit compliant rest periods through their facially defective rest period policies, Defendant did not compensate Plaintiff and the Class with one hour's worth of pay when they were not provided with a compliant rest period, in accordance with Labor Code sections 226.7(b). Id. ¶ 26.

### Defendant's Alleged Failure to Pay Overtime Wages

Labor Code § 510 requires an employer to compensate an employee who works more than eight (8) hours in one workday, forty (40) hours in a workweek, and for the first eight (8) hours worked on the seventh consecutive day no less than one and one-half times the regular rate of pay for an employee. In accordance with Labor Code § 1194, Plaintiff and Class Members could not then agree and cannot now agree to work for a lesser wage than the amount proscribed by Labor Code §§ 510 and 1194. Further, IWC Wage Order Nos. 7 and/or 9, provides that "employees shall not be employed more than eight (8) hours in any workday or more than 40 in a workweek unless the employee receives one and one half (1 1/2) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek."

- 12 -

During the Class Period, Defendant allegedly employed a policy and practice that rounded timekeeping records to the nearest 15-minute interval. CJA Decl. ¶ 28. Plaintiff believed this policy and practice was not neutral on its face and arguably in violation of California law. *See, Donahue v. AMN Services, LLC*, Case No. S253677, Cal. Supreme Court (Feb 25, 2021) (a rounding policy is in violation of California law if it "systematically undercompensate[s] employees" such as where the rounding policy "encompasses only rounding down"). Therefore, Plaintiff contended that there was an underpayment of overtime wages when time punches were rounded forward.

### *Defendant's Alleged Failure to Pay Final Wages*

Labor Code §§ 201-202, an employer must provide an employee wages at the time or discharge or within up to seventy-two (72) of their resignation. Labor Code section 203 provides "if an employer willfully fails to pay…any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty…." for up to 30 days. Labor Code section 203; *Mamika v. Barca* (1998) 68 Cal.App.4th 487,492.

As a result of Defendant's alleged failure to pay all overtime wages and premium payments for meal and rest period violations, Plaintiff and the Class were not paid all wages owed at termination or within seventy-two hours of resignation and have failed to pay those sums for thirty days thereafter. CJA Decl. ¶ 30. Defendant's conduct was arguably willful, therefore, the Class are arguably entitled to section 203 penalties. Id.

### *Defendant's Alleged Failure to Issue Compliant Wage Statements*

Labor Code § 226 obligates employers, semi-monthly or at the time of each payment to furnish an itemized wage statement in writing showing:

(1) gross wages earned;
(2) total hours worked by the employee;
(5) net wages earned;
(9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee…

Due to Defendant's alleged failure to pay to Plaintiff and the Class overtime wages for all overtime hours worked, and rest and meal period premiums, the wage statements

issued by Defendant do not indicate the correct amount of gross wages earned, the correct hourly rate in effect during overtime hours worked, the correct total hours worked, or the correct net wages earned. CJA Decl. ¶ 32. Thus, Defendant allegedly has violated Labor Code §226(a)(1), (2), (5) and (9).

### Defendant's Alleged Failure to Provide the Class Lawful Off-Duty Meal Periods

Labor Code § 512 requires employers to provide employees with thirty (30) minute uninterrupted and duty-free meal period within the first five hours of work. "An on-duty meal period is permitted only when the nature of the work prevents an employee from being relieved of all duty and the parties agree in writing to an on-duty paid meal break." (*Lubin v. The Wackenhut Corp.* (2016) 5 Cal. App. 5th 926, 932.) The written agreement must include a provision allowing the employee to revoke it at any time. *Id.*

Generally, the DLSE and courts have "found that the nature of the work exception applies: '(1) where the work has some particular external force that requires the employee to be on duty at all times, and (2) where the employee is the sole employee of a particular employer." (*Id.* at p. 945; *Abdullah v. U.S. Security Associates, Inc.* (9th Cir. 2013) 731 F.3d 952, 958–959.) "[I]t is the employer's obligation to determine whether the nature of the work prevents an employee from being relieved *before* requiring an employee to take an on-duty meal period." (*Lubin*, *supra*, 5 Cal. App. 5th at p. 946.) Nor may an employer "discharge its duty by arguing that its clients who requested on-duty meal periods determined that the nature of the work prevented officers from being relieved of all duty." (*Id.* at p. 947; *Benton*, *supra*, 220 Cal. App. 4th at p. 729.)

As with rest periods, under Labor Code § 512, if an employer maintains a uniform policy that does not authorize and permit the amount of meal time called for under the law (as specified in the applicable Wage Order), "it has violated the wage order and is liable." The *Brinker* Court explained in the context of rest breaks that employer liability attaches from adopting an unlawful policy:

> An employer is required to authorize and permit the amount of rest break time called for under the wage order for its industry. If it does not—if, for example, it adopts a uniform policy authorizing and permitting only one rest break for

- 14 -

employees working a seven-hour shift when two are required—it has violated the wage order and is liable. *Brinker Rest. Corp. v. Sup. Ct.* (2012) 53 Cal.4th 1004, 1033.

Defendant allegedly violated Labor Code § 512 by requiring Plaintiff and the Class to work through or shorten their meal periods without receiving proper compensation and without entering into a lawful on-duty meal period agreement. CJA Decl. ¶ 36. Plaintiff contended that the Class took meal periods that were less than 30 minutes because Defendant frequently left its facilities understaffed. Id. Defendant also failed to pay Plaintiff and the Class meal period premiums for each workday that the employees did not receive all compliant meal periods. Id. ¶ 37.

### Defendant's Alleged Failure to Reimburse Business Expenses

Pursuant to Labor Code § 2802, "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer…"

Plaintiff contended that the Class, at the direction of Defendant and/or with Defendant's knowledge and acquiescence, have used their personal cell phones to communicate with their customers and clients to perform necessary work-related duties for Defendant. CJA Decl. ¶ 39. Defendant allegedly requires that Plaintiff and the Class respond to phone calls, voicemails, text messages and emails, and expect these employees to initiate calls and texts to meet business needs. Id. Defendant allegedly required Plaintiff and the Class to shoulder the cost associated with business use of their personal cell phones and personal devices and failed to provide any reimbursement. Id.

### UCL Violations

In California, wage and hour claims may be brought under the Unfair Competition Law ("UCL" – Cal. Bus. & Prof. Code §§17200-17210).  Unfair competition includes "any unlawful, unfair or fraudulent business act or practice," which courts have held includes Labor Code violations.[11]  A remedy under the UCL does not preclude any other

---

[11] *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178 (2000).

available remedies under state law.[12]   Plaintiff's operative Complaint alleged that by failing to pay Class Members rest and meal period premiums, and committing the above-described Labor Code violations, Defendant engaged in unlawful, unfair, and/or fraudulent business practices and is liable to the Class Members. Moreover, this cause of action lengthens the statute of limitation of the class claims to 4 years. CJA Decl. ¶ 40.

### *PAGA Penalties*

Plaintiff further argued that they and the other Class Members were entitled to penalties under the PAGA" - Labor Code §§ 2699-2699.5.   The PAGA allows an aggrieved employee to bring suit against an employer for violations of most Labor Code provisions. Suits brought under PAGA do not affect the employee's right to recover other remedies under state or federal law.[13]   The statute of limitations for PAGA is one year. An employee who prevails in an action brought under PAGA is entitled to an award of reasonable attorney's fees and costs.

The penalties available under PAGA are those provided in the underlying Labor Code provision that is violated or, if no penalty is listed, those provided by PAGA itself. Where the Labor Code does not provide for a penalty, PAGA establishes a discretionary civil penalty of $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent violation.[14] For civil penalties collected under PAGA, 75% of the penalties are distributed to the LWDA, and 25% is distributed to the aggrieved employees.

Plaintiff alleged that by virtue of each of Defendant's Labor Code violations, Plaintiff and the Class Members are, in addition to other remedies, entitled to civil penalties under PAGA as well as attorneys' fees and costs. CJA Decl. ¶ 43.

### E.   Summary of Defendant's Defenses

First, Defendant contended that their written rest period policy was not invalid.

---

[12] § 17205.
[13] § 2699(g); *Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365, 375 (2005).
[14] § 2699(f). Wherever the Labor Code gives the Labor and Workforce Development Agency discretion to assess a civil penalty, a court is authorized to exercise the same discretion. § 2699(e)(1). The 9th Circuit recently held that "subsequent" penalties only apply after a liability finding. See *Bernstein.*

CJA Decl., ¶ 44. Specifically, Defendant argued that the rest period policy needs to be read as a whole and that there is no problem with including language that employees need to give supervisors knowledge/get permission to leave the premises during rest periods. Id. Additionally, Defendant argued that the exclusion of the "major fraction thereof" language does not lend itself to liability because Class Members work 5.5-hour shifts. Id.

Second, Defendant argued that three federal judges have ruled that on-premises rest period policies are lawful. *See Bell, et al. v. Home Depot U.S.A., Inc.*, Case No. 2:12-cv-02499-JAM-CKD (E.D. Cal. April 10, 2017) (Docket No. 145). Notably, a court in this district granted summary judgment to an employer before the issuance of *Augustus* and subsequently denied the Plaintiffs' Motion for Reconsideration after *Augustus* was decided. Additionally, the Court also granted summary judgment prior to when the Department of Labor Standards Enforcement superseded their original view that on-premises rest breaks were lawful. Specifically, the Court in *Bell* found that the facts in *Bell* and *Augustus* were distinct because the on-premises rest break policy in *Bell* did not require employees to remain on call. Similarly, the on-premises rest break policy here did not require employees to remain on call, rather the policy only required employees stay on-premises/get permission from supervisors. *See also, Ritenour v. Carrington Mortg. Serves., LLC*, No. SACV1602011CJCDFMX, 2018 WL 5858658, at *10 (C.D. Cal. Sept. 12, 2018); and *Hubbs v. Big Lots Stores, Inc.*, No. LACV1501601JAKASX, 2018 WL 5264141, at *5 (C.D. Cal. Mar. 16, 2018) concluding that an on-premises rest break does not violation Labor Code section 226.7's requirement of authorizing or permitting rest breaks. CJA Decl., ¶ 45. While Plaintiff believes that these three District Court Judges may have failed to consider that an on-premises rest period policy still subjects employees to the employer's control[15], and the DLSE's more recent views in its revised

---

[15] *In Bono Enterprises, Inc. v. Bradshaw*, 32 Cal.App.4th 968, 977 (1995), the California Court of Appeals held that an employer's policy of requiring an employee to remain on premises for lunch periods transforms what would otherwise be a duty-free, unpaid 30- minute meal period (*see* Section 11 of the various IWC Wage Orders) into paid, on-duty time that counts as "hours worked" that is subject to the employer's control for purposes of the Wage Order. The Court of Appeals in *Bono* noted:
"When an employer directs, commands or restrains an employee from leaving the workplace during his or her lunch hour and thus prevents the employee from using the

Q&As, Plaintiff is still cognizant of the risk that this Court may follow the three previous federal judges and rule that Defendant's rest break policy is lawful. Id.

Third, Defendant argued that Plaintiff may be unable certify the Class with respect to the on-premises rest period claim. *See e.g. Ordonez v. Radio Shack, Inc.,* 2013 U.S. Dist. LEXIS 7868, *35-41 (C.D. Cal. Jan. 17, 2013) (denying certification even though the plaintiff submitted evidence of a facially unlawful policy regarding rest breaks because the predominance and superiority elements were not met based upon the employer's presentation of anecdotal evidence of lawful compliance). CJA Decl., ¶ 46.

Fourth, Defendant contended that they did not owe any unpaid overtime wages to the Class because the rounding policy was neutral. After a review of actual time and pay records, approximately 70% of rounding instances were either neutral or favored the Class. *See See's I, supra,* 210 Cal.App.4th at 907 (rounding policies are upheld when the policy is "fair and neutral on its face and…used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." CJA Decl., ¶ 47.

Fifth, with respect to Plaintiff's claims for waiting time penalties, Defendant had several defenses. CJA Decl., ¶ 48. First, they argued that they lacked the requisite willfulness to be held liable for waiting time penalties as based on the facts known to Defendant, no additional wages were due.  Id. Second, under existing case law, waiting time penalties are not triggered by unpaid meal and rest period premiums. *See, Kirby v. Imoos Fire Protection, Inc.*, 53 Cal.4th 1244, 1248, 1255-57 (2012) (holding that an action for meal and rest period violations is not an action for unpaid wages).

Sixth, Defendant contended that nonpayment of meal and rest period premiums does not trigger wage statement penalties. *See, Maldonado v. Epsilon Plastics, Inc.*, 22

---

time effectively for his or her own purposes. *that employee remains subject to the employer's control.* According to IWC Order 1-89, the employee must be paid."
*See Bono Enterprises,* 32 Cal. App. 4th at 977 (emphasis added). The California Supreme Court recently cited favorably to *Bono* in *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038, 1051, 1056 (2020).  Plaintiff contends that the three federal district courts that examined the legality of on-premises rest breaks  previously did not consider  the related discussion  of on-premises meal breaks in *Bono* and the issue of employer "control" when tethering employees to a particular location in *Frlekin*.

Cal. App. 5th 1308 (2018) (liability for inaccurate wage statements is not triggered by failure to show wages that were not paid but were due, as the proper remedy is solely through payment of those wages, not wage statement penalties). More recently, in *Naranjo v. Spectrum Services, Inc.*, 40 Cal.App.5th 444, 474 (2019), *rev. granted, depublication denied*, Jan 2, 2020, no. S258966, the court held that actions for nonprovision of meal or rest periods "do not entitle employees to pursue the derivative penalties in sections 203 and 226." Defendant also argued here that any violations were not "knowing and intentional", and that no actual injury was suffered. CJA Decl., ¶ 49.

Seventh, with respect to Plaintiff's meal period claim, Defendant contended that only approximately 50% of shifts are over six hours and would require a meal period. CJA Decl., ¶ 50. Moreover, there is a large subset of the Class that have signed valid meal period waivers. Id. Most significantly, however, Defendant contended that Plaintiff would be unable to certify her meal period claim due to the fact that Defendant did not promulgate a facially invalid policy. *See Lampe v. Queen of the Valley*, 19 Cal.App.5th 832 (2018) (denial of class certification in meal break case where the violation rate was 89%, but Defendant did not promulgate a facially invalid policy). Id.

Eighth, Defendant contended that any use of personal cell phones by Plaintiff and the Class were sporadic with some Class Members not using their phone at all. As a result, Plaintiff would have difficulty certifying her reimbursement claim because of individual issues predominating. CJA Decl., ¶ 51.

Lastly, Defendant contended that under Labor Code § 2699(e)(2), civil penalties arise only from violations of the Labor Code and any violations in this case were minimal. CJA Decl., ¶ 52. Defendant also argued that a court may award a lesser amount than the maximum civil penalty specified under PAGA, if based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive or confiscatory.

Courts often exercise their discretion to reduce the PAGA penalties awarded to as

little as $5.00 per pay period or 18% of the available PAGA penalties.[16] For example, in *Gola v. University of San Francisco*, San Francisco Superior Court Case No. CGC-18-5655018, Proposed Statement of Decision, dated July 21, 2020, Judge Curtis A. Karnow of San Francisco Superior Court Complex concluded (after a bench trial) that a penalty of 15% of the maximum PAGA penalties was the appropriate penalty. Furthermore, a Court is unlikely to award the full, stepped up PAGA penalties. *See, Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008); *Bernstein v. Virgin America Inc.*, 2021 U.S. App. LEXIS 5197 (9th Cir. 2021) (noting that the employer was not notified by the Labor Commissioner or any court that it was subject to the California Labor Code until it lost summary judgment and thus heightened penalties could not apply until that point).

## F.    Fair Valuation of Plaintiff's Claims

The settlement is the product of extensive and intensive arms' length negotiations at a virtual mediation via Zoom, with mediator Lou Marlin CJA Decl., ¶ 53. Though cordial and professional, the settlement negotiation was adversarial and non-collusive in nature. Id. The settlement reached is the product of substantial effort by the parties and their counsel. Id. Although Plaintiff and her counsel believed that there was a strong possibility of certifying the claims, they recognized the potential risk, expense, and complexity posed by litigation, such as unfavorable decisions on class certification, summary judgment, at trial and/or on the damages awarded, and/or on an appeal that can take several more years to litigate. Id.   The resulting Settlement was based on calculations, risk assessment, and non-collusive negotiation; it takes the risks identified above and others into account in arriving at the settlement amount of $2,400,000.00. Id.

Plaintiff contended that Defendant's rest period policy was non-compliant, but Defendant contended that several federal judges have recently ruled that on-premises rest period policies are lawful, that Plaintiff would not be able to certify the Class, and that

---

[16] *See e.g., Kileigh Carrington v. Starbucks Corporation, et al.*, San Diego Superior Court Case No. 37-2014-00018637-CU-OE-CTL (Apr. 3, 2017) (holding that the plaintiff was only entitled to collect the reduced penalty amount of $5.00 for each pay period in which a meal period violation occurred or 5% of the PAGA penalties at issue); *Fleming v. Covidien, Inc.* (C.D. Cal. Aug. 12, 2011) 2011 WL 7563047, at *4 (reducing PAGA penalties by 82%).

- 20 -

the rest period policy at issue was not unlawful because requiring supervisor permission/knowledge is not control. As a result, the realistic, risk-adjusted exposure of Plaintiff's rest period claim was calculated at **$1,718,776.20**. CJA Decl., ¶ 56.

As to Plaintiff's claim that Defendant utilized a rounding policy to avoid paying overtime, Defendant showed that approximately 70% of the time, rounding was either neutral or in favor of the employee. As a result, Plaintiff did not assign a value to her claims for unpaid overtime. Id, ¶ 57.

For Plaintiff's waiting time penalty claim, Plaintiff took discounts for the risk of not being able to prove the requisite willfulness, the risk that waiting time penalties are not available because the claim is derivative (*Naranjo*), and the risk of losing on the underlying claims. As a result, the realistic, risk-adjusted exposure on Plaintiff's waiting time penalty claim was calculated at **$61,209.02**. Id, ¶ 58.

For Plaintiff's wage statement penalty claim, Plaintiff took discounts that Plaintiff may not be able to prove a "knowing and intentional violation" or that the Class suffered an injury in fact. Plaintiff also took significant discounts because the claim is derivative of the unpaid premium claim and that Plaintiff could lose on the underlying claims. As a result, the realistic, risk-adjusted exposure on Plaintiff's wage statement claim was calculated at **$61,780.50**. Id, ¶ 61.

On Plaintiff's meal period claim, Defendant contended that approximately 50% of shifts were under six hours and Defendant had obtained valid meal period waivers. More significantly, however, Defendant argued that Plaintiff could not certify her meal period claim due to the fact that Plaintiff could not point to a facially invalid policy promulgated by Defendant. As a result, the realistic, risk-adjusted exposure on Plaintiff's meal period claim was calculated at **$304,347.91**. Id, ¶ 62.

Defendant contended that on Plaintiff's claim for reimbursement, most Class Members were not required to use personal cell phones and Plaintiff would be unable to certify her reimbursement claim because individual issues would predominate. As a result, the realistic, risk-adjusted exposure on Plaintiff's reimbursement claim was

calculated at **$10,436.25**. Id, ¶ 63.

Lastly, Defendant contended that Courts have discretion to reduce PAGA penalties. Therefore, using Judge Karnow's reasoning in *Gola*, Plaintiff calculated Defendant's realistic, risk-adjusted exposure under PAGA at **$315.300**. Id, ¶ 64.

Therefore, Defendant's realistic, risk-adjusted exposure is calculated at **$2,471,849.88**. Considering the listed risk factors, the non-reversionary Gross Settlement Amount of $2,400,000.00 is a fair, reasonable and adequate compromise of the claims because it represents Defendant's approximate realistic, risk-adjusted exposure. Id. ¶ 65.

### G. The Parties Investigated this Matter to Allow Counsel and this Court to Conclude that the Settlement is Fair and Reasonable.

The parties engaged in a significant exchange of substantive information relating to Class Members' claims as detailed above. Based upon the record that was developed through this investigation and informal discovery process Plaintiff's Counsel were able to realistically estimate class damages and assess the risks of further litigation. CJA Decl. 66. It was only after the parties investigated and evaluated the strengths and weaknesses of the case, attended a full-day mediation, and engaged in hard-fought negotiations, that the settlement was completed. Id. This litigation, therefore, has reached the stage where the parties have a clear view of the strengths and weaknesses of their cases sufficient to support the Settlement.  See *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("approval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases").

### H. The Settlement was the Product of Informed, Non-Collusive, and Arms'-Length Negotiations Between Experienced Counsel Who Jointly Support the Settlement.

Courts routinely presume a settlement is fair where it is reached through arms'-length bargaining as it was here.  See *Hanlon*, 150 F.3d at 1027. As the United States Supreme Court has held, "[o]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms- length bargaining…" *Ortiz v. Fibreboard*

- 22 -

*Corp.*, 527 U.S. 815, 852 (1999).

Here, the Settlement was a product of intensive, adversarial litigation between the parties. CJA Decl. ¶ 18. Notably, the parties spent months prior to the mediation session developing the factual record for this case, drafting detailed mediation briefs, and ensuring both sides were fully informed about the strengths and weaknesses of their respective positions. Id. The parties then attended a full-day mediation session before an experienced and well-respected mediator, Lou Marlin. Id. In addition, the parties are represented by skilled and experienced counsel with extensive backgrounds in complex litigation and experience litigating and settling similar wage and hour class actions. Id. ¶¶ 4-12. The view of the attorneys actively conducting the litigation is entitled to significant weight in deciding whether to approve the settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981.

Plaintiff's counsel believes that this settlement is fair, adequate, and reasonable and in the best interests of Class Members, and should be preliminarily approved.  CJA Decl., ¶13. If approved by the Court, the estimated 1,771 Class Members will enjoy substantial monetary recovery amounting to an average recovery per class member of $981.36[17] on a net basis and $1,355.16[18] on a gross basis. Id., ¶ 68. These are substantial recoveries for class members in a class action involving on-premises rest period policies. See comparable settlements, Id.[19]

I.      **The Proposed Class Notice is Adequate**

Fed. R. Civ. P. 23 (c)(2)(B) provides that the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: (1) The nature of the action; (2) the

---

[17] $1,738,000 NSA / 1,771 Class Members = $981.36 average net individual settlement payment.
[18] $2,400,000 GSA / 1,771 Class Members = $1,355.16 average gross individual settlement payment.
[19] For instance, in *Cahilig, et al. v. Ikea U.S. Retail, LLC*, Case No. 19-cv-01182 (C.D. Cal. June 17, 2020), , the parties settled for $7.5 million settlement for 6,400 Class Members with on premises rest break claims, where the average gross settlement amount was $1,171. See, https://d12v9rtnomnebu.cloudfront.net/diveimages/ikeasettlement.pdf (Order Granting Preliminary Approval of Class Action Settlement) (Dkt. No. 48) (Hon. Cormac J. Carney).

definition of the class certified; (3) the class claims, issues or defenses; (4) that a class member may enter an appearance through counsel if the member so desires; (5) that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and (6) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The content of the proposed Class Notice fully complies with due process and Fed. R. Civ. P. 23. The Class Notice provides specifics regarding the date, time, and place of the Final Approval Hearing, and informs Class Members that they may enter an appearance through counsel. The Notice informs Class Members how to exercise their rights and make informed decisions regarding the proposed Settlement Agreement, and tells them that if they do not request to be excluded, the judgment will be binding upon them. The Notice describes the terms of the Settlement Agreement, informs Class Members how individual recoveries will be determined, and provides an estimated settlement amount for each Class Member. The Proposed Class Notice is more than adequate to put Class Members on notice of the Settlement Agreement. *See, e.g., Mendoza v. Tucson School Dist. No. 1,* 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the… settlement" satisfies standards).

## J.      **The Requested Service Award is Reasonable.**

Plaintiff will request a Service Award to the named Plaintiff in an amount of $7,500, to recognize her time and efforts on behalf of the Class, including time spent in meetings with Class Counsel, and her acceptance of the financial risk in pursuing this litigation. CJA Decl. ¶¶ 70-73. The requested Service Award falls well within the range of incentive payments typically awarded to Class Representatives in wage and hour class actions. *See Bond v. Ferguson Enterprises, Inc*., No. 1:09–cv–1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. 2011) (approving $11,250 service awards).

## K.      **The Requested Attorneys' Fees and Costs Are Reasonable.**

In addition, Plaintiff's counsel will request a Class Counsel Fees Payment of up to $600,000.00 (*i.e.*, up to 25% of the Settlement Amount) and Class Counsel Litigation

Expenses Payment of up to $20,000. S.A. ¶ 1.5. The fee amount is fair, reasonable and represents below typical fee awards in wage-and-hour class actions in California. *See e.g., Stuart v. RadioShack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) (noting that the fee award of 1/3 of the total settlement was "well within the range of percentages which courts have upheld as reasonable in other class action lawsuits."). CJA Decl. ¶ 46.[20]   The litigation costs payment up to $20,000 is reasonable and based on documentation, as will be discussed in Plaintiff's Motion for Attorneys' Fees to be filed before the expiration of the notice deadline.

## V.    CONCLUSION

For these reasons, Plaintiff's motion for preliminary approval of the parties' class action settlement should be granted.

Dated: October 22, 2021

ACKERMAN & TILAJEF, P.C.
MELMED LAW GROUP P.C.


*/s/ Craig J. Ackermann*
Craig J. Ackermann, Esq.
Jonathan Melmed, Esq.

Counsel for Plaintiff and
the Settlement Class

---

[20] If the Court grants preliminary approval, Class Counsel will file Plaintiff's Motion for Attorneys' Fees and Costs before the expiration of the notice deadline and the motion will be scheduled to be heard concurrently with the Motion for Final Approval. CJA Decl. ¶ 76.  This will be done in accordance with the Ninth Circuit's holding in *In Re Mercury Interactive Corp.*, 618 F.3d 988, 993-4 (9th Cir. 2010).