# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIESHIA MARIE JACKSON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FASTENAL COMPANY,<br><br>Defendant. | Case No.  1:20-cv-00345-NONE-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>(ECF No. 15)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

Plaintiff Mieshia Marie Jackson brings this action on behalf of herself and others similarly situated against Defendant Fastenal Company, alleging various wage and hour violations under California state law.  (ECF No. 1-1.)  Currently before the Court is Plaintiff's unopposed motion for preliminary approval of a class action settlement and certification of the class for purposes of settlement.[1]  (ECF No. 15.)  The Court, having reviewed the record, found this matter suitable for decision without oral argument under Local Rule 230(g), and the previously scheduled hearing set

---

[1] Pursuant to the Court's standing order issued March 5, 2020, all motions seeking preliminary or final approval of collective or class action settlements in cases bearing the "DAD" and "NONE" designations have been referred by the District Judge to the magistrate judge for issuance of findings and recommendations pursuant to Local Rule 302(c) and 28 U.S.C. § 636(b)(1)(A).  (ECF No. 2-2 at 3.)

for November 24, 2021, was vacated.  (ECF No. 18.)  Having considered the moving papers, the declarations and exhibits attached thereto, as well as the Court's file, the Court issues the following findings and recommendations recommending granting the motion for preliminary approval of settlement and conditionally certifying the class for purposes of settlement.

**I.**

**BACKGROUND[2]**

**A.     Factual Background**

Defendant is an industrial supply company based in Winona, Minnesota.  (Mot. for Order Granting Prelim. Approval of Class Action Sett. ("Mot.") 7, ECF No. 15-1; Decl. of Craig J. Ackermann in supp. of Pl.'s Mot. ("Ackermann Decl.") ¶ 14, ECF No. 15-2.)  Plaintiff was employed by Defendant in California as a non-exempt employee.  (Mot. 7; Ackermann Decl. ¶ 14.)  Plaintiff's principal claim is that, during the class period, Defendant promulgated an allegedly unlawful rest period policy that required the class members to stay on the premises or in designated areas during their rest periods in violation of California Labor Code § 226.7 and Section 12 of the applicable IWC Wage Order.  (Mot. 6.)   As a result, Plaintiff and the class seek compensatory damages for all unpaid wages, penalties, expenses, pre-judgment and post-judgment interest, and fees and costs.  (Compl. 27, ECF No. 1-1.)

The complaint brings the following causes of actions: (1) failure to pay overtime wages (Cal. Labor Code §§ 510, 1198); (2) failure to provide compliant rest breaks and/or pay missed rest break premiums (Cal. Labor Code § 226.7; IWC Wage Order); (3) failure to provide compliant meal periods and/or pay missed meal period premiums (Cal. Labor Code §§ 226.7, 512); (4) failure to reimburse business expenses (Cal. Labor Code § 2802); (5) failure to provide complete and accurate wage statements (Cal. Labor Code § 226(A)); (7) UCL Violations; and (8) PAGA penalties (Cal. Labor Code §§ 2699 et seq.).  Defendant denies any and all allegations relating to this matter and has asserted twenty-two affirmative defenses.  (Ans. 14–19, ECF No. 4.)

**B.     Procedural History**

On January 21, 2020, Plaintiff filed a putative class action against Defendant in the

---

[2] For ease of reference, the Court will refer to the ECF pagination for the parties' attached exhibits.

1    Stanislaus County Superior Court, on behalf of herself and all current and former California-based

2    non-exempt individuals employed by Defendant from January 21, 2016 through July 16, 2021.

3    (Mot. 6.)

4      On March 4, 2020, Defendant removed this action to the Eastern District.  (ECF No. 1.)

5    Thereafter, the parties engaged in a "robust exchange of informal discovery" and agreed to attempt

6    to resolve the action through private mediation.  (Mot. 7; Ackermann Decl. ¶ 16.)  After engaging

7    in discovery and investigation of the claims and defenses, on March 1, 2021, the parties engaged

8    in a private mediation with wage and hour class action mediator Lou Marlin.  (Ackermann Decl.

9    ¶¶ 17–18.)  The parties were unable to settle the matter on March 1, but after several weeks of

10   further negotiations with the assistance of Mr. Marlin, the parties agreed to resolve the case on a

11   class-wide basis and memorialized their agreement into a Memorandum of Understanding

12   ("MOU").  (Mot. 8; Ackermann Decl. ¶ 18.)  In the following months, the parties drafted and

13   executed the long form settlement agreement presently before the Court for preliminary approval.

14   (Id.)

15     On October 22, 2021, Plaintiff filed the instant motion for preliminary approval of the

16   proposed class settlement agreement and for certification of the class.  (ECF No. 15.)  On October

17   25, 2021, the Court issued a minute order resetting the hearing on the motion for November 24,

18   2021, and on November 16, 2021, the Court vacated the hearing after finding this matter suitable

19   for decision without oral argument pursuant to Local Rule 230(g).  (ECF Nos. 16, 18.)

20     **C.**  **Summary of the Proposed Settlement**

21     As previously noted, on March 1, 2021, the parties participated in an all-day mediation

22   before mediator Lou Marlin.  In the following weeks, the parties executed a MOU and thereafter

23   negotiated and prepared the proposed settlement agreement currently before this Court, which the

24   Court summarizes herein.[3]

25     To implement the terms of the proposed settlement agreement, Defendant agrees to pay a

26   gross settlement amount of $2,400,000 in exchange for full and complete satisfaction of the claims

27

28   [3] The full proposed settlement agreement is attached as Exhibit 1 to the Ackermann Declaration and hereby incorporated by reference.  (See Agreement, ECF No. 15-3.)

released by the Agreement.  (See Agreement §§ 1, 7.)  The gross settlement amount will consist of: (1) administrative expenses, not to exceed $20,000; (2) the class counsel's attorneys' fees, not to exceed $600,000; (3) the class counsel's litigation costs and expenses, not to exceed $20,000; (4) the incentive award, not to exceed $7,500; and (5) payment of $18,000 under California's Private Attorney Generals Act ("PAGA") to the California Labor and Workforce Development Agency ("LWDA").  (Id. at ¶ 7.1.)  The remaining net amount (approximately $1,738,000) will be distributed as settlement shares to all participating class members (i.e., all those who do not opt-out following the class notice distribution process) pro-rata based on their total workweeks as a class member during the class period.  (Id. at ¶¶ 1.9, 1.25, 7.2.)  With respect to each individual settlement amount, 20% shall constitute wages and 80% shall constitute penalties and interest.  (Id. at ¶ 5.5.)

Settlement checks shall remain valid for 180 days from the date of issue.  (Id. at ¶ 7.8.) Thereafter, the uncashed check will become void, and the amount associated with that check will be distributed to Central California Legal Services, which provides free legal services to low-income populations in Fresno, Tulare, Kings, Merced, Mariposa, and Tuolumne Counties.  (Id.; see also Mot. 10–11 n.6 (citing www.centralcallegal.org/pro-bono-opportunities).)

With respect to appointing a settlement administrator, the settlement agreement provides the parties seek to appoint ILYM Group, Inc. "or other administrator agreed on by the parties" as settlement administrator.  (Agreement ¶ 1.38.)  It appears the parties currently seek to have CPT Group, Inc. appointed as the settlement administrator.  (See Mot. 6; see also proposed order, ECF No. 15-8; Ackermann Decl. ¶ 79; ECF No. 15-4.)  As the settlement agreement provides the parties may appoint ILYM Group, Inc. "or other administrator agreed on by the parties" as settlement administrator (Agreement ¶ 1.38), and the parties' most recent filings identify CPT Group, Inc. as the preferred settlement administrator (Mot. 6; ECF No. 15-8), the Court concludes the parties currently seek to appoint CPT Group, Inc. as the settlement administrator.

Additionally, if the Court approves the parties' settlement and authorizes the dissemination of the class notice, Plaintiff's counsel will apply to the Court for an award of up to 25% of the gross settlement amount for reasonable attorneys' fees, and for reimbursement of litigation expenses not to exceed $20,000.  (Mot. 8; Agreement ¶ 5.7; Ackermann Decl. ¶¶ 75–78.)  Plaintiff will also

1   apply for approval of an incentive award for her efforts on behalf of the settlement class in this

2   action, in an amount not to exceed $7,500.  (Agreement at ¶ 5.2.)

3                                              **II.**

4                                    **LEGAL STANDARD**

5          District courts review class action settlements in two stages.  First, as here, a plaintiff files

6   a motion described as a motion for preliminary approval, along with a motion to certify the class

7   for purposes of settlement if certification has not occurred.  If the district court grants preliminary

8   approval and certifies the class, class members are then notified and given an opportunity to object

9   to the settlement or opt-out of the settlement.  See Cotter v. Lyft, Inc., 176 F. Supp. 3d 930, 935

10  (N.D. Cal. 2016).  Thereafter, the plaintiff typically files a motion for final approval, and after a

11  final fairness hearing and consideration of any objections to the settlement, the district court

12  determines whether to grant final approval.  Id.

13         **A.      Certification of the Class**

14         To certify a class, a party must demonstrate that all of the prerequisites of Federal Rule of

15  Civil Procedure 23(a), and at least one of the requirements of Rule 23(b) have been met.  Wang v.

16  Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013); see also Valentino v. Carter-Wallace,

17  Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).  This requires courts to "conduct a 'rigorous analysis' to

18  determine whether the party seeking class certification has met the prerequisites of Rule 23."

19  Wright v. Linkus Enterprises, Inc., 259 F.R.D. 468, 471 (E.D. Cal. 2009).

20         Under Rule 23(a), the four requirements that must be met for class certification are: "(1) the

21  class is so numerous that joinder of all members is impracticable; (2) there are questions of law or

22  fact common to the class; (3) the claims for defenses of the representative parties are typical of the

23  claims or defenses of the class; and (4) the representative parties will fairly and adequately protect

24  the interest of the class."  Fed. R. Civ. P. 23(a)(1)–(4); Wright, 259 F.R.D. at 471.  These factors

25  are known as "numerosity," "commonality," "typicality," and "adequacy," respectively.

26         Rule 23(b) requires a plaintiff to establish one of the following: (1) that there is a risk of

27  substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the

28  class as a whole would be appropriate; or (3) that common questions of law or fact predominate

1   and the class action is superior to other available methods of adjudication.  Fed. R. Civ. P. 23(b)(1)–

2   (3); Wright, 259 F.R.D. at 471–72.

3          Rule 23(c)(1) permits a court to "make a conditional determination of whether an action

4   should be maintained as a class action, subject to final approval at a later date."  Fry v. Hayt, Hayt

5   & Landau, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (citing Collier v. Montgomery Cnty. Housing

6   Auth., 192 F.R.D. 176, 181 (E.D. Pa. 2000)).

7          **B.     Court Approval of Class Settlement Agreements**

8          Rule 23(e)(2) mandates that any settlement in a class action may only be approved by the

9   court after finding that the settlement is "fair, reasonable, and adequate" upon consideration of

10  whether:

11              (A) the class representatives and class counsel have adequately
                represented the class;
12
                (B) the proposal was negotiated at arm's length;
13
                (C) the relief provided for the class is adequate . . . ; and
14
                (D) the proposal treats class members equitably relative to each
15              other.

16  Fed. R. Civ. P. 23(e)(2)(A)–(D).  The role of the district court in evaluating the fairness of the

17  settlement is not to assess the individual components, but to consider the settlement as a whole.

18  Lane v. Facebook, Inc., 696 F.3d 811, 818–19 (9th Cir. 2012), reh'g denied, 709 F.3d 791 (9th Cir.

19  2013).  In reviewing a proposed settlement, the court represents those class members who were not

20  parties to the settlement negotiations and agreement.   In re Toys R Us-Delaware, Inc.—Fair &

21  Accurate Credit Transactions Act Litig., 295 F.R.D. 438, 448 (C.D. Cal. 2014).

22         The Ninth Circuit has recognized a strong judicial policy favoring settlement, particularly

23  of complex class actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).

24  Nevertheless, even where a proposed settlement is unopposed, the Court must fully examine

25  whether the proposed settlement class satisfies Rule 23(a)'s requirements of numerosity,

26  commonality, typicality, and adequacy of representation.  Wright, 259 F.R.D. at 472 (citing Hanlon

27  v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998)).  Particularly when, as here, the settlement

28  occurs prior to class certification, courts must scrutinize the proposed settlement to ensure the

propriety of class certification and the fairness of the proposed settlement.  Staton v Boeing, 327 F.3d 938, 952 (9th Cir. 2003); Lane, 696 F.3d at 819 (quoting Hanlon, 150 F.3d at 1026).  This more exacting review of class settlements reached before formal class certification is required to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent."  Lane, 696 F.3d at 819 (quotation and citation omitted).

## III.

### DISCUSSION

This action is currently at the first stage; thus, the Court shall consider whether preliminary approval of the proposed settlement is appropriate, and whether the class should be certified for purposes of settlement only.  The Court now turns to determine whether certification of the class is appropriate for purposes of settlement.

### A.     Certification of the Class

The Court finds the proposed settlement class — all hourly non-exempt individuals who are or were employed by Defendant in California at any point from January 21, 2016 through July 16, 2021 — meets the aforementioned requirements under Rule 23(a)–(b) for the reasons that follow.

1.     Numerosity

Numerosity is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  There is no absolute number or cut-off for determining numerosity, and the specific facts of each case may be examined.  Schwarm v. Craighead, 233 F.R.D. 655, 660 (E.D. Cal. 2006); Cervantez v. Celestica Corp., 253 F.R.D. 562, 569 (C.D. Cal. 2008).  "A reasonable estimate of the number of purported class members satisfies the numerosity requirement of Rule 23(a)(1)."  In re Badger Mountain Irr. Dist. Sec. Litig., 143 F.R.D. 693, 696 (W.D. Wash. 1992); see also Cervantez, 253 F.R.D. at 569 ("Courts have not required evidence of specific class size or identity of class members to satisfy the requirements of Rule 23(a)(1).")

Here, as of October 31, 2020, the proposed class consisted of approximately 1,771 individuals. (Mot. 11; Ackermann Decl. ¶ 14.)  In light of the foregoing authorities, the Court finds the proposed class of 1,771 members satisfies the numerosity requirement as joinder of such

7

1   members is impracticable.  See also Celano v. Marriott Int'l, Inc., 242 F.R.D. 544, 549 (N.D. Cal.

2   2007) (noting "courts generally find that the numerosity factor is satisfied if the class comprises 40

3   or more members and will find that it has not been satisfied when the class comprises 21 or fewer.");

4   Cervantez, 253 F.R.D. at 569 ("Courts have held that numerosity is satisfied when there are as few

5   as 39 potential class members.")

6          2.   Commonality

7          Commonality is satisfied where "there are questions of law or fact common to the class."

8   Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit has stated that Rule 23(a)(2) is construed permissively

9   and that "[a]ll questions of fact and law need not be common to satisfy the rule."  Staton, 313 F.3d

10  at 462 (quoting Hanlon, 150 F.3d at 1019).  Indeed, "[t]he existence of shared legal issues with

11  divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate

12  legal remedies within the class."  Id.  "[T]he key inquiry is not whether the plaintiffs have raised

13  common questions," but "whether class treatment will 'generate common answers apt to drive the

14  resolution of the litigation.' "  Arredondo v. Delano Farms Co., 301 F.R.D. 493, 503 (E.D. Cal.

15  Feb. 21, 2014) (citations omitted).  Commonality is not required for all of the claims.  It may be

16  sufficient if there is one single issue common to the proposed class.  Wal-Mart Stores, Inc. v. Dukes,

17  564 U.S. 338, 359 (2011) (stating that even a single common question will satisfy Rule 23(a)(2));

18  True v. Am. Honda Motor Co., 749 F. Supp. 2d 1052, 1064 (C.D. Cal. 2010); Haley v. Medtronic,

19  Inc., 169 F.R.D. 643, 648 (C.D. Cal. 1996) ("Indeed, for the commonality requirement to be met,

20  there must only be one single issue common to the proposed class."); see also In re Paxil Litig.,

21  212 F.R.D. 539, 549 (C.D. Cal. 2003) (noting that "the commonality requirement is interpreted to

22  require very little"); Hanlon, 150 F.3d at 1022 ("when common questions present a significant

23  aspect of the case and they can be resolved for all members of the class in a single adjudication,

24  there is clear justification for handling the dispute on a representative rather than on an individual

25  basis.").

26         Here, the commonality and predominance requirements are met since there are questions of

27  law and fact common to the class and that predominate over individualized issues, such as whether

28  Defendant failed to provide and/or advise and authorize Plaintiff and the class with compliant, duty-

1    free meal and rest periods and pay meal and rest period premiums, whether Defendant failed to

2    provide Plaintiff and the class complete wage statements in violation of Labor Code § 226(a),

3    whether Defendant failed to pay overtime, whether Defendant failed to reimburse the class for

4    business expenses incurred, and whether Defendant failed to pay all wages due to former

5    employees.  In other words, certification of this class is appropriate because Defendant engaged in

6    uniform practices with respect to the class members.  Hanlon, 150 F.3d at 1022.

7          3.    Typicality

8          Rule 23 also requires that "the claims or defenses of the representative parties are typical of

9    the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Under Rule 23's permissive standard,

10   claims "need not be substantially identical," but are typical if the representative's claims are

11   "reasonably co-extensive with those of the absent class members."  Parsons v. Ryan, 754 F.3d 657,

12   685 (9th Cir. 2014) (quoting Hanlon, 150 F.3d at 1020).  Typicality is based on the "nature of the

13   claim or defense of the class representative, and not to the specific facts from which it arose or the

14   relief sought."  Id. (quoting Hanon v. Dataproducts, 976 F.2d at 508).  Typicality tests "whether

15   other members have the same or similar injury, whether the action is based on conduct which is not

16   unique to the named plaintiffs, and whether other class members have been injured by the same

17   course of conduct."  Id.  The requirements of commonality and typicality occasionally merge, and

18   "[b]oth serve as guideposts for determining whether under the particular circumstances

19   maintenance of a class action is economical and whether the named plaintiff's claim and the class

20   claims are so interrelated that the interests of the class members will be fairly and adequately

21   protected in their absence."  Id. (quoting Wal-Mart Stores, Inc., 564 U.S. at 349 n.5).

22         As with the commonality requirement, the Court finds the typicality requirement is also

23   satisfied since Plaintiff's claims arise from the same factual bases and are premised upon the same

24   legal theories as those applicable to the purported class members.  Plaintiff, like every other class

25   member, was employed by Defendant as a non-exempt employee and, like every other class

26   member, was allegedly subject to the same employment practices concerning rest periods and

27   expense reimbursement.  Plaintiff, like every other class member, also seeks compensation and

28   penalties as a result of Defendant's uniform policies and practices.  Thus, the Court finds the

1    typicality requirement has been met.

2            4.      Adequacy of Representation

3            The Court must ensure "the representative parties will fairly and adequately protect the

4    interests of the class." Fed. R. Civ. P. 23(a)(4).  In determining whether the named plaintiffs will

5    adequately represent the class, courts must resolve two questions: "(1) do the named plaintiffs and

6    their counsel have any conflicts of interest with other class members and (2) will the named

7    plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Ellis v. Costco

8    Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) (quoting Hanlon, 150 F.3d at 1020).  "Adequate

9    representation depends on, among other factors, an absence of antagonism between representatives

10   and absentees, and a sharing of interest between representatives and absentees." Id. (citing Molski

11   v. Gleich, 318 F.3d 937, 955 (9th Cir. 2003)).  Class representatives "must be part of the class and

12   possess the same interest and suffer the same injury as the class members." Amchem Prod., Inc. v.

13   Windsor, 521 U.S. 591, 626 (1997) (internal quotations and citations omitted).  This factor also

14   tends to merge with the commonality and typicality criteria of Rule 23.  Id. at 626 n.20.

15           Here, the Court finds the representative Plaintiff and class counsel are adequate

16   representatives of the class.  As the Court has noted, Plaintiff and the class share common injuries

17   and possess the same interests.  Plaintiff and counsel have averred they have no conflicts of interest

18   with the class and have prosecuted the action vigorously up to this point.  (See Mot. 12–13; Decl.

19   of Mieshia Maria Jackson in supp. of Mot. ("Jackson Decl.") ¶ 8, ECF No. 15-7; Ackermann Decl.

20   ¶¶ 2; Decl. of Jonathan Melmed in supp. of Mot. ("Melmed Decl.") 2, ECF No. 15-6.)  Nothing

21   indicates to the Court that they will not continue to do so.

22           Plaintiff avers that as class representative, she provided time and factual background to class

23   counsel for the proposed mediation and complaint, participated in calls to discuss litigation and

24   settlement strategy, and provided and reviewed relevant documents.  (Jackson Decl. ¶ 9.)  Counsel

25   also details work they performed prosecuting this case up to this point.  This includes conducting

26   extensive investigation and discovery, calculations and risk evaluation, substantial exchanges of

27   documents, participating in a full day of private mediation, weeks and months of continued arms-

28   length negotiations and investigations into the merits of the claims and defenses thereafter —

1    including the issue of whether Plaintiff's claims were amenable to class treatment and discussion

2    of potential damages pertaining to each of the 1,771 class members based on their individual

3    employment records — and significant confirmatory discovery.  (See Melmed Decl. 14–16, 22,

4    25–26; Ackermann Decl. ¶¶ 13, 15–18, 53–66.)  Further, based on review of the submitted

5    declarations, the Court finds Plaintiff's counsel have demonstrated they have sufficient experience

6    litigating employment class actions in which they were certified by the state and federal courts as

7    competent and adequate class counsel.  (See Ackermann Decl. ¶¶ 4–12; Melmed Decl. ¶¶ 5–9.)

8           Accordingly, the Court finds Plaintiff has demonstrated she will adequately and fairly

9    protect the interests of the class and recommends appointing Plaintiff as class representative.  Fed.

10   R. Civ. P. 23(a)(4).  Similarly, based on the aforementioned litigation efforts detailed by counsel,

11   the Court recommends Craig J. Ackermann of Ackermann & Tilajef, P.C. and Jonathan Melmed

12   of Melmed Law Group P.C. be appointed class counsel in this matter.

13          5.      Rule 23(b) Criteria

14          Lastly, as the Court has noted, Plaintiff must also meet one of the three subdivisions of  Rule

15   23(b) to certify the class.  Fed. R. Civ. P. 23(b).  Plaintiff asserts the proposed class meets the

16   requirements of Rule 23(b)(3).

17          Under Rule 23(b)(3), a class action may proceed where "the court finds that the questions

18   of law or fact common to class members predominate over any questions affecting only individual

19   members, and that a class action is superior to other available methods for fairly and efficiently

20   adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Matters pertinent to this determination

21   include: "(A) the class members' interests in individually controlling the prosecution or defense of

22   separate actions; (B) the extent and nature of any litigation concerning the controversy already

23   begun by or against class members; (C) the desirability or undesirability of concentrating the

24   litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class

25   action."  Fed. R. Civ. P. 23(b)(3)(A)–(D).  The fact that the parties have reached a settlement is

26   relevant to consideration of these factors and when "[c]onfronted with a request for settlement-only

27   class certification, a district court need not inquire whether the case, if tried, would present

28   intractable management problems [under Rule 23(b)(3)(D)], for the proposal is that there be no

1  trial." Amchem Prod., Inc., 521 U.S. at 620. However, "other specifications of the Rule — those

2  designed to protect absentees by blocking unwarranted or overbroad class definitions — demand

3  undiluted, even heightened, attention in the settlement context." Id.

4       Here, the Court finds that a class action is superior to other forms of adjudication. Given

5  the common claims pertaining to the class members, the Court finds questions of law or fact

6  common to the class members predominate over any questions affecting only individual members.

7  Further, the Court finds a class action avoids the inefficiency of each class member litigating similar

8  claims individually. Resolution of the claims of approximately 1,771 total class members in one

9  action is far superior to individual lawsuits because it promotes consistency and efficiency of

10  adjudication. Therefore, the Court finds that a class action is the superior method for adjudicating

11  the claims in this action.

12       For the foregoing reasons, the Court finds Plaintiff has sufficiently met the requirements of

13  Rule 23(a) and (b), and recommends the class be preliminarily and conditionally certified for

14  purposes of settlement, subject to a final fairness hearing and certification of the settlement class

15  under the Federal Rules of Civil Procedure and related case law.

16      **B.**    **Preliminarily Approving Class Action Settlement**

17       Having concluded that class treatment appears to be warranted, the Court now considers

18  whether the proposed settlement is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2); Alberto

19  v. GMRI, Inc., 252 F.R.D. 652, 664 (E.D. Cal. Jun. 24, 2008). The role of the district court in

20  evaluating the fairness of the settlement is not to assess the individual components, but to consider

21  the settlement as a whole. Lane, 696 F.3d at 818–19. In making this inquiry, the Court should

22  weigh the strength of Plaintiff's case; the risk, expense, complexity, and likely duration of further

23  litigation; the stage of the proceedings; and the value of the settlement offer. Collins v. Cargill

24  Meat Solutions Corp., 274 F.R.D. 294, 301 (E.D. Cal. 2011); Torrisi v. Tucson Elec. Power Co., 8

25  F.3d 1370, 1375 (9th Cir. 1993)). However, "[g]iven that some of these 'fairness' factors cannot

26  be fully assessed until the Court conducts the final approval hearing, 'a full fairness analysis is

27  unnecessary at this stage.' " Tijero v. Aaron Bros., Inc., 301 F.R.D. 314, 324 (N.D. Cal. 2013)

28  (quoting Alberto, 252 F.R.D. at 665).

Rather, preliminary approval of a settlement and notice to the proposed class is appropriate if: (1) the proposed settlement appears to be the product of "serious, informed, non-collusive negotiations"; (2) the proposed settlement falls with the range of possible approval; (3) the proposed settlement does not improperly grant preferential treatment to class representatives or segments of the class; and (4) the proposed settlement has no obvious deficiencies.  Collins, 274 F.R.D. at 301–02 (citing In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

> 1. The Proposed Settlement Appears to be the Product of Serious, Informed, Non-Collusive Negotiations

The Ninth Circuit observed that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.' "  Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."  Id. at 625, 628.

In this case, the proposed gross settlement amount is $2,400,000.  (Agreement ¶ 1.21.)  Class counsel reports this settlement was reached after the completion of significant investigation, exchanges of documents, discovery and confirmation discovery, calculations, and evaluation of the claims (as previously set forth).  The extent of discovery completed to this point thus favors approval of the settlement.  See Carlin v. DairyAmerica, Inc., 380 F. Supp. 3d 998, 1012 (E.D. Cal. 2019) (quoting Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) ("The Court should favor settlement where a considerable amount of discovery has been conducted, 'because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.' "); Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.").

Counsel further maintains the proposed settlement amount is reasonable because it takes into account calculations of each class member's employment records as well as the risks discussed in greater detail herein and Defendant's "realistic risk-adjusted exposure," which is calculated at

$2,471,849.88.   (See Ackermann Decl. ¶¶ 53–69; Melmed Decl. 14–16.)   Given counsel's experience and familiarity with the facts, their recommendation that the settlement be approved is entitled to significant weight.   See Nat'l Rural Telecomms., 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation"); see also Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.")   Thus, based upon the parties' agreement that the proposed settlement amount provides adequate compensation for the wage and hour claims against Defendant, the Court finds the amount offered supports approval of the settlement.

The parties also maintain the settlement was achieved through "extensive and intensive arms' length negotiations" which was adversarial and non-collusive in nature."   (See Ackermann Decl. ¶ 53; Melmed Decl. 16.)   While the Court acknowledges this does not in and of itself create a presumption of fairness, the Ninth Circuit has held it is a factor in determining whether the proposed settlement is fair, reasonable, and adequate.   See Roes, 1–2 v. SFBSC Mgt., LLC, 944 F.3d 1035, 1049 (9th Cir. 2019).   Moreover, the settlement was reached after a full day of mediation with employment law mediator Lou Marlin, and several months of subsequent negotiations which were aided by Mr. Marlin.   (See id.)   The assistance of a mediator in negotiating the settlement also supports a determination that the settlement was negotiated at arm's length and is non-collusive. See Millan, 310 F.R.D. at 613 (stating participation in mediation supports determination that settlement process was not collusive); Villegas v. J.P. Morgan Chase & Co., No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (stating that the fact settlement was reached following two sessions with a private mediator experienced in wage and hour class action "tend[ed] to support the conclusion that the settlement process was not collusive."); Satchell v. Fed. Express Corp., No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

Finally, in assessing whether the settlement agreement is the product of collusion, the Court

must consider whether the class representative and counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent." Lane, 696 F.3d at 819. For reasons discussed in greater detail below, the Court finds the representation incentive and requested attorneys' fees appear reasonable for purposes of this preliminary approval stage and therefore do not suggest the settlement resulted from collusion.

Based on a review of the course of litigation in this matter, the mediation, counsel's declarations describing settlement and valuation of the claims, and the class representative's contributions to the litigation, the Court finds the proposed settlement appears to be the product of "serious, informed, non-collusive negotiations" and this factor weighs in favor of finding the settlement agreement is fair, reasonable, and adequate.

2.     The Settlement Falls Within the Range of Possible Approval

"To determine whether a settlement 'falls within the range of possible approval' a court must focus on 'substantive fairness and adequacy,' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.' " Collins, 274 F.R.D. at 302 (quoting In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1080). The Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." Officers for Justice, 688 F.2d at 625, 628. More specifically, in determining whether the relief provided to the class is adequate, the Court is to take into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv).

a.     Costs, Risks, and Delay of Trial and Appeal

" '[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution [, especially] in complex class action litigation . . . ." In re Syncor ERISA Litig., 516 F.3d 1095, 1101 (9th Cir. 2008) (quoting Officers for Justice, 688 F.2d at 625). Thus, "[a]pproval of settlement is preferable to lengthy and expensive litigation with uncertain

1   results." Munoz v. Giumarra Vineyards Corp., No. 1:09-cv-00703-AWI-JLT, 2017 WL 2665075,

2   *9 (E.D. Cal. Jun. 21, 2017) (quoting Nat'l Rural Telecomms., 221 F.R.D. at 529).

3        Here, if the settlement were to be rejected, the parties would have to engage in further

4   litigation, including certification of a class and discovery on the issue of damages.  As the Court

5   previously noted, Defendant disputes and denies each of Plaintiff's claims and has asserted twenty-

6   two affirmative defenses, based on both factual and legal grounds, in defense of this action.  Based

7   on this dispute, the Court agrees with Plaintiff that continued litigation would be costly and time

8   consuming.  Further, Plaintiff identified a number of risks and uncertainties presented by continued

9   litigation.  For example, there appears to be a case split with respect to the issue of whether on-

10  premises rest break policies are illegal.  Compare Augustus v. ABM Security Serv., Inc., 2 Cal. 5th

11  257, 269 (2016) (security guard employer could not assert control over how or where its employees

12  spent their break time) with Bell v. Home Depot U.S.A., Inc., No. 2:12-cv-02499-JAM-CKD, 2017

13  WL 1353779 (E.D. Cal. Apr. 11, 2017) (holding on-premises rest period policy was lawful).  This

14  issue goes straight to one of Plaintiff's main claims, thus presenting a risk to continued litigation.

15  Plaintiff also maintains there was a risk that she would be unable to certify the class with respect to

16  her on-premises rest period claim.  (Mot. at 23); see also Ordonez v. Radio Shack, Inc., No. CV

17  10-7060-CAS (JCGx), 2013 WL 210223 (C.D. Cal. Jan. 17, 2013) (finding predominance and

18  superiority elements not met regarding unlawful rest break policy and denying certification).  In

19  another example, Plaintiff discusses the heated dispute between the parties regarding penalties.

20  (Mot. 23–24.)  Continued and protracted litigation over the issues of whether nonpayment of meal

21  and rest period premiums triggered wage statement penalties and whether Plaintiff could establish

22  the requisite willfulness for penalties to attach would pose additional risks in the litigation and

23  would be costly and time consuming.  Finally, the Court acknowledges that, because of the ongoing

24  judicial emergency in the Eastern District of California, Plaintiff and the class's opportunity to take

25  this matter to trial would be significantly delayed.  Indeed, in its "Standing Order in Light of

26  Ongoing Judicial Emergency in the Eastern District of California" issued on March 5, 2020 in the

27  instant action, the District Judge makes plain that "for the duration of this judicial emergency and

28  absent further order of this court in light of statutory requirements or in response to demonstrated

1   exigent circumstances, no new trial dates will be scheduled in civil cases assigned to 'DAD' and

2   'NONE'."  (ECF No. 2-2 at 4 (emphasis omitted)); see also Letter regarding Caseload Crisis from

3   the   Judges   of   the   Eastern   District   of   California   (Jun.   19,   2018),

4   http://www.caaed.uscourts.gov/CAEDnew/index.cfm/news.important–letter–re–caseload–crisis/.

5   Based on the foregoing, the Court finds this element weighs in favor of finding the proposed

6   settlement is fair, reasonable and adequate.

7          **b.        Effectiveness of the Proposed Method of Distributing Relief**

8          As previously noted, the Court is to consider "the effectiveness of any proposed method of

9   distributing relief to the class, including the method of processing class-member claims."  Fed. R.

10  Civ. P. 23(e)(2)(C)(ii).  The Court has reviewed the proposed class notice and finds it is sufficiently

11  concise and easy to understand.   (See ECF No. 15-3 at 47–54.)   Important information is

12  emphasized through use of bold font, all caps lettering and clear headings, and the notice succinctly

13  provides the class member an explanation of his/her options with respect to the class action

14  settlement.  Notably, class members need not take any action to receive their settlement share;

15  rather,  the class notice explains that a class member need only take specific action if they wish to

16  opt-out of the settlement, object to any of the terms of the settlement, or dispute the amount of their

17  individual settlement share.  Finally, each class member has 180 days to cash his/her check before

18  it becomes void and the amount is donated to the legal aid organization, Central California Legal

19  Services.

20         The Court has also reviewed the claim form that class members must submit and finds it to

21  be equally clear, concise, and easy to understand.  (See id. at 56.)  The claim form is one page and

22  laid out in an easy-to-understand layout.  Further, each class member's class claim form will be

23  provided prepopulated stating the number of workweeks and estimated class settlement share.  The

24  method of processing claims also includes a procedure for claimants to dispute the presumptive

25  number of workweeks.  As discussed in detail further below herein, the Court finds this method of

26  notice is sufficient to put class members on notice of the settlement agreement and provide an

27  opportunity to exercise their rights regarding the settlement.  Considering these facts, the Court

28  finds the proposed method of distributing relief is effective, and weighs in favor of a finding that

1    the settlement agreement is fair, reasonable and adequate.

2              **c.       Terms of the Proposed Attorneys' Fees Award**

3              As noted above, in assessing the whether the relief provided the class is adequate, the Court

4    is to consider "the terms of any proposed award of attorney's fees, including timing of payment."

5    Fed. R. Civ. P. 23(e)(2)(C)(iii).  Rule 23(h) provides that "[i]n a certified class action, the court

6    may award attorney's fees and nontaxable costs that are authorized by law or by the parties'

7    agreement."   The Ninth Circuit has affirmed the use of two separate methods of calculating

8    attorney's fees, depending upon the case.  Hanlon, 150 F.3d at 1029.  In "common-fund" cases

9    where, as here, the settlement or award creates a large fund for distribution to the class, "the district

10   court has discretion to use either a percentage or 'lodestar method.' "  Id.  In the Ninth Circuit,

11   courts typically utilize twenty-five percent of the common fund as the "benchmark" for a reasonable

12   fee award, with adjustments provided there is adequate explanation in the record for any special

13   circumstances that justify departure.  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 942

14   (9th Cir. 2011).  Prior to In re Bluetooth, the Ninth Circuit noted the usual range for common fund

15   attorney fees is between twenty to thirty percent.  Vizcaino v. Microsoft Corp., 290 F.3d 1043,

16   1047 (9th Cir. 2002).

17            The "lodestar" method is typically used where the benefit received by the class is primarily

18   injunctive in nature, and therefore, monetary benefit is not easily calculated.  In re Bluetooth, 654

19   F.3d at 941.  The "lodestar" approach calculates attorney fees by multiplying the number of hours

20   reasonably expended by a reasonable hourly rate.  Gonzalez v. City of Maywood, 729 F.3d 1196,

21   1202 (9th Cir. 2013); Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008).  Since

22   the benefit to the class is easily calculated in a common find case, courts may award a percentage

23   of the common fund rather than engaging in a "lodestar" analysis to determine the reasonableness

24   of the fee request.  In re Bluetooth, 654 F.3d at 942.  When applying the percentage of the common

25   fund method in calculating attorney fees, courts use the "lodestar" method as a crosscheck to

26   determine the reasonableness of the fee request.  See Vizcaino, 290 F.3d at 1050.  "This amount

27   may be increased or decreased by a multiplier that reflects any factors not subsumed within the

28   calculation, such as 'the quality of representation, the benefit obtained for the class, the complexity

1    and novelty of the issues presented, and the risk of nonpayment.' " Adoma, 913 F. Supp. 2d at 981

2    (quoting In re Bluetooth, 654 F.3d at 942).

3              Here, the proposed settlement agreement provides that class counsel may request fees

4    payment of up to twenty-five percent of the settlement amount (i.e., up to $600,000) and an

5    expenses payment of up to $20,000.  (Mot. 29–30; Agreement ¶ 1.5.)  Counsel argues this amount

6    is eminently reasonable in light of class counsel's experience, the time they have devoted to

7    zealously advocating on behalf of Plaintiff and the class in this action, and the fact that Plaintiff's

8    initial retainer agreement provided for fees up to one-third of the amount obtained.[4]   (See

9    Ackermann Decl. ¶¶ 74–78; see also Melmed Decl. 28–29.)  Moreover, the Court acknowledges

10   the requested benchmark represents less than many fee awards in wage-and-hour class actions in

11   California.  See, e.g., Stuart v. Radio Shack Corp., No. C-07-4499 EMC, 2010 WL 3155645 (N.D.

12   Cal. Aug 9, 2010) (noting benchmark of 1/3 of total settlement was within range of percentages

13   courts have held reasonable in other class action lawsuits); Romero v. Producers Dairy Foods, Inc.,

14   No. 1:05-cv-00484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (awarding benchmark

15   fees of 1/3 of total settlement in wage and hour class action).  Because both the Ninth Circuit and

16   this Court have applied a twenty-five percent benchmark for the award of attorneys' fees in

17   common fund cases, see In re Bluetooth, 654 F.3d at 942; Rodriguez v. M.J. Brothers, Inc., No.

18   1:18-cv-00252-SAB, 2019 WL 3943856 (E.D. Cal. Aug. 21, 2019), and for the other

19   aforementioned reasons, the Court finds the preliminarily proposed attorneys' fees and expenses

20   award is reasonable, and this factor weighs toward finding the settlement agreement is fair,

21   reasonable and adequate.

22             Nonetheless, at the final approval hearing, the Court will employ the lodestar method to the

23   request for attorney fees as a cross check on the percentage method to ensure a fair and reasonable

24   result.  Alberto, 252 F.R.D. at 668.  Therefore, counsel is advised that in submitting the final

25   approval of class action settlement they will be required to provide a thorough fee award petition

26   _____

27   [4] Class counsel additionally notes the Court need not decide the fees and costs at this time, but only authorize the class
notice to inform class members that counsel will seek fees and costs up to twenty-five percent of the gross settlement
amount in fees, plus actual litigation costs.  To that end, counsel asserts that a motion for attorneys' fees setting forth

28   counsel's fees in greater detail pursuant to the lodestar method will be filed prior to the expiration of the notice deadline
for consideration by the Court in connection with the parties' motion for final approval of the settlement.

1    that details the hours reasonably spent representing the class in this action.

2              **d.      Any Agreement Required to be Identified under Rule 23(e)(3)**

3            Finally, the Court is to consider any agreement required to be identified under Rule 23(e)(3).

4    Fed. R. Civ. P. 23(e)(2)(C)(iv).  "The parties seeking approval must file a statement identifying any

5    agreement made in connection with the proposal."  Fed. R. Civ. P. 23(e)(3).  Here, the parties have

6    identified no such agreement and the Court is not aware of any such agreement.  Accordingly, this

7    factor neither supports nor weighs against a finding that the settlement agreement is fair, reasonable

8    and adequate.

9              3.      <u>The Proposed Agreement Treats Class Members Equitably Relative to Each Other</u>

10           The Court is also to consider whether "the proposal treats class members equitably relative

11   to each other."  Fed. R. Civ. P. 23(e)(2)(D).  The class representative has an incentive to advance

12   his own interests over that of the class and class counsel owes the ultimate fiduciary responsibility

13   to the class as a whole and is not bound by the views of the named plaintiff regarding settlement.

14   <u>Staton</u>, 327 F.3d at 959–60.  Therefore, in assessing the fairness of the settlement, the Court must

15   determine  whether  the  settlement  "improperly  grant[s]  preferential  treatment  to  class

16   representatives or segments of the class."  <u>In re Tableware Antitrust Litig.</u>, 484 F. Supp. 2d at 1079.

17           In  assessing  the  appropriateness  of  class  representative  enhancements  or  incentive

18   payments, the Court must consider factors such as the actions the plaintiff took to protect the

19   interests of the class, the degree to which the class has benefitted, the amount of time and effort the

20   plaintiff expended in pursuing the litigation, and any notoriety or personal difficulties encountered

21   by the representative plaintiff, such as "reasonable fears of workplace retaliation."  <u>Munoz</u>, 2017

22   WL 2665075, at *27; <u>see also</u> <u>Staton</u>, 327 F.3d at 975–77.  Incentive awards may recognize a

23   plaintiff's "willingness to act as a private attorney general."  <u>Rodriguez v. West Publ'g Corp. (West</u>

24   <u>Publ'g)</u>, 563 F.3d 948, 958–59 (9th Cir. 2009).  Further, where the representative seeks an award

25   over the "presumptively reasonable" amount of $5,000, many courts in this Circuit also consider

26   the proportionality between the incentive payment and the range of class members' settlement

27   awards and the settlement amount.  <u>See Harris v. Vector Marketing Corp.</u>, No. C-08-5198 MEC,

28   2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases); <u>Dyer v. Wells Fargo Bank,</u>

1   N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014); Hopson v. Hanesbrands Inc., No. CV-08-0844 EDL,

2   2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009).  Given that service awards are at the discretion

3   of the district court, see In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000),

4   whatever the method used, the Court must make sure that where there is a "very large differential

5   in the amount of damage awards between the named and unnamed class members," that differential

6   is justified by the record.  Staton, 327 F.3d at 978.  Nevertheless, the Court remains mindful that

7   "[i]ncentive awards are fairly typical in class actions cases, West Publ'g, 563 F.3d at 958 (emphasis

8   omitted), and "are particularly appropriate in wage-and-hour actions where plaintiffs undertake a

9   significant 'reputational risk' by bringing suit against their former employers."  Bellinghausen v.

10  Tractor Supply Co., 306 F.R.D. 245, 267 (N.D. Cal. 2015) (citation omitted).

11          Here, Plaintiff seeks a service award in an amount up to $7,500, which is to be awarded

12  from the gross settlement amount of $2,400,000 prior to division of the net settlement amount of

13  $1,738,000 amongst the 1,771 class members.  (Agreement ¶¶ 5.1, 5.2, 5.3.)  The Court finds this

14  service award amount constitutes a moderately large differential with respect to the amounts to be

15  awarded to named versus unnamed class members, as it constitutes almost eight times the average

16  individual settlement payment of $981.36 per class member.   (See Ackerman Decl. ¶ 68

17  (calculating average individual settlement payment per class member as $981.36 on a net basis).)

18          To justify this award, Plaintiff avers that she provided invaluable assistance to class counsel

19  by providing factual background for the mediation and complaint, participated in phone calls to

20  discuss litigation and settlement strategy, and provided and reviewed relevant documents.  (Jackson

21  Decl. ¶ 9.)   Class counsel similarly assert they believe the award amount is reasonable

22  compensation "given the time and effort that Plaintiff devoted to this case," such as participating

23  in phone calls with class counsel, gathering highly relevant documents, and speaking to and

24  interviewing other class members.  (Melmed Decl. 29; Ackermann Decl. ¶ 71.)  Plaintiff also avers

25  that, in agreeing to serve as class representative, she undertook a financial risk because she could

26  become liable for defense costs if she did not win in the lawsuit and exposed herself to the risk of

27  negative publicity and reputational harm.  (Jackson Decl. ¶¶ 9–10; see also Ackermann Decl. ¶¶

28  71–72.)  The parties further proffer that Plaintiff signed a general release of claims that is broader

1    than the release of the other class members.  (See Melmed Decl. 29.)  The Court is also mindful

2    that, if Plaintiff had not initiated and pursued this litigation, the class members would not have

3    received any benefit.

4        Based on the foregoing, the Court finds it is reasonable to approve a service award to

5    Plaintiff for her contributions as class representative; however, it expresses some skepticism as to

6    whether this comparatively high amount of $7,500 is justified.  See Munoz, 2017 WL 2665075, at

7    * 27 (quoting Staton, 327 F.3d at 975) (incentive payments "are not to be given routinely.").  For

8    example, no one identifies the number of hours Plaintiff actually spent assisting in this litigation on

9    behalf of the class members as opposed to merely her individual claims (cf. Jackson Decl. ¶ 10

10   (Plaintiff merely asserts she spent "many hours . . . participating in the prosecution of this case")),

11   or indicates whether Plaintiff was deposed, provided any affidavits in support of the litigation, or

12   other tasks to benefit the class as opposed to her individual claims.  See Ogbuehi v. Comcast of

13   CA/CO/FL/OR, Inc., 303 F.R.D. 337, 353 (E.D. Cal. 2014) (noting counsel's generalized summary

14   of services the class representative provided was insufficient to enable the court to make a well-

15   informed decision regarding approval of the proposed enhancement award); see also Torchia v.

16   W.W. Grainger, Inc., 304 F.R.D. 256, 270–80 (E.D. Cal. 2014) (in determining amount of incentive

17   to be awarded, court must consider time expended and the fairness of the plaintiff's hourly rate);

18   Harris, 2012 WL 381202, at *7 (reducing incentive award where plaintiff failed to distinguish time

19   spent for benefit of class from time spent on the merits of her individual claims); cf. Bond v.

20   Ferguson Enterprises, Inc., No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879, *15 (E.D. Cal. Jun.

21   30, 2011) (incentive payment of $7,500 to two named plaintiffs deemed appropriate where they

22   provided significant assistance to class counsel, endured lengthy interviews, provided written

23   declarations, searched for and produced relevant documents and prepared and evaluated the case

24   for a full day mediation session).

25       The assertion that Plaintiff risked "negative publicity and reputational harm" similarly

26   appears speculative and vague as the statement lacks a factual basis.  See Harris, 2012 WL 381202,

27   at *7 (noting concerns about retaliation only apply where the plaintiff is still employed by the

28   defendant and reducing incentive award where asserted threat to future employment was "entirely

speculative"). Nor does Plaintiff indicate what additional claims she had against Defendant that she released, as compared to the other class members. See id. Plaintiff is therefore advised that to justify the full amount requested, she must provide a detailed declaration prior to the final approval hearing that describes her current employment status, any risks she faced as class representative, specific activities she performed as class representative, and the amount of time she spent on each activity, in accordance with the requirements discussed by the Court herein.

Nevertheless, based on the foregoing and for purposes of this preliminary approval of the settlement, the Court finds the settlement terms are "within the range of possible approval," Murillo v. Pac. Gas & Elec. Co., 266 F.R.D. 468, 479 (E.D. Cal. 2010). Accordingly, this factor demonstrates the settlement agreement is fair, reasonable, and adequate, and weighs in favor of preliminary approval of the settlement.

### 4.   No Obvious Deficiencies

Finally, the Court sees no obvious deficiencies in the terms of the settlement agreement, including with respect to the class representative award or class counsel's requested fees and expenses (which are still subject to final Court approval). Moreover, the settlement agreement does not give any improper preferential treatment to Plaintiff, her counsel, or a particular segment of the settlement class. Indeed, the Court notes the settlement is non-reversionary, with any unclaimed awards to be distributed to the unaffiliated nonparty Central California Legal Services. (Agreement ¶ 7.8.) Finally, the Court notes that class members may object to the settlement at a fairness hearing or may opt-out of being bound by the preliminarily approved class settlement.

In sum, because the Court finds the settlement agreement to have been reached only after extensive and costly investigation, arms-length negotiations in mediation, and because the terms contain no obvious deficiencies and do not appear to give preferential treatment to any certain individual or group, the Court recommends the proposed settlement (ECF No. 15-3) be preliminarily approved.

### 5.   Approval of Class Notice and Distribution to the Class

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." Hanlon, 150 F.3d at 1025. For a class certified under Rule 23(b)(3), as here, the Court must direct

to class members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). That notice must "clearly and concisely state, in plain, easily understood language," the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the class member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members under Rule 23(c)(3). Id. A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

Here, the Court finds the class notice, drafted jointly and agreed upon by the parties through their respective counsel, includes information regarding the nature of the action; a summary of the substance of the settlement, including Defendant's denial of liability; the definition of the class; the procedure and time period for objecting to the settlement, exclusion from the settlement, and participating in the settlement;[5] a statement that the District Court has preliminarily approved the settlement; and information regarding the calculation of settlement shares. (See Agreement Ex. 1–2.)

The class notice explains that class members who wish to participate in the settlement do not have to do anything to claim their share and also provides that any class member may choose to opt out of the class. The class notice also provides information concerning how to object to the settlement. Moreover, in accordance with Mercury Interactive Corp. Secs. Litig. v. Mercury Interactive Corp., 618 F.3d 988 (9th Cir. 2010), the application for attorneys' fees and costs will be filed before the end of the objection period and posted on a website as indicated in the class notice.

---

[5] The Court notes that a number of spaces throughout the class notice and share form referencing the settlement administrator and deadlines are highlighted yellow or include a bracketed space indicating further information is to be filled in. Notably, the share form (ECF No. 15-3 at 56) provides the contact information for ILYM Group, Inc., rather than CPT Group, Inc., the parties' currently preferred settlement administrator as reflected in the declarations of class counsel and the parties' moving papers. Presumably, this information will be updated, and the other unfilled values will similarly be properly filled in upon issuance of the Court's order appointing the settlement administrator, providing relevant hearing dates and approving other terms of the settlement.

As a result, all class members will have ample opportunity to review and comment on the attorneys' fees and costs provisions before the objection deadline.

The Court also finds the mailing and distribution of the class notice satisfies the requirements of due process and is the best notice practicable under the circumstances. More specifically, individual notices will be mailed to all class members whose identities are known to the parties, and such notice is the best notice practicable. Moreover, per the settlement agreement, the settlement administrator's duties include: preparing and mailing the class notice packet to class members, as well as following up with reasonable skip tracing; conducting a national change of address search to update any addresses provided; mailing a copy of the notice to all class members by first class regular U.S. Mail, using the most current mailing address information provided by Defendant and/or obtained by the settlement administrator; engaging in address searches which includes skip tracing; and when necessary, using social security numbers to obtain better address information and attempting to call such class members. (Agreement ¶ 6.3.) And, in the event a notice packet is returned because of an incorrect address, the settlement administrator will be responsible for taking reasonable steps to trace the mailing address of the relevant class member and promptly re-mailing the notice package to the class member. (See ECF No. 15-4.)

Accordingly, the Court finds the proposed class notice is the best notice practicable under the circumstances and therefore sufficient under Rule 23.

Considering the risks Plaintiff would face in taking this case to trial, together with the value of all of the claims being released and the value of the proposed settlement to the class members in light of the apparent strengths and weakness of the claims and defenses, the Court concludes the proposed settlement, on the current record, is "fair, reasonable, and adequate" within the meaning of Rule 23(e)(2). Accordingly, the Court will recommend granting Plaintiff's motion for preliminary approval of the settlement.

## IV.

## CONCLUSION AND RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.      The motion for preliminary approval of the proposed settlement (ECF No. 15) be

1    GRANTED;

2    2.    The following class be PRELIMINARILY CERTIFIED for settlement purposes

3    only, and deemed to meet all of the requirements for class certification:

4    All hourly non-exempt individuals who are or were employed
     by Defendant in California at any point from January 21,
5    2016 through July 16, 2021.

6    3.    The settlement be PRELIMINARILY APPROVED, based on the finding that the

7    settlement agreement complies with the requirements of Federal Rules of Civil

8    Procedure 23(a) and 23(b)(3);

9    4.    The proposed class notice and share form to be disseminated to class members, in

10    substantially the form attached to the settlement agreement, be APPROVED;

11    5.    The procedure for class members to participate in, opt out of, and object to the

12    settlement be APPROVED as set forth in the settlement agreement;

13    6.    The Court DIRECT the mailing of the class notice and share form by first class U.S.

14    Mail to the class members in accordance with the implementation schedule as set

15    forth at ECF No. 15-8 at 3–4 and incorporated by reference herein;

16    7.    Plaintiff Mieshia Marie Jackson be APPOINTED as class representative;

17    8.    Craig J. Ackermann of Ackermann & Tilajef, P.C. and Jonathan Melmed of Melmed

18    Law Group P.C. be APPOINTED as class counsel;

19    9.    CPT Group, Inc. be APPOINTED as the settlement administrator to administer the

20    settlement pursuant to the terms of the settlement agreement; and

21    10.    The Court set a final approval and fairness hearing and schedule based upon the

22    implementation schedule set forth in the motion for preliminary approval (ECF No.

23    15-8 at 3–4).

24    These findings and recommendations are submitted to the district judge assigned to this

25    action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14)

26    days of service of this recommendation, any party may file written objections to these findings and

27    recommendations with the Court and serve a copy on all parties.  Such a document should be

28    captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge

will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 3, 2021**

_____
UNITED STATES MAGISTRATE JUDGE