**ACKERMANN & TILAJEF, P.C.**
Craig J. Ackermann (SBN 229832)
cja@ackermanntilajef.com
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Phone: (310) 277-0614
Fax: (310) 277-0635

**MELMED LAW GROUP P.C.**
Jonathan Melmed (SBN 290218)
jm@melmedlaw.com
Kyle D. Smith (SBN 280489)
ks@melmedlaw.com
1801 Century Park East, Suite 850
Los Angeles, California 90067
Phone: (310) 824-3828
Fax: (310) 862-6851

*Attorneys for Plaintiff, the Putative Class, the LWDA and the Aggrieved Employees*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIESHIA MARIE JACKSON, an individual on behalf of herself, the State of California, as a private attorney general, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FASTENAL COMPANY, a Minnesota Corporation; and DOES 1 TO 20,<br><br>Defendants. | CASE NO.: 1:20-cv-00345-JLT-SAB<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES & COSTS**<br><br>Date: October 13, 2022<br>Time: 11:00 a.m.<br>Judge: Hon. Stanley A. Boone<br>Dept.: Courtroom 9<br><br>Action Filed: January 21, 2020<br>Removal Date: March 4, 2020 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that, on October 13, 2022 at 11:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 9 of the United States District Court for the Eastern District of California, pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), Plaintiff MIESHIA MARIE JACKSON ("Plaintiff") individually and on behalf of all others similarly situated, will move this Court for entry of an Order approving Plaintiff's Counsel's request for 25% of the Gross Settlement Amount ("GSA") as attorneys' fees (i.e., $600,000) and reimbursement of litigation costs in the amount of $11,514.40, an amount less than the $20,000 amount that was preliminarily approved by this Court, and the actual amount litigation costs incurred by Plaintiff's Counsel.

This Motion will be heard at the same time as Plaintiff's forthcoming Motion for Final Approval of the Class Action Settlement in this Case. Plaintiff files this Motion at this time, before the deadline for class members to opt-out or object, pursuant to the Ninth Circuit's ruling in the case of *Mercury Interactive Corp. Sec. Lit v. Mercury Interactive Corp.*, 618 F.3d 988, 994-95 (9th Cir. 2010) (fee motions in class actions should be filed before the objection deadline); *Partl v. Volkswagen, AG (In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig)*, 895 F.3d 597, 615 (9th Cir. 2018). Plaintiff is not submitting a Proposed Order with this Motion for Attorneys' Fees and Costs, but will submit a combined Proposed Order regarding final approval and fees, concurrently with his Motion for Final Approval.

This motion is based upon the supporting Memorandum of Points and Authorities, the Declarations of Craig Ackermann and Jonathan Melmed submitted herewith, all other papers and records on file in this action, including, without limitation, Plaintiff's Motion for Preliminary Approval of Class Action Settlement and all supporting papers, the Court's Findings and Recommendations Recommending Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement, the Court's Order Adopting Findings and Recommendations, and on such oral and documentary evidence as may be presented at the hearing on this Motion.

The Parties met and conferred on May 31, 2022 in accordance with Judge Thurston's Standing Order. Although Defendant's counsel does agree with all the factual and legal contentions in our motion, they do not oppose an award of 25% of the common fund as attorneys' fees and our litigation costs on

top of the attorneys' fee award, if and when final approval is granted to the settlement.

Dated: May 31, 2022                              Respectfully submitted,

                                                 ACKERMANN & TILAJEF, P.C.
                                                 MELMED LAW GROUP, P.C.

                                    By:          /s/ Craig J. Ackermann
                                                 Craig J. Ackermann, Esq.
                                                 Attorneys for Plaintiff and the Class

# **TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND..........................................2

    A.     Summary of Facts Leading Up to Preliminary Approval .......................2

III.   THE REQUESTED ATTORNEYS' FEE AWARD SHOULD BE GRANTED UNDER THE COMMON FUND DOCTRINE .............................................................4

    A.     The Circumstances of This Case Support A 25% Fee Award .................6

        1.     A Common Fund Fee Award Of 25% Of the Total Settlement Amount Is The Benchmark Award of Fees Typically Awarded in This Circuit .....................6

        2.     The Results Achieved are Excellent .................................7

        3.     The Risks of Litigation and of Losing Were Significant.....................12

        4.     Skills of Counsel and the Quality of Work...........................15

        5.     Class Counsel Represented the Class on a Contingency Fee Basis.....................15

        6.     The 25% Fee Request Here is Consistent With Awards in Similar Cases ............15

    B.     A Lodestar Cross-Check Does Not Warrant a Reduction in Fees .....................15

        1.     The Lodestar Multiplier is Within the Zone of Reasonableness..........................17

        2.     Class Counsel's Hourly Rates Are Reasonable ...................................18

IV.    CLASS COUNSEL'S REQUESTED COST REIMBURSEMENT SHOULD BE APPROVED ..................................................................................................20

V.     CONCLUSION..................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Adoma v. The University of Phoenix, Inc.*, No. CIV-S-10-0059 LKK/GGH, 2012 WL 6651141 .......... 19

*Augustus v. ABM Security Services, Inc.* (2016) 2 Cal. 5th 257 ............................................. 13

*Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) ......................................................... 19

*Bell v. Home Depot U.S.A., Inc.* (E.D.Cal., Apr. 11, 2017, No. 2:12–cv–02499 JAM–CKD) 2017 WL 1353779 ............................................................................................. 1, 8

*Bell v. Home Depot U.S.A., Inc.*, 2017 U.S. Dist. LEXIS 55442 (E.D. Cal. Apr. 10, 2017)............... 13

*Birch v. Office Depot, Inc.* (S.D. Cal. Sept. 28, 2007) ................................................... 7

*Blum v. Stenson*, 465 U.S. 886 (1984) ............................................................... 5, 18

*Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980)..................................................... 4

*Bond v. Ferguson Enterprises, Inc.* (E.D. Cal June 29, 2011) 2011 WL 26488879 ............... 7, 19, 20

*Bono Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th 968, 977 (1995) ............................... 1, 10

*Bowen v. Target Corporation* (C.D. Cal., Jan. 24, 2020, No. EDCV 16-2587 JGB(MRWx)) 2020 WL 1931278 ........................................................................................... 8

*Chemi v. Champion Mortg.* No. 05-1238, 2009 WL 1470429 ........................................... 20

*Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053 (9th Cir. 2009) ...................... 18

*Cicero v. DirecTV, Inc.,* 2010 U.S. Dist. Lexis 86920 at *17 (C.D. Cal. 2010)...................... 7

*Elliott v. Rolling Frito-Lay Sales, LP*, No. SACV 11-01730 DOC, 2014 WL 2761316 ................ 7

*Fernandez v. Victoria's Secret Stores, LLC*, No. CV 06-04149 MMH (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008) ............................................................................... 7

*Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002) ......................... 17

*Fleming v. Covidien Inc.,* No. (OPX) (C.D. Cal. Aug. 12, 2011) 2011 WL 7563047 ................... 14

*Fox v. Vice,* 563 U.S. 826, 838 (2011)................................................................ 16

*Franco v. Ruiz Food Products, Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801 .................... 19, 20

*Frlekin v. Apple, Inc.*, 8 Cal. 5th 1038 (Cal. Feb. 13, 2020)........................................ 10

*Garcia v. Gordon Trucking, Inc.*, No. 1:10-cv-0324 AWI SKO, 2012 WL 5364575...................... 19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (1998)................................................ 6

*Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) ..................................................... 16

*Hightower v. JPMorgan Chase Bank, N.A.*, No. CV111802PSGPLAX, 2015 WL 9664959 .................. 7

*Hubbs v. Big Lots Stores, Inc.* (C.D. Cal., Mar. 16, 2018, No. LA CV15-01601 JAK (ASx)) 2018 WL 5264141 ................................................................................................................................ 9

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)......................... 6

*In re Consumer Privacy Cases*, 275 Cal.App.4th 545, 557 (C.D. Cal. 2009) ............................. 7

*In re Omnivision*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2008) ........................................... 6, 20

*In re Online DVD-Rental Antitrust Litigt.*, 779 F.3d 934, 954 (9th Cir. 2015) ............................ 2

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.* ............................................................................. 18

*Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001) .................................................................. 18

*Kimbo v. MXD Group, Inc.* ........................................................................................................ 18

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009) ........................................ 6

*Laffitte v. Robert Half Internat., Inc.*, 1 Cal. 5th 480, 503 (2016) ............................................. 5

*Lopes v. Kohl's Department Stores* (Alameda Super. Ct., Feb. 18, 2017, No. RG08380189)...... 9

*Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308 (2018) ........................................ 13

*Martin v. FedEx Ground Package Sys., Inc.*, No. C 06-6883 VRW, 2008 WL 5478576 ............. 7

*Mejia v. Walgreen Co.*, 2021 U.S. Dist. LEXIS 56150 (E.D. Cal. March 23, 2021) ................. 18

*Mercury Interactive Corp. Sec. Lit v. Mercury Interactive Corp.*, 618 F.3d 988, 994-95 (9th Cir. 2010). 2

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ................................. 15, 17

*Naranjo v. Spectrum Services, Inc.*, 40 Cal.App.5th 444, 474 (2019)..................................... 13

*Ordonez v. Radio Shack, Inc.*, 2013 U.S. Dist. LEXIS 7868, *35-41 (C.D. Cal. Jan. 17, 2013) ............ 14

*Partl v. Volkswagen, AG (In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig)*, 895 F.3d 597, 615 (9th Cir. 2018) ............................................................................. 2

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. Sept. 27, 1989)............ 7

*Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 271-72 (9th Cir. 1989)...................... 6

*Perkins v. Mobile Housing Bd.*, 847 F.2d 735, 738 (11th Cir. 1988) ....................................... 16

*Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)............................................................ 6

*Quezada v. Con-Way Freight, Inc.*, No. 09-cv-3670 ................................................................... 7

*Rippee v. Boston Mkt. Corp.*, Case No. 05cv1359 BTM (JMA) ................................................. 7

*Ritenour v. Carrington Mortg. Servs., LLC*, No. SACV1602011CJCDFMX, 2018 WL 5858658 (C.D. Cal. Sept. 12, 2018) ................. 10

*Ritenour v. Carrington Mortgage Services, LLC* (C.D. Cal. Sept. 12, 2018, No. SACV 16-02011 CJC(DFMx)) 2018 WL 5858658 ............................................................................................... 9

*Rodriguez v. M.J. Brothers, Inc.*, No. 1:18-cv-00252-SAB, 2019 WL 3943856 (E.D. Cal. Aug. 21, 2019) ...................................................................................................................................... 6

*Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 U.S. Dist. LEXIS 80776 ............ 20

*Serrano v. Unruh*, 32 Cal. 3d 621, 640 n.31 (1982) ................................................................ 18

*Shirrod v. Dir., OWCP*, 809 F.3d 1082, 1087 (9th Cir. 2015) .................................................. 18

*Singer v. Becton Dickinson and Co.*, No. 08-CV-821-IEG (BLM) 2010 WL 2196104 ........................... 7

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (1990) ........................... 4

*Tehachapi Unified Sch. Dist. v. K.M.*, 16-cv-01942-DAD, 2019 WL 331153 ................................. 19

*Uschold v. NSMG Shared Servs., LLC*, 2020 U.S. Dist. LEXIS 99258 (N.D. Cal. June 5, 2020) ........... 18

*Van Vranken v. Atl. Richfield Co.* .................................................................................. 18

*Vasquez v. Coast Valley Roofing, Inc.* (E.D. Cal. 2010) ................................................... 7, 20

*Videau v. Caritas Mgmt. Corp.* (San Francisco Sup. Ct., App. Div., Feb. 1, 2021, No. CGC-19-575502) 9

*Vincent v. Hughes Air W., Inc.*, 557 F.2d at 769 (9th Cir. 1977) ............................................ 20

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 ..................................................... 2, 6, 15

*Wren v. RGIS Inventory Specialists* (N.D. Cal. Apr. 1, 2011) .................................................. 7

*Wright v. Tehachapi Unified Sch. Dist.*, No. 16-cv-01214-JLT, 2017 WL 3334015 ......................... 19

**Statutes**
Fed. R. Civ. P. 23 ...................................................................................................... ii

**Treatises**
*Newberg on Class Actions* at § 14:6 ................................................................................ 6

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.    INTRODUCTION

3

In connection with the Joint Stipulation re: Class Action Settlement ("Settlement" or "Settlement

4

Agreement") and the Joint Stipulation Re: Plaintiff's Motion for Order Granting Preliminary Approval of

5

Class Action Settlement ("Joint Stipulation") (Docs. 15-2 and 23) between Plaintiff MIESHIA MARIE

6

JACKSON ("Plaintiff") and Defendant, FASTENAL COMPANY ("Defendant" or "Fastenal"), Plaintiff

7

moves for an award of 25% of the $2,400,000 gross settlement amount (i.e., $600,000 in attorneys' fees)

8

and $11,514.40 in litigation costs. These amounts are allocated by and/or, in the case of the costs, are less

9

than the amount agreed to by the parties in their Settlement Agreement and have been noticed to the Class

10

Members, without objection to date.

11

Plaintiff's fee request here is consistent with the Ninth Circuit's 25% benchmark for fee awards in

12

class actions; is less than the 30% to 33.33% often approved in non-Mega fund class action settlements

13

(*see Romero v. Producers Dairy Foods, Inc.*, No. 1:05-cv-00484 DLB, 2007 WL 3492841, at *4 (E.D.

14

Cal. Nov. 14, 2007); is justified by the excellent result obtained in the face of a very significant risk of

15

loss on class certification and/or the merits, particularly where, as here, the only prior court in the Eastern

16

District to have addressed the legality of on-premises rest break policy granted a dispositive motion in

17

favor of the employer (*see Bell v. Home Depot U.S.A., Inc.,* No. 2:12–cv–02499 JAM–CKD) (E.D.Cal.,

18

Apr. 11, 2017, 2017 WL 1353779, at *2); and the fee is also justified by Class Counsel's creative and

19

novel reading of the case law, which plausibly explained how *Home Depot* and other courts had

20

erroneously  interpreted *Augustus v. ABM Security Services, Inc*., 2 Cal. 5th 257, 269 (2016) to allow on-

21

premises rest breaks because *inter alia* they ignored *Bono Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th

22

968, 977 (1995), holding that on-premises *meal* breaks were compensable time, and thus, any on-premises

23

requirement, whether in the meal break or rest break context, would constitute sufficient employer

24

"control" over workers during breaks such that the duty-free requirements of California break laws were

25

not met.  A lodestar cross-check further confirms the reasonableness of the fee request, as the requested

26

award amounts to a lodestar multiplier of 2.87, *see* Ackermann Fees Decl. ¶¶ 15-17, which is within the

27

range of multipliers approved by the Ninth Circuit on cross-checks for complex or risky cases, like this

28

one. *See, Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1037 (9th Cir. 2002).[1] Class Counsel's litigation cost reimbursement request of $11,514.40 is also clearly reasonable because Counsel requests costs in an amount *less than* the amount anticipated by the Settlement and preliminarily approved by this Court ($20,000.00), with the balance to be distributed pro rata to the participating Class Members. *Id.* ¶¶ 21-22.

In granting preliminary approval of the Settlement, the Court preliminarily certified the "Class" of **1,992** employees consisting of all hourly non-exempt individuals who are or were employed by Defendant in California at any point during the Class Period from January 21, 2016 through July 16, 2021. The Settlement is non-reversionary, and the Settlement shares will be distributed to the Class on a "checks-cashed" basis, meaning that Class members will automatically receive a *pro-rata* share of the Settlement based on the total number of workweeks worked for Defendant during the Class Period as a percentage of all workweeks worked during the Class Period, unless they affirmatively request to opt out of the Settlement on a timely basis. To date, with approximately two weeks left before the opt-out and objection deadline, there have been no objections and no opt-outs.

This Motion will be heard at the same time as Plaintiff's forthcoming Motion for Final Approval of the Class Action Settlement in this Case. Plaintiff files this Motion in advance of the filing deadline so as to provide Class Members with an opportunity to review it before their deadline to opt-out or object, pursuant to the Ninth Circuit's ruling in the case of *Mercury Interactive Corp. Sec. Lit v. Mercury Interactive Corp.*, 618 F.3d 988, 994-95 (9th Cir. 2010) (fee motions in class actions should be filed before the objection deadline); *Partl v. Volkswagen, AG (In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig)*, 895 F.3d 597, 615 (9th Cir. 2018) (class members should have a chance to object to the fee motion); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954 (9th Cir. 2015) (15-day period to object to fee motion sufficient).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Summary of Facts Leading Up to Preliminary Approval

Plaintiff set forth a detailed account of all relevant facts in her Motion for Preliminary Approval

---

[1] All references to the declarations submitted in support of Plaintiff's Motion for *Preliminary* Approval shall be cited herein as "[*Declarant's last name*] PAM Decl.", and those in support of this Motion for Attorneys' Fees shall be cited as "[*Declarant's last name*] Fees Decl."

of Class Action Settlement ("PAM") and will therefore avoid belaboring all of the facts and procedural backgrounds set forth therein, which are hereby incorporated herein by reference. *See* PAM § II. Instead, the following is a brief summary of the key facts of the case and new developments pertinent to this Fees and Costs motion since Plaintiff's filing of the PAM.

After duly exhausting its administrative remedies under California's Private Attorney General Act ("PAGA"), Plaintiff filed this class and PAGA representative action in Stanislaus County Superior Court on January 21, 2020, alleging (1) failure to pay overtime wages (Labor Code sections 510, 1198); (2) failure to provide compliant rest periods and/or pay missed rest period premiums (Labor Code section 226.7; IWC Wage Order); (3) failure to provide compliant meal periods and/or pay missed meal period premiums (Labor Code sections 226.7, 512); (4) failure to reimburse business expenses (Labor Code section 2802); (5) failure to provide complete and accurate wage statements (Labor Code section 226); (6) waiting time penalties (Labor Code sections 201-203); (7) UCL violations; and (8) PAGA penalties (Labor Code section 2699 *et seq.*). Ackermann PAM Decl. [Doc. 15-2], ¶ 16. On March 4, 2020, Defendant removed the case to the United States District Court, Eastern District of California. *Id.*

Shortly thereafter, the Parties agreed to a robust exchange of informal discovery and to attempt to resolve the action through private mediation. *Id.*, ¶ 17. As part of its informal discovery production, Defendant produced, among other things, information about the Class and Aggrieved Employees, including the class size, number of Aggrieved Employees and total number of weeks worked and pay periods during the Class Period and PAGA Period, respectively; Plaintiff's personnel file and timesheets; a sampling of payroll data for the Class, and all relevant policies and handbooks. *Id.*

On March 1, 2021, the Parties participated in a full-day mediation with wage and hour class action mediator Lou Marlin serving as the neutral. *Id.* ¶ 18. The settlement negotiations at the mediation were at arm's length and non-collusive. After a full-day mediation, the Parties were unable to settle the matter but after several weeks of further negotiations, with the assistance of the mediator, the Parties agreed to resolve the case on a class-wide basis and memorialized the agreement into a Memorandum of Understanding ("MOU"). In the months that followed the Parties drafted and executed the long form Settlement Agreement. *Id.*

Plaintiff subsequently moved for preliminary approval of the Settlement, and on February 16,

2022, the Court entered an order preliminarily approving the Settlement (the "PA Order") [Doc. 24]. In the PA Order, the Court adopted the Findings and Recommendations Recommending Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement (the "Findings and Recommendations") [Doc. 19] which stated, "the settlement agreement is fair, reasonable, and adequate" (Findings and Recommendations, throughout). The Court preliminarily approved the Settlement and scheduled a final fairness hearing. The information regarding whether the attorneys' fees and costs to Class Counsel are reasonable is submitted herewith, and by and through the declarations of Class Counsel.

The Court-approved Notice of Proposed Class Action Settlement and Hearing Date for Court Approval was mailed out by the Settlement Administrator to all Class Members on April 11, 2022, and Class Members have until June 10, 2022 to respond to the settlement, including requesting exclusion or objecting thereto. Ackermann Fees Decl., ¶ 4. Class Counsel has received reports from the Settlement Administrator that, as of the date of this filing, there have been no opt-outs and no objections. *Id. See also* Ackermann Fees Decl., ¶24; Exhibit E.  Upon the expiration of the response deadline, the Settlement Administrator will submit a declaration summarizing the results of Settlement administration and whether any responses or objections were received. *Id.* That information will be included with Plaintiff's motion for final approval.

### III.   THE REQUESTED ATTORNEYS' FEE AWARD SHOULD BE GRANTED UNDER THE COMMON FUND DOCTRINE

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorneys' fees from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). The doctrine is founded on the understanding that attorneys should normally be paid by their clients, and that unless attorneys' fees are paid out of the common fund where the attorneys' unnamed class member "clients" have no retainer agreement, those who benefited from the fund without contributing to those who created it would be unjustly enriched. *Boeing*, 444 U.S. at 478.

The Ninth Circuit has developed a strong preference for using the common fund method, also known as the "percentage-of-the-recovery" method. *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The California Supreme Court also recognized in *Laffitte v. Robert Half Internat., Inc.*, 1 Cal. 5th 480, 503 (Cal. 2016) that the common fund method whereby a

- 4 -

percentage of the common fund is selected to award fees is the primary method of awarding fees in class actions:

> We join the overwhelming majority of federal and state courts in holding that when class action litigation established a monetary fund for the benefit of the class members, and the trial court in its equitable powers awards Class Counsel a fee out of that fund, the court may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created.

*Id.* Explaining its ruling, the Court further held that "[t]he recognized advantages of the percentage method – including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging litigation – convince us the percentage method is a valuable tool that should not be denied by our trial courts." *Id.* (internal citations omitted). The U.S. Supreme Court has also specifically endorsed the percentage method, stating that "under the 'common fund doctrine' . . .a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

In prosecuting this action diligently and efficiently, Class Counsel has created a substantial and ascertainable fund for the benefit of Class members from which reasonable attorneys' fees can be easily calculated and awarded. Notably, the average gross recovery per Class Member will be $1,204.81, calculated as follows: $2,400,000 Gross Settlement Amount divided by 1,992 Class Members equals $1,204.81 per Class Member. The average net recovery per Class Member will be $872.48, calculated as follows $1,738,000 Net Settlement Amount divided by 1,992 Class Members equals $872.48 per Class Member. See PAM, § III, and Section I herein. The maximum gross settlement award will be substantially higher. As shown below, these results are excellent given the numerous litigation risks, including the substantial risk of loss on class certification and the merits in light of prior adverse rulings as to both, and the results obtained are consistent with, or improve upon the results secured in other class action settlements in similar cases alleging nearly identical challenges to on-premises rest break policies, that received approval of various courts, where fees were awarded in the range from 25% to 33.34% of the common fund.

///

MOTION FOR ATTORNEY'S FEES & COSTS

A. **The Circumstances of This Case Support A 25% Fee Award**

The ultimate goal in determining fees is to reasonably compensate counsel for their efforts in creating the common fund. *In re Omnivision*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2008) (citing *Paul, Johnson*, *Alston, & Hunt v. Graulty*, 886 F.2d 268, 271-72 (9th Cir. 1989)). "The Ninth Circuit has approved a number of factors which may be relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Id.* (citing *Vizcaino*, 290 F.3d at 1048-50). As discussed below, an analysis of these factors demonstrates that Class Counsels' fee request is justified.

1. *A Common Fund Fee Award Of 25% Of the Total Settlement Amount Is The Benchmark Award of Fees Typically Awarded in This Circuit*

Class Counsel only seeks 25% of the Gross Settlement Amount as attorneys' fees. The Ninth Circuit and this Court have held that 25% of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Rodriguez v. M.J. Brothers, Inc.*, No. 1:18-cv-00252-SAB, 2019 WL 3943856 (E.D. Cal. Aug. 21, 2019). Prior to *In re Bluetooth*, the Ninth Circuit noted the usual range for common fund attorneys' fees is between twenty to thirty percent. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1037 (9th Cir. 2002). The exact percentage varies depending on the facts of the case, and in "most common fund cases the award exceeds that benchmark [of 25%]." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009).

Notably, fees as high as 30-50% are commonly awarded in cases in which the common fund obtained is under $10 million. *See* Rubenstein, Conte and Newberg, *Newberg on Class Actions* at § 14:6; *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (1998); *Staton*, 327 F.3d at 952. A review of recent California district court cases "reveals that courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fund under $10 million." *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. Lexis 86920 at *17 (C.D.

Cal. 2010).[2] Despite the reasonableness of fees in the 30%-50% range, Class Counsel in this case seeks attorneys' fees in an amount equal to the Ninth Circuit's 25% benchmark of the non-reversionary common fund generated for the benefit of the Class. *See*, *In re Consumer Privacy Cases*, 275 Cal.App.4th 545, 557 (C.D. Cal. 2009) ("a fee award of 25 percent is the benchmark award that should be given in common fund cases."); *see also*, *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. Sept. 27, 1989) (nothing that the "bench mark" percentage for the fee award should be 25 percent. The fee request here is therefore patently reasonable.

### 2. *The Results Achieved are Excellent*

In addition to the fact that the fee request is consistent with the Ninth Circuit's benchmark and less than the percentage of common funds approved in settlements of other similar class action cases,

---

[2] *See e.g., Fernandez v. Victoria's Secret Stores, LLC*, No. CV 06-04149 MMH (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008) (awarding 34% of $8.5 million common fund as attorneys' fees in a wage and hour class action settlement); *Hightower v. JPMorgan Chase Bank, N.A.*, No. CV111802PSGPLAX, 2015 WL 9664959, at *11 (C.D. Cal. Aug. 4, 2015) (awarding 30% of common fund as attorneys' fees in a wage and hour class action settlement); *Elliott v. Rolling Frito-Lay Sales, LP*, No. SACV 11-01730 DOC, 2014 WL 2761316, at *10 (C.D. Cal. June 12, 2014) (finding that "[a]lthough the case was resolved very early in the litigation, the Court finds that the requested 30 percent is a reasonable fee award" given Class Counsel's "willingness to accept difficult legal challenges and the risk of nonpayment."); *Rippee v. Boston Mkt. Corp.*, Case No. 05cv1359 BTM (JMA), Doc. No. 70, at 7–8 (S.D. Cal. Oct. 10, 2006) (awarding a 40% fee in a wage and hour class action); *Bond v. Ferguson Enterprises, Inc.* (E.D. Cal June 29, 2011) 2011 WL 26488879, No. 1:09cv1662 OWW, Dkt No. 59 at *38 (awarding attorneys' fees of 30% of the $2.25 million common fund in wage and hour class action); *Romero v. Producers Dairy Foods, Inc.* (E.D. Cal. Nov. 14, 2007) No. 1:05cv0484 DLB, 2007 WL 3492841, at *4 (noting that "fee awards in class actions average around one-third of the recovery"); *Wren v. RGIS Inventory Specialists* (N.D. Cal. Apr. 1, 2011) No. C-06-05778, JCS, 2011 WL 1230826, at *29 (approving fee award that constituted 42% of the common fund in wage and hour class and collective action); *Birch v. Office Depot, Inc.* (S.D. Cal. Sept. 28, 2007) No. 06cv1690 DMS, at *13 (awarding a 40% fee on a $16,000,000 wage and hour class action settlement); *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645 at *5-*7 (N.D. Cal. Aug. 9, 2010) (awarding one-third of $4.5 million settlement fund as fees in class case alleging failure to reimburse employees for expenses); *Quezada v. Con-Way Freight, Inc.,* No. 09-cv-3670, at ¶ 9 (N.D. Cal. Jan. 15, 2015) (awarding one-third of $2 million settlement fund as fees in class case alleging failure to pay wages for all hours worked); *Singer v. Becton Dickinson and Co.,* No. 08-CV-821-IEG (BLM) 2010 WL 2196104, at *8 (S.D. Cal. Jun. 1, 2010) (approving fee award of 1/3 of the common fund; award was similar to awards in three other cited wage and hour class action cases where fees ranged from 30% to 40%); *Martin v. FedEx Ground Package Sys., Inc.*, No. C 06-6883 VRW, 2008 WL 5478576, at *8 (N.D. Cal. Decl. 31, 2008) (approving fee award of 1/3 of the common fund in a trucker meal break class action); *Vasquez v. Coast Valley Roofing, Inc.* (E.D. Cal. 2010) 266 F.R.D. 482, 491-92 (citing five recent wage and hour class actions where federal district courts approved attorney fee awards ranging from 30% to 33%).

Plaintiff's fee request here is also justified because the results obtained here are excellent when compared with other identical cases challenging on premises rest break policies where plaintiffs either lost class certification or on the merits (and thus the putative classes obtained nothing), and the results obtained here also compare favorably with similar class action settlements of identical claims that settled on a class basis, where fees of 25% or more were approved by various courts.

As noted, the only prior federal district court in the Eastern District to have considered the issue of whether on premises rest break policies violate California law concluded that such policies, like the one implemented by Fastenal and challenged in this case, are legal, and granted an employer's dispositive motion on the merits, resulting in a **<u>zero</u>** recovery for the putative class members. *See Bell v. Home Depot U.S.A., Inc.,* No. 2:12–cv–02499 JAM–CKD (E.D.Cal., Apr. 11, 2017) 2017 WL 1353779, at *2 ("a policy requiring employees to remain on the premises during their rest breaks does not violate the applicable California wage order and statute").[3] Since this case was appropriately venued in the Eastern District, the *Home Depot* case posed a substantial risk that the putative class here could recover nothing.

Further demonstrating the enormous risks posed to Plaintiff and her counsel in bringing this case, numerous other courts have expressed agreement with Defendant's position in either denying class certification or in granting employers' dispositive motions in on-premises rest break class actions, like this one. *See e.g., Bowen v. Target Corporation* (C.D. Cal., Jan. 24, 2020, No. EDCV 16-2587 JGB(MRWx)) 2020 WL 1931278, at *8 [granting defendant's motion to dismiss plaintiffs' on-premises rest break claim, reasoning that a policy that keeps employees on-premises is not sufficient to establish employer control: "*Augustus* is explicit that a policy that prohibits employees from leaving the property

---

[3] Although the Hon. Judge John Mendez in *Home Depot* granted the defendant's motion for partial summary judgment before the California Supreme Court had issued *Augustus*, he denied plaintiff's motion for reconsideration post-*Augustus* in which plaintiff there argued that *Augustus* represented an intervening change in the law. *See Bell v. Home Depot U.S.A., Inc*., No. 2:12-cv-02499 JAM-CKD, 2017 U.S. Dist. LEXIS 55442, at *5 (E.D. Cal. Apr. 10, 2017) ("The *Augustus* court did not directly consider an on-premises rest break policy which does not require employees to remain on call such as the one at issue here. *While the Court finds Defendants' reading of Augustus more persuasive and accurate than Plaintiffs*, it does not specifically adopt Defendant's interpretation that *Augustus* affirmatively condones on-premises rest breaks. Rather, the Court finds that the holding in *Augustus* does not go as far as Plaintiffs contend and therefore does not merit alteration of this Court's judgment.") (emphasis added). The italicized language demonstrates the continuing risks to plaintiffs bringing these sorts of cases, and the quote as a whole shows that the law in this area remains in flux.

during rest periods—without more—'is not sufficient to establish employer control.'"]; *Ritenour v. Carrington Mortgage Services, LLC* (C.D. Cal. Sept. 12, 2018, No. SACV 16-02011 CJC(DFMx)) 2018 WL 5858658, at *7–8 [denying class certification and noting that *Augustus* "never stated that an employer cannot require an employee to remain on the premises during a rest period. Rather, the court held that employers are required by state law to provide 'time during which an employee is relieved from all work-related duties and free from employer control.' Here, there is no evidence of a policy under which CMS employees were uniformly subject to employer control during their rest breaks," citation omitted]; *Videau v. Caritas Mgmt. Corp.* (San Francisco Sup. Ct., App. Div., Feb. 1, 2021, No. CGC-19-575502) (a three-judge panel of the Appellate Division of the San Francisco Superior Court issued a ruling finding that an employer who requires employees to remain on worksite premises but without job duties does not violate California's rest period requirements); *Hubbs v. Big Lots Stores, Inc.* (C.D. Cal., Mar. 16, 2018, No. LA CV15-01601 JAK (ASx)) 2018 WL 5264141, at *5 & fn. 2.) (the court explained that requiring employees to "remain onsite or nearby" during a 10-minute break was "not sufficient to establish employer control" and that such "practical limitations on an employee's movement" are "of course common to all rest periods."); *Lopes v. Kohl's Department Stores* (Alameda Super. Ct., Feb. 18, 2017, No. RG08380189) (dismissing on-premises rest break claim and noting, "*Augustus* recognized the difference between 'on call' and 'on premises'—concepts which Plaintiffs conflate in their argument.").

On the other hand, Plaintiff's counsel had previously won this issue in a Superior Court action. *See Diaz v. Medline Industries, Inc.*, Case No, STK-CV-UOE-2019-5651 (San Joaquin County Superior Court, Dec. 5, 2019 Order Denying in Part and Granting in Part Defendant's Motion for Judgment on the pleadings. (attached as Exhibit A to Ackermann Fees Decl.). In *Diaz*, Plaintiff's counsel here parsed *Augustus* carefully and showed that it only permitted policies stating that employees must remain "on premises or nearby", which allowed employees to leave if they were "nearby"; that another part of *Augustus* notes that employers cannot tether employees to "locations or devices" with the use of the disjunctive supporting Plaintiff's position here; the DLSE had shifted its view on whether on-premises rest breaks were legal post *Augustus* and now advised that such policies were illegal on its website[4]; and

---

[4] The novelty and complexity of this issue is underscored by the fact that the Labor Commissioner flipped its opinion on the subject. Originally, as cited in several of the above-listed federal court decisions, the

advanced an argument about how on premises meal break policies were long  held to be "compensable time" under *Bono Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th 968, 977 (1995), and that meal and rest break laws should be interpreted the same as to whether or not someone was under "control" during a meal or a rest break—an argument that had not been advanced in any of the above-referenced actions. The *Medline* Superior Court found these arguments collectively persuasive and denied defendant's motion for judgment on the pleadings.

Furthermore, Class Counsel argued there (and with defendant's counsel in this case) that the reasoning in *Bono* when harmonized with the DLSE's stance post *Augustus*,[5] and the "anti-tethering" dicta in *Augustus*,[6] all bolstered Plaintiff's fundamental legal position here, and that none of the Courts cited above who had ruled for employers had been presented with these precise arguments, which the *Medline* Superior Court found persuasive. Lastly, in the context of determining whether the time spent by employees on security bag checks on premises at the end of the workday was compensable, the California Supreme Court's reasoning in *Frlekin v. Apple, Inc.*, 8 Cal. 5th 1038 (Cal. Feb. 13, 2020) supports Plaintiff's  approach.. Among other things, the California Supreme Court in *Frlekin* once again embraced *Bono* stating, "Thus, '[w]hen an employer directs, commands or restrains an employee from leaving the work place . . . and thus prevents the employee from using the time effectively for his or her own purposes, that employee remains subject to the employer's control[ and a]ccording to [the applicable Wage Order], that employee must be paid.'" *Frlekin*, 8 Cal.5th at 1057, *quoting Bono*, 32 Cal. App. 4th at 975.

Putting these arguments together, Class Counsel was able to argue somewhat persuasively that

---

DLSE held that on-premises rest break policies were legal.  However, the DLSE revised its website in November 2017, see Question and Answer No. 5: "Q. Can my employer require that I stay on the work premises during my rest period? A. No, your employer cannot impose any restraints not inherent in the rest period requirement itself."

[5]    DLSE website, Q&A page, Question 5, which can be found at: http//:www.dir.ca.gov/dlse/faq_restperiods.htm ("Question 5: Q. Can my employer require that I stay on the work premises during my rest period? A: No. ..."). The prior (and opposite) DLSE opinion is cited in *Ritenour* and *Home Depot*.

[6] ". . . one cannot square the practice of compelling employees to remain at the ready, *tethered by time and policy to particular locations or communication devices*, with the requirement to relieve employees of all work duties and employer control during 10-minute rest breaks." *Augustus*, 2 Cal. 5th at 269 (emphasis added).

although the majority of state and federal courts had, to date, sided with Defendant's position that on premises rest break policies were legal, those rulings were all potentially erroneous, insofar as they had not read *Augustus* carefully enough, and had also failed to harmonize *Augustus* with *Bono* and the rest of California's meal and rest break law case law. While the risks of loss posed to Plaintiff and the Class were substantial, Class Counsel was nevertheless able to secure a very good result for the Class here by advancing well-reasoned and somewhat novel arguments that had prevailed in *Medline*.

Given that numerous other plaintiffs have filed class action cases challenging on premises rest break policies and lost entirely either on certification or on the merits, see the cases cited on pp. 9-10, Plaintiffs' recovery here of $2.4 million for the Class is an excellent result versus a distinct possibility of a zero recovery. Moreover, Plaintiff's Counsel's somewhat novel and creative arguments here, and their prior success with these arguments in *Medline*, facilitated an excellent result here, certainly compared to cases where the class received nothing, but also in comparison with other similar class action settlements of cases involving identical claims, and thus justifies the 25% benchmark fee request, particularly given the prior adverse ruling on point in this district in the *Home Depot* case.

As noted, the settlement obtained here represents an average gross recovery per Class Member of $1,204.81, calculated as follows: $2,400,000 Gross Settlement Amount divided by 1,992 Class Members equals $1,204.81 per Class Member. The average net recovery per Class Member will be $872.48, calculated as follows $1,738,000 Net Settlement Amount divided by 1,992 Class Members equals $872.48 per Class Member. Additionally, the maximum gross settlement award will be substantially higher.  The amount obtained per Class member compares favorably to other class action settlements where the primary claim resolved was a challenge to employers' on premises rest break policies, including the following cases:

a.  *Cahilig, et al. v. Ikea U.S. Retail, LLC*, Case No. 19-cv-01182 (C.D. Cal. October 1, 2020 Order and Judgment Granting Final Approval of Class Action Settlement, Attorneys' Fees, Costs and Class Representative Enhancement[7]) (Hon. Cormac Carney) – $7.5

---

[7]   A copy of the *Ikea* Court's Final Approval Order can be found here: https://docs.justia.com/cases/federal/district-courts/california/cacdce/2:2019cv01182/737180/62 (granting final approval and awarding fees of $1,859,435, approximately 25% of the $7,5 million settlement).  The settlement in *Ikea* followed the district court's denial of IKEA's motion for judgment

million class settlement for 6,400 class members where the average gross settlement payment per class member was $1,171 (approximately the same as the amount obtained here);

b. *El Pollo Loco Wage and Hour Cases*, Case No. JCCP 4957 (Orange County Superior Court)[8] – $16 million class action settlement for 31,667 Class Members (between the two consolidated classes in the global settlement) where the average gross settlement payment per class member was $505 (approximately half the amount obtained per class member here); and

c. *Liggins v. ESA Management, LLC*, Case No. 30-2018-01005614-CU-OE-CXC (Orange County Superior Court) - $4.45 million settlement for 5,473 Class Members where the average gross settlement payment per class member was $813[9] (approximately 32% less than the results obtained here).

3. *The Risks of Litigation and of Losing Were Significant*

As noted, the merits of this action were hotly disputed insofar as Defendant vigorously opposed Plaintiff's claims and denied the legal and factual basis for Plaintiff's claims, and Defendant would have continued to do so had this matter not settled.

---

on the pleadings based on its understanding of *Augustus. See Cahilig v,. IKEA U.S. Retail*, 2019 U.S. Dist. LEXIS 140376 (C.D.Cal. June 20, 2019) (denying defense motion for judgment on the pleadings, and noting, "Here, Plaintiff alleges that IDEA's rest period policy not only required its employees to remain onsite but also "tethered" them to particular locations onsite. IKEA has failed to show that, as a matter of law, this cannot amount to "employer control" during one's rest period.").

[8] Information about the *El Pollo Loco* on premises rest break class action settlement case be found here: http://elpollolocosettlement.com/frequently-asked-questions.aspx. The attorneys' fees in *El Pollo Loco* were approved at 1/3 of the $16 million common fund obtained. Id.  The class settlement in *El Pollo Loco* followed the Superior Court's decision to certify the on-premises rest break claim as a class action. See Order Granting Plaintiff's motion for class certification, dated July 20, 2018, from Orange County Complex, the Honorable Judge William Claster which can be found here: https://view.flipdocs.com/?ID=10004307_589718&P=0#0 ("Given the relatively straightforward nature of plaintiffs theory, it is difficult to imagine what type of investigation or discovery would render Defendant's undisputed [on premises rest] policy unsuitable for class treatment").

[9] Class counsel for Plaintiff in the instant case were one of five Class Counsel firms representing the employees in the *Extended Stay* class action and settlement resolving claims arising from ESA's on premises rest break policy.  The Orange County Complex Superior Court's Order from the Hon. James Di Cesare granting final approval was entered on January 3, 2022, and *inter alia* approved fees at $1,483,333.33, amounting to 1/3 of the gross settlement amount obtained for the class in that case.

Moreover, this action faced serious risks that could have precluded the Class from obtaining **any** recovery. Broadly, these included, *inter alia*, (1) that Defendant's written rest period policy was not illegal because this Court could rule in accordance with prior Eastern District case law, that on-premises rest period policies are lawful (i.e., *Home Depot*); (2) the risk of non-certification of the rest break claim (i.e., *Ritenour* denied class certification of identical claims); (3) the risk that rest break premium claims could not trigger derivative penalty claims and/or that Defendant lacked the requisite willfulness and intentionality under Labor Code Sections 203 and 226 to establish penalties, particularly in light of the shifting opinions of the DLSE and the Courts on the core legal issues in this case. *See Maldonado v. Epsilon Plastics, Inc*. 22 Cal. App. 5th 1308, 1336-7; *cf, Naranjo v. Spectrum Security Services, Inc*., 2022 Cal. LEXIS 2878 (Cal. May 23, 2022) and (4) the risk that a court would award a lesser amount than the maximum civil penalty specified under PAGA, as the statute allows, if to do otherwise would result in an award that is "unjust, arbitrary and oppressive or confiscatory". *See* PAM, § IV.E.

First, the risk that this Court could potentially rule that Defendant's on-premises rest period policy was not illegal was very real. Specifically, as stated earlier, *Bell v. Home Depot U.S.A., Inc.*, 2017 U.S. Dist. LEXIS 55442 (E.D. Cal. Apr. 10, 2017) supports Fastenal's position that on-premises rest period policies like Defendant's here, are not unlawful. Notably, this District Court granted summary judgment to an employer in *Bell* before the issuance of *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal. 5th 257, and subsequently denied the Plaintiffs' Motion for Reconsideration after *Augustus* was decided. *See also*, *Ritenour, Hubbs, Bowen, Videau*, and *Lopes*, as cited above. Second, the issue as to whether unpaid premiums could trigger section 203 and 226 penalties was very much in flux. *See*, *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308 (2018) (holding that liability for inaccurate wage statements is not triggered by failure to show wages that were not paid but were due, as the proper remedy is solely through payment of those wages, not statutory penalties); *see also Naranjo v. Spectrum Services, Inc.*, 40 Cal.App.5th 444, 474 (2019) (actions for non-provision of meal or rest periods do not entitle employees to pursue the derivative penalties in sections 203 and 226); *cf. Naranjo v. Spectrum Security Services, Inc.*, 2022 Cal. LEXIS 2878, at *47 (Cal. May 23, 2022)  (reversing the court of appeals and holding that rest break premium claims can support derivative penalty claims under Labor Code sections 203 and 226, but remanding for determinations as to whether such violations were "willful", and whether the "knowing

- 13 -

and intentional" element was met for the plaintiff's derivative Section 226 claim.

Third, the courts are split on whether challenges on on-premises rest period policies are certifiable. *See, e.g.*, *Ritenour v. Carrington Mortgage Services, LLC* (C.D. Cal., Sept. 12,2 2018, NoSACV1602011CJCDFMX) 2018 WL 5858658 ("Plaintiffs have failed to show any "strict policy" regarding breaks or premiums, let alone one that applied to the entire 8 class. [Citation omitted.] Because adjudication of the putative class members' meal and rest period claims 9 will involve predominantly individual issues, the predominance requirement under 23(6)(3) is not 10 satisfied." (Id. at p.8.); *Ordonez v. Radio Shack, Inc.,* 2013 U.S. Dist. LEXIS 7868, *35-41 (C.D. Cal. Jan. 17, 2013) (denying certification even though the plaintiff submitted evidence of a facially unlawful policy regarding rest breaks because the predominance and superiority elements were not met based upon the employer's presentation of anecdotal evidence of lawful compliance notwithstanding the unlawful policy); cf. *El Pollo* Class Certification ruling cited in footnote 8.

Finally, courts could reduce PAGA penalties (and/or not award the Section 226 or 203 penalties) because *inter alia* the case law regarding on premises rest break policies is in flux and/or is unclear. PAGA gives courts substantial discretion to adjust penalties that would otherwise be "unjust, arbitrary and oppressive, or confiscatory." (Lab. Code § 2699(e)(2).) Courts have exercised that discretion to drastically reduce PAGA penalties. For example, the California Court of Appeals affirmed a judgment where a San Diego Superior Court imposed PAGA penalties in the amount of 10% of the maximum penalty for meal period violations due to the defendant's good faith and the low violation rate. (*See Carrington v. Starbucks Corp.* (2018) 30 Cal. App. 5th 504, 529); *see also Fleming v. Covidien Inc.,* No. (OPX) (C.D. Cal. Aug. 12, 2011) 2011 WL 7563047, at *4 [federal court awarding 18% of maximum PAGA penalty for erroneous wage statements where employees suffered no injury, made no complaint prior to the lawsuit, and defendants promptly corrected the violations once notified].)

Despite the foregoing sizable and significant risks posed to any potential recovery, and the numerous legal issues that were or are open, unclear, or unresolved in the relevant case law, Plaintiff and Class Counsel recovered a very significant settlement fund on behalf of the Class, an amount that the Class Members would not have recovered independently of this action. Given the uncertainty associated with certification, summary judgment, trial, and the overall risks and significant possibility of non-

recovery on any of the claims here, Plaintiff arguably obtained an outstanding settlement for the Class.

### 4.   Skills of Counsel and the Quality of Work

This Court found that "class counsel are adequate representatives of the class." Findings and Recommendations, ¶ III.A.4. As hopefully illustrated above, Class Counsel showed great skill, thoroughness, and conscientiousness in investigating and developing the claims, liability theories, and estimated possible recoveries in the litigation, and otherwise expended great effort on behalf of the Class, ultimately reached the Settlement after Parties' exchange of informal discovery and voluntary mediation.

Furthermore, as discussed in Plaintiff's Preliminary Approval papers and as recognized by the Court, Class Counsel is experienced in representing employees in similar actions and has successfully litigated hundreds of similar wage and hour class actions on behalf of employees alleging various meal and rest period violations. See Ackermann PAM Decl. ¶¶ 4-12; Melmed PAM Decl. § I.

### 5.   Class Counsel Represented the Class on a Contingency Fee Basis

Class Counsel took this case on a contingency basis despite the many risk factors that could have precluded recovery and result in a net loss for Counsel. "It must be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee." Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008).

### 6.   The 25% Fee Request Here is Consistent With Awards in Similar Cases

As noted, in identical class action cases challenging employers' on-premises rest period policies, Courts have awarded fee requests in the range from 25% of the gross settlement amount to as high as one-third of the settlement amount obtained. See, e.g., Liggins v. ESA Management, LLC, Case No. 30-2018-01005614-CU-OE-CXC (Orange County Superior Court) (awarding attorneys' fees representing 1/3 of $4.45 million Gross Settlement Amount); see also, Cahilig, et al. v. Ikea U.S. Retail, LLC, Case No. 19-cv-01182 (C.D. Cal. June 17, 2020) (awarding attorneys' fees representing approximately 25% of $7.5 million Gross Settlement Amount).

## B.   A Lodestar Cross-Check Does Not Warrant a Reduction in Fees

While the common fund percentage is the preferred method for determining the reasonableness of attorneys' fees, Courts can use a lodestar cross-check method to confirm that the percentage requested

- 15 -

is reasonable. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 1050 (9th Cir. 2002) ("while the primary basis of the fee award remains the percentage method, the lodestar may provide a perspective on the reasonableness of a given percentage award"). In determining the reasonableness of the fee under the lodestar method, the Court must begin with the "lodestar" figure, which "is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). "That figure may then be increased or reduced by the application of a 'multiplier' after the trial court has considered other factors concerning the lawsuit." *Id.*

Here, Class Counsel has spent and will spend (including a reasonable estimate of time needed to draft and edit the final approval motion) no less than **300.86** hours on this case by the conclusion of this litigation. Ackermann Fees Decl. ¶¶ 13-17; Melmed Fees Decl., ¶¶ 15-16. This results in a total lodestar of $208,358.79, at Class Counsels' District Court-approved hourly rates, and a lodestar multiplier of 2.87. *Id.* While this multiplier is admittedly not insignificant, it is within the realm of acceptable multipliers that the 9th Circuit has approved where, as here, great results are obtained in the face of significant risk, some novel or complex issues, and demonstrably excellent settlement results achieved. *See Vizcaino*, 290 F.3d at 1051 (approving 25% fee with lodestar multiplier of 3.65 on the cross-check due to good results obtained and the novelty/complexity of issues).

The total lodestar amount is documented by detailed and contemporaneous billing records maintained by Plaintiff's Counsel. *Id.* The time summaries included in Class Counsel's declarations filed herewith accurately reflect the extensive work Class Counsel necessarily performed in this complex litigation and are the best evidence of the time that this case has required. See *Perkins v. Mobile Housing Bd.,* 847 F.2d 735, 738 (11th Cir. 1988) (counsel's "[s]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case"). Indeed, trial courts may even use "rough" estimations, so long as they apply the correct standard. *Fox v. Vice,* 563 U.S. 826, 838 (2011).[10]

---

[10] As the Supreme Court has stated, "The fee applicant ... must, of course, submit appropriate documentation to meet 'the burden of establishing entitlement to an award.' But trial courts need not, and indeed should not, become green-eye-shade accountants. The essential goal in shifting fees ... is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense

Class Counsel's hours were spent on numerous tasks from pre-filing research, drafting of pleadings, informal discovery, preparing for and attending mediation, negotiating the Settlement, and obtaining preliminary approval, and are described in Class Counsel's declarations filed herewith. Class Counsel investigated and researched the facts and circumstances underlying the pertinent issues and applicable law prior to filing the Complaint. After Plaintiff filed the Complaint, the Parties entered an exchange of informal discovery and information. Prior to the mediation, Plaintiff analyzed highly relevant documents and information produced by Defendant, including Plaintiff's personnel file and timesheets, a sampling of payroll data for the Class, and all relevant policies and handbooks. Plaintiff then drafted a detailed mediation brief including an extensive discussion of the applicable case law and a thorough damages analyses. Class Counsel then attended a full-day mediation with an experienced wage-and-hour class action employment law mediator serving as the neutral before drafting and negotiating the long-form Settlement Agreement in the months and weeks after the mediation and follow-up negotiations resulting in a class deal. *See* PAM §§ II; Ackermann Fees Decl., ¶¶ 9-12.

Further, as discussed above, Class Counsel took this case on a contingency basis despite the many risk factors that could have precluded recovery and result in a net loss for Counsel. "It must be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir. 2008).

### 1. The Lodestar Multiplier is Within the Zone of Reasonableness

"A district court generally has discretion to apply a multiplier to the attorney's fees calculation to compensate for the risk of nonpayment." *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002). The current **2.87** lodestar multiplier here confirms that the fees sought here are reasonable. *See Vizcaino*, 290 F.3d at 1051 (approving multiplier of 3.65 in the face of an objection from a class member because case was complex, risky, and lengthy, and because the common fund percentage fee is meant to mirror the established practice in the private legal market of rewarding attorneys with

of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox,* 563 U.S. at 838 (citations omitted). To ensure there is no waiver of the attorney-client privilege or work product protection, Class Counsel have provided summaries of their lodestar fees and litigation expenses.

significant premiums over their normal hourly rates in order to compensate for the total risk of non-payment if the plaintiff's lawyer loses a case taken on a contingency basis).

In wage and hour actions, the Ninth Circuit and federal district courts in this Circuit, including in the Eastern District, have approved multipliers on Class Counsel's lodestar, ranging from 2.88 to 4, to reward counsel for accepting the contingent risk of the litigation, for obtaining excellent results and/or where, as here, novel or complex legal issues exist that posed the significant risk of nonpayment. *See, e.g., Mejia v. Walgreen Co.*, 2021 U.S. Dist. LEXIS 56150 at *19-20 (E.D. Cal. March 23, 2021) (the Hon. William B. Shubb  approved 25% of the common fund as attorneys' fees, with a lodestar multiplier of 3.56 on the cross-check, in a wage and hour class action); *see also, Vizcaino*, 290 F.3d at 1051 (affirming 25% fee recovery, which was support by lodestar cross-check with a multiplier of 3.65, and explaining that the multiplier "was within the range of multipliers applied in common fund cases"); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-cv-03698-NC, 2018 U.S. Dist. LEXIS 80219, at *20 (N.D. Cal. May 11, 2018) (finding multiplier of 4.37 to be reasonable on the cross-check); *Uschold v. NSMG Shared Servs., LLC*, 2020 U.S. Dist. LEXIS 99258 (N.D. Cal. June 5, 2020) (wage and hour case where 4.0 multiplier on the cross-check was approved); *Kimbo v. MXD Group, Inc.*, No. 2:19-cv-00166 WBS KJN, 2021 U.S. Dist. LEXIS 25825, 2021 WL 492493, at *8 (E.D. Cal. Feb. 10, 2021) (granting final approval where lodestar crosscheck yielded multiplier of 3.7 that was approved); *Reyes v. Experian Info. Sols.*, 2021 U.S. App. LEXIS 10120 at *3 (9th Cir. April 8, 2021) (No windfall is apparent assuming a 25% free award and lodestar crosscheck with a multiplier of 2.88; *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995); *see also* 4 Newberg on Class Actions § 14.7 (stating that courts typically approve 25% to 33.34% percentage awards with lodestar cross-checks of 1.9 to 5.1).

### 2.   *Class Counsel's Hourly Rates Are Reasonable*

Reasonable hourly rates are determined by "prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895. Typically, the forum where the district court sits is recognized as the "relevant community." *Shirrod v. Dir., OWCP*, 809 F.3d 1082, 1087 (9th Cir. 2015) (citing *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053 (9th Cir. 2009)). Thus, Plaintiff's Counsel are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar

litigation. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001). *See also Serrano v. Unruh*, 32 Cal. 3d 621, 640 n.31 (1982) ("The formula by which 'reasonable market value' is reached is variously phrased" as "comparable salaries earned by private attorneys with similar experience and expertise in equivalent litigation," and the "hourly amount to which attorneys of like skill in the area would typically be entitled.") (citations omitted).[11]

Nonetheless, "to insist on awarding significantly-lower hourly rates in the Eastern District than those in the other judicial districts in California would discourage attorneys from bringing meritorious lawsuits in this [Eastern] district." *See Adoma v. The University of Phoenix, Inc.*, No. CIV-S-10-0059 LKK/GGH, 2012 WL 6651141, *13 (E.D. Cal. Dec. 20, 2012) (emphasis added). The court may apply rates from outside the forum "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) (internal citation and quotation marks omitted). For example, several courts within the Eastern District of California have relied upon the prevailing hourly rates from the Central District of California when examining attorney's fees. *See, e.g.*, *Tehachapi Unified Sch. Dist. v. K.M.*, 16-cv-01942-DAD, 2019 WL 331153, at *4 (E.D. Cal. Jan. 25, 2019) (finding defendant demonstrated "scarcity of special education lawyers in the Eastern District of California"); *Wright v. Tehachapi Unified Sch. Dist.*, No. 16-cv-01214-JLT, 2017 WL 3334015, at *4–5 (E.D. Cal. Aug. 4, 2017) (finding plaintiff demonstrated that local counsel working in special education were not available), *aff'd* 743 F. App'x 125, 2018 WL 6068599 (9th Cir. Nov. 20, 2018). As set forth in the declarations of counsel, the rates on which each firm calculated its lodestar have been recently approved in the Central District, where the law firms are based. *See, e.g.*, *Pagh v. Wyndham Vacation Ownership, Inc.*, Case No. 8:19:cv:00812-JWH-ADSx, 2021 U.S. Dist LEXIS 56040 (C.D.Cal. March

---

[11] Plaintiff asserts that the Wagner Jones Kopfman & Artenian LLO class action law firm in Fresno, California (which was recently split into two law firms, but previously operated as a unit) is the only local appropriate comparator for comparing hourly rates to Class Counsel here. See Ackermann Decl. ¶20. As of 2015, Nicholas "Butrh" Wagner, a partner at that firm, opined that for plaintiffs' class action work in the Eastern District, a reasonable fee for complex class action work in Fresno was $550 to $750 per hour. See Declaration of Nicholas Wagner ("Wagner Decl."), dated November 5, 2015, at ¶¶ 5-7, attached to the Ackermann Fees Decl., as Exhibit B thereto. Hourly rates have obviously increased since then.

23, 2021) (Order Granting Plaintiff's Motion for Attorneys' Fees and Costs; the court approved a 30% of the fund requested fee and examined and approved Class Counsel's hourly rates).

As far back as 2012, for purposes of the lodestar cross-check, the Eastern District approved rates of $650 to $675 for partners and senior associates. *See Franco v. Ruiz Food Products, Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, *20 (E.D. Cal. Nov. 27, 2012) (citing *Garcia v. Gordon Trucking, Inc.*, No. 1:10-cv-0324 AWI SKO, 2012 WL 5364575, *9 (E.D. Cal. Oct. 31, 2012) and *Bond v. Ferguson Enterprises, Inc.*, No. 1:09-cv-01662-OWW-MSJ, 2011 WL 2648879, *11-13 (E.D. June 30, 2011) (A&T was co-counsel for the Class in the *Ferguson* case)). In *Franco*, although the court adjusted the rates to be in keeping with those found reasonable in *Bond*, the court approved attorney rates between $652.50 per hour for a partner to $405 per hour for associate attorneys. *Franco*, 2012 WL 5941801at *21; *see also Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 U.S. Dist. LEXIS 80776 (E.D. Cal. June 11, 2012) at *22 (citing to *Bond* and approving adjusted attorney rates between $264 to $556 per hour depending on experience); *Vasquez*, 266 F.R.D. at 491 n. 1 (approving partner rates in the amount of $525 per hour for a partner with more than 10 years of experience and an associate rate of $350 per hour for an associate with four years of experience). The reasonable hourly rates for attorneys in this district have certainly increased since 2012.

Class Counsel's 2022 rates are reasonable and consistent with attorneys of comparable experience and qualifications in their areas of practice. See footnote 11. As demonstrated by their hundreds of successful wage and hour employment law actions, including in this particular area of law, both Ackermann & Tilajef P.C. and Melmed Law Group P.C. are experienced and highly-skilled law firms with expertise in representing employees in California wage and hour class actions. Ackermann Fees Decl. ¶ 8; Melmed Fees Decl. ¶¶ 6-10. Their ability to secure a favorable Settlement for the class in this case despite the many challenges Plaintiff faced is a further testament to their expertise.

## IV.   CLASS COUNSEL'S REQUESTED COST REIMBURSEMENT SHOULD BE APPROVED

Under the common fund doctrine, the attorneys whose efforts helped to create the fund are entitled to recover "the costs of . . . [the] litigation" from the fund, in addition to attorneys' fees. *Vincent v. Hughes Air W., Inc.*, 557 F.2d at 769 (9th Cir. 1977). "In common fund cases, counsel is entitled to reimbursement

of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *Chemi v. Champion Mortg.* No. 05-1238, 2009 WL 1470429 (D.N.J. May 26, 2009); *see In re Omnivision*, 559 F.Supp.2d at 1048-49 (awarding payment for reimbursement of expenses, plus interest from settlement fund; discussing that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters, including expenses for photocopying, printing, postage, messenger services, legal research in electronic databases, experts and consultants, and travel costs).

Here, the cost request is undoubtedly reasonable because Class Counsel is seeking reimbursement in an amount less than what was anticipated by the Settlement Agreement and preliminarily approved by this Court, and an amount that is the actual litigation costs expended to date and expected to be expended through final approval of the Settlement. The Parties agreed to cap the costs allocation in the Settlement to $20,000. However, Class Counsel has collectively spent and anticipates spending **$11,514.40** through the conclusion of this matter. Ackermann Fees Decl., ¶¶ 21-22 ($4,003.50 incurred and to be incurred by Ackermann & Tilajef, PC); Melmed Fees Decl., ¶ 23 ($7,510.90 incurred by Melmed Law Group to date). Therefore, Class Counsel will only be reimbursed for their actual costs incurred to date and to be incurred in connection with final approval.

Each of the costs incurred are reasonable for a contested wage and hour class case. The majority of the costs were incurred in connection with mediation and filing and service/delivery fees. Given the nature of the litigation, Class Counsel's request for costs is reasonable and reflect necessary expenditures needed to obtain the favorable Settlement achieved on behalf of the Class.

///
///
///
///
///
///
///
///

V.   **CONCLUSION**

For the foregoing reasons, it is respectfully requested that, in its Order finally approving the Settlement, the Court include an award granting Class Counsel **$600,000.00** in attorneys' fees, constituting 25% of the common fund obtained for the Class, and an additional **$11,514.40** for reimbursement of the actual litigation costs incurred.

<div style="margin-left:40%">

Respectfully submitted,

ACKERMANN & TILAJEF, P.C.
MELMED LAW GROUP P.C.

</div>

Dated: May 31, 2022            By:    /s/Craig J. Ackermann
<div style="margin-left:40%">

Craig J. Ackermann, Esq.
Jonathan Melmed, Esq.
Attorneys for Plaintiff and the Class

</div>