# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIESHIA MARIE JACKSON, et al., | Case No. 1:20-cv-00345-JLT-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART FINAL APPROVAL OF CLASS ACTION SETTLEMENT |
| v. | |
| FASTENAL COMPANY, | (ECF Nos. 26, 27) |
| Defendant. | **OBJECTIONS DUE WITH FOURTEEN DAYS** |

Plaintiff Mieshia Marie Jackson brings this action on behalf of herself and others similarly situated against Defendant Fastenal Company, alleging various wage and hour violations under California state law. (ECF No. 1-1.) Currently before the Court is Plaintiff's unopposed motion for final approval of the class action settlement and motion for attorneys' fees. (ECF Nos. 26, 27.) On October 13, 2022, the parties appeared before the Court for the hearing on the motions by videoconference. (ECF No. 28.) Attorney Avi Kreitenberg appeared on behalf of Plaintiffs; attorney Melis Atalay appeared for Defendant. No other appearances were made on this matter. Having considered the moving papers, the declarations and exhibits attached thereto, as well as the Court's file, the Court issues the following findings and recommendations.

///

///

///

1

# I.

# BACKGROUND

### A.    Factual Background

Defendant is an industrial supply company based in Winona, Minnesota.  (See ECF No. 15-1 at 7.)  Plaintiff was employed by Defendant in California as a non-exempt employee.  (Id.)  Plaintiff's principal claim is that, during the class period, Defendant promulgated an allegedly unlawful rest period policy that required the class members to stay on the premises or in designated areas during their rest periods in violation of California Labor Code § 226.7 and Section 12 of the applicable IWC Wage Order.  (Id. at 6.)   As a result, Plaintiff and the class seek compensatory damages for all unpaid wages, penalties, expenses, pre-judgment and post-judgment interest, and fees and costs.  (ECF No. 1-1 at 27.)

The complaint brings the following causes of actions: (1) failure to pay overtime wages (Cal. Labor Code §§ 510, 1198); (2) failure to provide compliant rest breaks and/or pay missed rest break premiums (Cal. Labor Code § 226.7; IWC Wage Order); (3) failure to provide compliant meal periods and/or pay missed meal period premiums (Cal. Labor Code §§ 226.7, 512); (4) failure to reimburse business expenses (Cal. Labor Code § 2802); (5) failure to provide complete and accurate wage statements (Cal. Labor Code § 226(A)); (7) UCL Violations; and (8) PAGA penalties (Cal. Labor Code §§ 2699 et seq.).  Defendant denies any and all allegations relating to this matter and has asserted twenty-two affirmative defenses.  (ECF No. 4 at 14–19.)

### B.    Procedural History

On January 21, 2020, Plaintiff filed a putative class action against Defendant in the Stanislaus County Superior Court, on behalf of herself and all current and former California-based non-exempt individuals employed by Defendant from January 21, 2016 through July 16, 2021.  (ECF No. 1-1.)

On March 4, 2020, Defendant removed this action to the Eastern District of California. (ECF No. 1.)  Thereafter, the parties engaged in a "robust exchange of informal discovery" and agreed to attempt to resolve the action through private mediation.  (ECF No. 27 at 8.)  After engaging in discovery and investigation of the claims and defenses, on March 1, 2021, the parties

1  engaged in a private mediation with wage and hour class action mediator Lou Marlin.  (Id.; ECF

2  No. 15-2 at 10–11 (Ackermann Decl.).)  The parties were unable to settle the matter on March 1,

3  but after several weeks of further negotiations with the assistance of Mr. Marlin, the parties

4  agreed to resolve the case on a class-wide basis and memorialized their agreement into a

5  Memorandum of Understanding ("MOU").  (ECF No. 27 at 8; ECF No. 15-2 at 11.)  In the

6  following months, the parties drafted and executed the long form settlement agreement.  (ECF

7  No. 15-2 at 11.)

8       On October 22, 2021, Plaintiff filed an unopposed motion for preliminary approval of the

9  proposed class settlement agreement and for certification of the class.  (ECF No. 15.)  On

10  December 3, 2021, the Court issued findings and recommendations to grant Plaintiff's motion

11  for preliminary approval of class action settlement.  (ECF No. 19.)  The District Judge adopted

12  the findings and recommendations in full on February 16, 2022.  (ECF No. 24.)  On March 1,

13  2022, the Court issued an order setting the hearing and schedule for the final approval of class

14  action settlement.  (ECF No. 25.)

15       Pursuant to the order, on May 31, 2022, Plaintiff filed a motion for attorneys' fees and

16  costs.  (ECF No. 26.)  On September 9, 2022, Plaintiff filed the instant motion for final approval

17  of class action settlement.  (ECF No. 27.)  Both motions are unopposed.  On October 13, 2022,

18  the parties appeared before the Court as detailed *supra*.  (See ECF No. 28.)

19                                    **II.**

20                            **LEGAL STANDARD**

21       The Ninth Circuit has declared that a strong judicial policy favors settlement of class

22  actions.  Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015).  Nevertheless, courts have long

23  recognized that the settlement of class actions presents unique due process concerns for the absent

24  class members.  In re Bluetooth Headset Prods. Liab. Litig. ("In re Bluetooth"), 654 F.3d 935, 946

25  (9th Cir. 2011).  "[T]he district court has a fiduciary duty to look after the interests of the absent

26  class members."  Allen, 787 F.3d at 1223.

27       To guard against the potential for abuse, "Rule 23(e) of the Federal Rules of Civil

28  Procedure requires court approval of all class action settlements, which may be granted only after a

fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." In re Bluetooth, 654 F.3d at 946. Since a settlement agreement negotiated prior to formal class certification creates a greater potential for a breach of the fiduciary duty owed to the class, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1168 (9th Cir. 2013) (quoting In re Bluetooth, 654 F.3d at 946); accord Allen, 787 F.3d at 1223.

Review of the proposed settlement of the parties proceeds in two phases. True v. Am. Honda Motor Co., 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010). At the preliminary approval stage, the court determines whether the proposed agreement is within the range of possible approval and whether or not notice should be sent to class members. True, 749 F. Supp. 2d at 1063. "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)). At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination. True, 749 F. Supp. 2d at 1063.

## III.

## DISCUSSION

The parties seek final approval of the class action settlement in this matter.

### A.  Final Certification of Class

To certify a class, a plaintiff must demonstrate that all of the prerequisites of Rule 23(a), and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure have been met. Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013). This requires the court to "conduct a 'rigorous analysis' to determine whether the party seeking class certification has met the prerequisites of Rule 23." Wright v. Linkus Enters., Inc., 259 F.R.D. 468,

471 (E.D. Cal. 2009).

The Court has previously found that the class meets the prerequisites of numerosity, commonality, typicality, and adequacy of representation.  (See ECF No. 19 at 5–11; ECF No. 24.) The Court also found that common questions predominate and allowing this action to proceed as a class action is the superior method of adjudicating the controversy of these employment related claims.  (See ECF No. 19 at 11–12; ECF No. 24.)

No class member has objected to the settlement of this action nor has any class member opted out of the settlement.  (ECF No. 27 at 6.)  For the reasons set forth in the December 3, 2021 findings and recommendations to preliminarily grant certification of the class and the February 22, 2022 order adopting those findings and recommendations, the Court finds that the settlement classes continue to meet the requirements of Federal Rule of Civil Procedure 23(a) and (b).  (See ECF No. 19 at 7–12; ECF No. 24.)

Rule 23(c) provides that a class certified under Rule 23(b)(3) must be provided with the best notice that is practicable in the circumstances. Fed. R. Civ. P. 23(c)(2)(B).  In this instance, the approved notice was mailed to all 1,992 potential class members by the settlement administrator on April 11, 2022.  (ECF No. 27 at 9; ECF No. 27-1 at 3–4. (Singh Decl.).)  Eighty-nine of the notices were returned by the United States Post Office.  (ECF No. 27 at 9; ECF No. 27-1 at 4.)  Six had forwarding addresses and were re-mailed.  (Id.)  Addresses were located for the eighty-three remaining notices via skip trace and were mailed to the new addresses.  (Id.)  Only fourteen class members' addresses were unable to be located.  (Id.)  The Court finds that this notice was sufficient to comply with Rule 23(c).

Having found the Rule 23 requirements have been met, the Court recommends granting final class certification.  The following class is recommended to be certified for settlement in this matter:

> All hourly non-exempt individuals who are or were employed by Defendant in California at any point during the period from January 21, 2016 through July 16, 2021 (the "Class Period").

(See ECF No. 27 at 6.)

///

**B.      Final Approval of Class Action Settlement**

The Court next addresses Federal Rule of Civil Procedure 23(e)(2) which requires that any settlement in a class action be approved by the court which must find that the settlement is fair, reasonable, and adequate.   At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination.  <u>True</u>, 749 F. Supp. 2d at 1063.

1.      <u>Terms of Settlement Agreement</u>[1]

To implement the terms of the proposed settlement agreement, Defendant agrees to pay a gross settlement amount of $2,400,000 in exchange for full and complete satisfaction of the claims released by the Agreement.  (<u>See</u> Agreement §§ 1, 7.)  The gross settlement amount will consist of: (1) administrative expenses, not to exceed $20,000; (2) the class counsel's attorneys' fees, not to exceed $600,000; (3) the class counsel's litigation costs and expenses, not to exceed $20,000; (4) the incentive award, not to exceed $7,500; and (5) payment of $18,000 under California's Private Attorney Generals Act ("PAGA") to the California Labor and Workforce Development Agency ("LWDA").  (<u>Id.</u> at ¶ 7.1.)  The remaining net amount (approximately $1,738,000) will be distributed as settlement shares to all participating class members (i.e., all those who do not opt-out following the class notice distribution process) pro-rata based on their total workweeks as a class member during the class period.  (<u>Id.</u> at ¶¶ 1.9, 1.25, 7.2.)  With respect to each individual settlement amount, 20% shall constitute wages and 80% shall constitute penalties and interest.  (<u>Id.</u> at ¶ 5.5.)

Settlement checks shall remain valid for 180 days from the date of issue.  (<u>Id.</u> at ¶ 7.8.) Thereafter, the uncashed check will become void, and the amount associated with that check will be distributed to a *cy pres* to be agreed upon by the parties and approved by the Court; here, the parties have identified and the Court recommends approval of the Central California Legal Services, which provides free legal services to low-income populations in Fresno, Tulare, Kings, Merced, Mariposa, and Tuolumne Counties.  (<u>Id.</u>; <u>see also</u> ECF No. 15-1 at 10–11 n.6;

---

[1]  The full proposed settlement agreement is attached as Exhibit 1 to the Ackermann Declaration and hereby incorporated by reference.  (<u>See</u> Agreement, ECF No. 15-3.)

1  www.centralcallegal.org/pro-bono-opportunities (last visited October 13, 2022).)

2      The parties seek to have CPT Group, Inc. appointed as the settlement administrator.

3  (ECF No. 27 at 2.)

4      Additionally, if the Court approves the parties' settlement and authorizes the

5  dissemination of the class notice, Plaintiff's counsel will apply to the Court for an award of up to

6  25% of the gross settlement amount for reasonable attorneys' fees, and for reimbursement of

7  litigation expenses not to exceed $20,000.  (Agreement ¶ 5.7; ECF No. 15-2 at 29–30.)  Plaintiff

8  will also apply for approval of an incentive award for her efforts on behalf of the Settlement

9  Class in this action, in an amount not to exceed $7,500.  (Agreement at ¶ 5.2.)

10      2.    Analysis

11      The court considers a number of factors in making the fairness determination including:

12  "[a] the strength of the plaintiffs' case; [b] the risk, expense, complexity, and likely duration of

13  further litigation; [c] the risk of maintaining class action status throughout the trial; [d] the amount

14  offered in settlement; [e] the extent of discovery completed and the stage of the proceedings; [f]

15  the experience and views of counsel; [g] the presence of a governmental participant; and [h] the

16  reaction of the class members to the proposed settlement."[2]  Lane v. Facebook, Inc., 696 F.3d 811,

17  819 (9th Cir. 2012) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).  Not

18  all of these factors will apply to every class action settlement and one factor alone may prove

19  sufficient grounds for court approval.   Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.

20  (DIRECTV), 221 F.R.D. 523, 525–26 (C.D. Cal. 2004).  "The relative degree of importance to be

21  attached to any particular factor will depend upon and be dictated by the nature of the claim(s)

22  advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each

23  individual case."   Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of S.F., 688 F.2d 615,

24  625 (9th Cir. 1982).

25      a.    **The Strength of Plaintiffs' Case**

26      "An important consideration in judging the reasonableness of a settlement is the strength of

27

28  [2] There is no government participant in this matter so this factor is not considered in the analysis.

1    the plaintiffs' case on the merits balanced against the amount offered in the settlement."
2    DIRECTV, 221 F.R.D. at 526 (quoting 5 Moore Federal Practice, § 23.85[2][b] (Matthew Bender
3    3d. ed.)).   The court's role is not to reach any ultimate conclusion on the facts or law which
4    underlies the merits of the dispute as the very uncertainty of the outcome and the avoidance of
5    expensive and wasteful litigation is what induces consensual settlements.   Officers for Just., 688
6    F.2d at 625.   In reality, the reasonable range of settlement is arrived at by considering the
7    likelihood of a verdict for the plaintiff or defendant, "the potential recovery, and the chances of
8    obtaining it, discounted to a present value." Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245,
9    255 (N.D. Cal. 2015) (quoting Rodriguez v. W. Publ'g Corp. (Rodriguez), 563 F.3d 948, 965 (9th
10   Cir. 2009)).

11        This action is based on Plaintiff's claim that Defendant promulgated a facially invalid rest
12   period policy in which it required Plaintiff and the class to remain on the company's
13   premises/designated areas during their rest periods, and that Defendant failed to authorize rest
14   periods every four hours or major fraction thereof.  (ECF No. 1.)  Plaintiff argues that, while some
15   caselaw supports her position, the likelihood of success at trial is nonetheless uncertain.  (See ECF
16   No. 15-1 at 15–20); see also, e.g., Augustus v. ABM Sec. Servs., Inc., 2 Cal. 5th 257, 269 (2016)
17   (rejecting employer's assertion that it could provide an on-duty rest period to employees who
18   worked as security guards); Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1039–40
19   (2012) (upholding class certification for rest break claim).  Plaintiff contends Defendant has raised
20   several defenses to Plaintiff's individual claims that it avers would ultimately have defeated the
21   claims of the class.  For example, Defendant contended that several federal judges have recently
22   ruled that on-premises rest period polices are lawful, that Plaintiff would not be able to certify the
23   class, and that the rest period policy at issue was not unlawful because requiring supervisor
24   permission/knowledge is not "control."  (See ECF No. 15-1 at 25–26.)

25        The settlement in this action provides the class members with substantial relief now; and
26   given the uncertainty of ultimate success at trial, the proposed settlement provides the parties with
27   a fair resolution of the issues presented which weighs in favor of settlement.

28   ///

8

1        **b.**      **The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

2        "In most situations, unless the settlement is clearly inadequate, its acceptance and approval

3 are preferable to lengthy and expensive litigation with uncertain results." <u>DIRECTV</u>, 221 F.R.D.

4 at 526 (quoting 4 A Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed.

5 2002)); <u>see also</u> <u>Munoz v. Giumarra Vineyards Corp.</u>, No. 1:09-cv-00703-AWI-JLT, 2017 WL

6 2665075, *9 (E.D. Cal. Jun. 21, 2017) (quoting <u>DIRECTV</u>, 221 F.R.D. at 529).  Absent settlement

7 in this action, the parties would continue to engage in discovery, motions for summary judgment,

8 and trial, which would have likely required experts to be hired.  These costs could exceed the

9 maximum recovery in the action.

10        Further, if this action were to proceed to trial, the class would be subjected to the

11 aforementioned risks of receiving less recovery or being denied any recovery in this action.

12 Resolving the action at this time saves the parties the expense of conducting further litigation and

13 confers substantial benefit to the class without being subjected to the risks inherent with

14 proceeding to trial of the matter.

15        The risks inherent in continuing to litigate this action, the additional expenses that would be

16 incurred were this action to proceed, and the complexity of this action thus weigh in favor of

17 settlement.

18        **c.**      **The Amount Offered in Settlement**

19        Defendants have offered to settle this action for $2,400,000.00, with administration costs,

20 attorney fees, and the class incentive award to be paid separately.  This offer was reached after

21 extensive negotiations with a mediator, and consideration of Defendant's realistic exposure which,

22 taking into account all of its defenses to the asserted claims, amounted to $2,471,849.88.  (ECF

23 No. 27 at 15; ECF No. 15-2 at 26–27.)   Considering the aforementioned risk factors, the Court

24 finds the non-reversionary gross settlement amount of $2,400,000.00 is a fair, reasonable and

25 adequate compromise of the claims because it takes into account calculations of each class

26 member's employment records as well as the previously discussed risks and Defendant's "realistic

27 risk-adjusted exposure."

28        Thus, the Court finds that the amount offered in settlement of this action weighs in favor of

1    approving the settlement.

2        **d.    The Stage of the Proceedings**

3        A settlement that occurs in an advanced stage of the proceedings indicates that the parties

4    have carefully investigated the claims before resolving the action.  Ontiveros v. Zamora, 303

5    F.R.D. 356, 370 (E.D. Cal. 2014).  In considering the fairness of the settlement, the court's focus

6    is on whether "the parties carefully investigated the claims before reaching a resolution."

7    Ontiveros, 303 F.R.D. at 371.

8        In this action, the parties maintain they engaged in a "robust exchange of informal

9    discovery" and attempted to resolve the action through private mediation.  The informal discovery

10   productions included information about the class and aggrieved employees, the class size, number

11   of aggrieved employees, total number of weeks worked and pay periods during the class period

12   and PAGA period, Plaintiff's personnel file and timesheets, payroll date for the class, and all

13   relevant polices and handbooks.  Plaintiff therefore argues the parties exchanged sufficient

14   information to gauge the strengths and weaknesses of their claims and defenses.  Based on these

15   productions, Plaintiff's counsel drafted detailed damage models, which were incorporated in a

16   comprehensive mediation brief.  The full-day mediation was productive; however, the parties were

17   unable to settle the matter until after several weeks of further negotiations with the mediator.

18       The fact that the parties believe they engaged in sufficient discovery to weigh the merits of

19   the action weighs in favor of approving the class action settlement.

20       **e.    The Experience and Views of Counsel**

21       The Court is to accord great weight to the recommendation of counsel because they are

22   aware of the facts of the litigation and in a better position than the court to produce a settlement

23   that fairly reflects the parties' expected outcome in the litigation.  DIRECTV, 221 F.R.D. at 528

24   ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted

25   with the facts of the underlying litigation"); Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431,

26   447 (E.D. Cal. 2013) ("In considering the adequacy of the terms of a settlement, the trial court is

27   entitled to, and should, rely upon the judgment of experienced counsel for the parties.").  Class

28   counsel has collectively represented tens of thousands of employees in similar wage and hour

1  cases; thus, counsel is experienced in class action litigation.  Counsel has opined that the

2  settlement agreement in this action is fair, reasonable and adequate to the members of the class.

3  (See ECF No. 27 at 16.)  This weighs in favor of approving the class action settlement.

4          **f.**        **The Reaction of the Class Members to the Proposed Settlement**

5        "It is established that the absence of a large number of objections to a proposed class

6  action settlement raises a strong presumption that the terms of a proposed class settlement action

7  are favorable to the class members."  DIRECTV, 221 F.R.D. at 529.  The class here consists of

8  1,992 class members.  (ECF No. 27-1 at 3.)  No class members have filed objections or opted out

9  of the class, and no class members appeared at the hearing on the motion for final approval to

10  contest the settlement.  (See ECF No 27 at 16–17; ECF No. 27-1 at 4.)  The absence of any

11  objections is compelling evidence that the settlement is fair, adequate and reasonable.

12  DIRECTV, 221 F.R.D. at 529; see also Patel v. Axesstel Inc., No. 3:14-cv-1037-CAB-BGS,

13  2015 WL 6458073, at *6 (S.D. Cal. Oct. 23, 2015) (the "absence of a single objection to the

14  settlement is compelling evidence that the Proposed Settlement is fair, just, reasonable, and

15  adequate."); Hanlon, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class

16  willingly approved the offer and stayed in the class presents at least some objective positive

17  commentary as to its fairness.").

18        Thus, the absence of class members opting out of the class and the absence of objections

19  by class members weighs in favor of settlement.

20          **g.**        **Risk of Collusion**

21        The Court additionally considers the risk of collusion.  The Ninth Circuit has provided

22  examples of signs that a settlement is the product of collusion between the parties, such as "(1)

23  when counsel receive a disproportionate distribution of the settlement, or when the class receives

24  no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a

25  'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from

26  class funds … ; and (3) when the parties arrange for fees not awarded to revert to defendants

27  rather than be added to the class fund."  In re Bluetooth, 654 F.3d at 947.

28        Here, none of the signs of collusion are present.  The class in this action is receiving a

1   substantial award with a net settlement amount of $1,737,685.60 being distributed to the class

2   while class counsel is seeking twenty-five percent of the common fund in attorneys' fees.

3   Additionally, as previously noted, the settlement represented approximately 97% of Defendant's

4   realistic, risk-adjusted exposure, the unclaimed funds in this action do not revert to the defendants,

5   and no class members opted out or objected to the settlement.  Finally, the settlement agreement

6   here was negotiated with the assistance of a mediator who was experienced in wage and hour

7   litigation.  See Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 613 (E.D. Cal. 2015) (stating

8   participation in mediation supports determination that settlement process was not collusive);

9   Villegas v. J.P. Morgan Chase & Co., No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6

10  (N.D. Cal. Nov. 21, 2012) (stating that the fact settlement was reached following two sessions with

11  a private mediator experienced in wage and hour class action "tend[ed] to support the conclusion

12  that the settlement process was not collusive."); Satchell v. Fed. Express Corp., Nos. C03-2659 SI,

13  C03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an

14  experienced mediator in the settlement process confirms that the settlement is non-collusive.").

15      The foregoing supports the finding that there was no collusion between the parties in

16  reaching the agreement.

### h.   The Factors Weigh in Favor of Approving the Class and Collective Action Settlement

19      After considering the foregoing factors, the Court finds that the settlement is fair, adequate,

20  and reasonable pursuant to Rule 23(e).  Further, the Court finds no evidence that the settlement is

21  the result of any collusion between the parties.  In re Bluetooth, 654 F.3d at 946–47.

### C.   *Cy Pres* Award

23      Any unclaimed funds will be distributed to a *cy pres* beneficiary.  Since most class

24  action settlements result in unclaimed funds, a plan is required for distributing the unclaimed

25  funds.  Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1305 (9th Cir. 1990).

26  The alternatives available are *cy pres* distribution, escheat to the government, and reversion to

27  the defendants.  Id. at 1307.  *Cy pres* distribution allows the distribution of unclaimed funds to

28  indirectly benefit the entire class.  Id. at 1305.  This requires the *cy pres* award to qualify as "the

next best distribution" to giving the funds directly to the class members.  Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012).  "Not just any worthy charity will qualify as an appropriate *cy pres* beneficiary[,]" there must be "a driving nexus between the plaintiff class and the *cy pres* beneficiary."  Dennis, 697 F.3d at 865 (quoting Nachshin v. AOL, LLC, 663 F.3d 1034, (9th Cir. 2011)).  "A *cy pres* award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members and must not benefit a group too remote from the plaintiff class."  Dennis, 697 F.3d at 865 (internal punctuation and citations omitted).  The *cy pres* award must "be tethered to the objectives of the underlying statutes or the interests of the class members."  Koby v. ARS Nat'l Servs., Inc., 846 F.3d 1071, 1080 (9th Cir. 2017).

Plaintiff has designated the legal aid organization, Central California Legal Services as the *cy pres* beneficiary to receive any unclaimed funds.  As previously noted, Central California Legal Services provides free legal services to low-income populations in Fresno, Tulare, Kings, Merced, Mariposa, and Tuolumne Counties.  (See ECF No. 15-1 at 10–11 n.6.)  The Court finds that the required nexus is present in that Central California Legal Services is providing legal services to low-income residents of the Central California counties through a variety of programs addressing employment issues, including helping workers with disputes about wages and overtime pay, and providing free one-on-one consultations to workers with wage claims.  See www.centralcallegal.org/pro-bono-opportunities (last visited Oct. 13, 2022).  Thus, the Court finds that Central California Legal Services is an appropriate *cy pres* beneficiary.

### D.    Class Representative Service Award

Incentive awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  Rodriguez, 563 F.3d at 958–59.  They are considered "fairly typical in class actions cases," Id. at 958 (emphasis omitted), and "are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers."  Bellinghausen, 306 F.R.D. at 267 (citation omitted); see also In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 943 (9th Cir. 2015) (holding that the incentive payments to the class

representative by themselves do not create an impermissible conflict between the class members and the class representatives).

In assessing the appropriateness of class representative enhancements or incentive payments, the Court must consider factors such as: (1) the actions the plaintiff took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in pursuing litigation; and (4) any notoriety or personal difficulties encountered by the representative plaintiff. Khanna v. Intercon Sec. Systems, Inc., No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *10 (E.D. Cal. Apr. 8, 2014); Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 257 (E.D. Penn. 2011); see also Staton v. Boeing Co., 327 F.3d 938, 975–77 (9th Cir. 2003).

In the Ninth Circuit, courts have found that $ 5,000 is a presumptively reasonable service award. See Harris v. Vector Marketing Corp., No. C-08-5198 MEC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases). Where the representative seeks an award over the "presumptively reasonable" amount, many courts in this Circuit also consider the proportionality between the incentive payment and the range of class members' settlement awards and the settlement amount to determine whether the requested incentive payment is excessive. See id. (collecting cases); Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014); Hopson v. Hanesbrands Inc., No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009). Importantly, such payments must be "scrutinize[d] carefully ... so that they do not undermine the adequacy of the class representatives." Radcliffe, 715 F.3d at 1163 (citing Staton, 327 F.3d at 977). Given that service awards are at the discretion of the district court, see In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000), whatever the method used, the Court must make sure that where there is a "very large differential in the amount of damage awards between the named and unnamed class members," that differential is justified by the record. Staton, 327 F.3d at 978.

Here, the class representative is seeking a service award of $7,500.00, which is to be awarded from the gross settlement amount of $2,400,000 prior to division of the net settlement

amount of $1,737,685.60 amongst the 1,992 class members.  Meanwhile, the Court notes the settlement provides an average net payment of $872.33 per class member.[3]  (ECF No. 27 at 7; ECF No. 27-1 at 5.)  As the requested service award is 8.6 times the size of the average net payment,[4] it constitutes a large differential with respect to the amounts to be awarded to the named Plaintiff versus the 1,991 unnamed class members.  The proportionality between these payments, alone, suggests the requested award amount is excessive.  In addition, however, the Court does not find that the record supports an award higher than the Ninth Circuit average of $5,000.00.

At the preliminary approval stage, Plaintiff submitted a declaration averring that she provided invaluable assistance to class counsel by providing factual background for the mediation and complaint, participated in phone calls to discuss litigation and settlement strategy, and provided and reviewed relevant documents.  (ECF No. 15-7 at 3 (Jackson Decl.).)  Plaintiff also averred that, in agreeing to serve as class representative, she undertook a financial risk because she could become liable for defense costs if she did not win in the lawsuit and exposed herself to the risk of negative publicity and reputational harm.  (Id. at 3–4; see also ECF No. 15-2 at 28–29.)  Class counsel similarly asserted they believed the award amount was reasonable compensation "given the time and effort that Plaintiff devoted to this case," such as participating in phone calls with class counsel, gathering highly relevant documents, and speaking to and interviewing other class members.  (ECF No. 15-6 at 29 (Melmed Decl.); ECF No. 15-2 at 28–29.)  And the parties proffered that Plaintiff signed a general release of claims that is broader than the release of the other class members.  (See ECF No. 15-6 at 29.)  At the preliminary approval stage, the Court found such declarations were adequate for purposes of

---

[3] Plaintiff also notes that the "maximum net payment" is $4,938.27 (id.); however, there is no evidence in the record indicating how many class members would actually receive a net award close to this amount.  Indeed, in light of the fact that the average net payment is only $872.33, less than one-fourth the amount of this "maximum" net payment amount, the Court surmises the number is relatively small and the payment of $4,938.27 may even be an outlier.

[4] The Court acknowledges that, in light of its proposed reduction in attorneys' fees, this average net payment amount should increase, to some extent.  Nonetheless, even under such circumstances, the Court finds the remaining difference between the service award and average net award, in combination with the minimal actions and amount of effort Plaintiff had to expend in this case, still does not justify an incentive payment that exceeds the presumptively reasonable amount by $2,500.00, as discussed herein.

1   recommending preliminary approval of the service award.  (See ECF No. 19 at 23.)

2          However, the Court expressed skepticism at that time as to whether Plaintiff's

3   "comparatively high amount of $7,500 is justified" in light of Plaintiff's contributions as class

4   representative.  (Id. at 21–22.)  For example, the Court noted Plaintiff's "negative publicity and

5   reputational harm" assertion was speculative and vague, lacking a factual basis.  (Id. at 22–23

6   (citing Harris, 2012 WL 381202, at *7 (noting concerns about retaliation only apply where the

7   plaintiff is still employed by the defendant and reducing incentive award where asserted threat

8   to future employment was "entirely speculative")).)  The Court also noted the declarations were

9   vague as to Plaintiff's "invaluable" contributions, as "no one identifies the number of hours

10  Plaintiff actually spent assisting in this litigation on behalf of the class members as opposed to

11  merely her individual claims … or indicates whether Plaintiff was deposed, provided any

12  affidavits in support of the litigation, or other tasks to benefit the class as opposed to her

13  individual claims."  (Id. at 22 (citing Ogbuehi v. Comcast of CA/CO/FL/OR, Inc., 303 F.R.D.

14  337, 353 (E.D. Cal. 2014) (noting counsel's generalized summary of services the class

15  representative provided was insufficient to enable the court to make a well-informed decision

16  regarding approval of the proposed enhancement award); see also Torchia v. W.W. Grainger,

17  Inc., 304 F.R.D. 256, 270–80 (E.D. Cal. 2014) (in determining amount of incentive to be

18  awarded, court must consider time expended and the fairness of the plaintiff's hourly rate);

19  Harris, 2012 WL 381202, at *7 (reducing incentive award where plaintiff failed to distinguish

20  time spent for benefit of class from time spent on the merits of her individual claims)).)  And

21  the Court noted Plaintiff did not indicate what additional claims she had against Defendant that

22  she released, as compared to the other class members.  (Id. at 23.)

23         Finally, even though it preliminarily approved the service award amount, the Court

24  advised Plaintiff that, on final approval, she would need to justify the full amount requested, by

25  providing "a detailed declaration prior to the final approval hearing that describes her current

26  employment status, any risks she faced as class representative, specific activities she performed

27  as class representative, and the amount of time she spent on each activity, in accordance with

28  the requirements discussed by the Court."  (Id.)  Yet, even despite the Court's statement and

1   clearly established legal authorities that a motion for final approval is more carefully scrutinized

2   by the court than is the preliminary approval request, see, e.g., True, 749 F. Supp. 2d at 1063,

3   Plaintiff did not submit further declarations to support the requested incentive award payment

4   amount.   Instead, as with many of the arguments asserted in the motion for final approval,

5   Plaintiff appears to rely largely upon prior arguments and statements asserted in support of the

6   motion for preliminary approval.   (See, e.g., ECF No. 27 at 17 (directly citing to Plaintiff's

7   declaration attached to preliminary approval motion and nothing else).)   However, this is

8   insufficient at the final approval stage.

9        The Court notes the parties did not engage in significant, protracted litigation in this

10  matter; rather, after "robust" informal discovery—which appears to consist solely of document

11  productions (see id. at 15–16)—the parties entered mediation and settled the case.   Plaintiff

12  continues to maintain her contributions to the class were "significant," but there is no indication

13  that she was deposed, was required to respond to discovery, or undertook other significant

14  actions.   Indeed, at the hearing on the motion for final approval, counsel conceded that Plaintiff

15  was not present at the mediation.   Furthermore, Plaintiff ignored the Court's invitation to

16  supplement the record, and instead decided to rest on her prior declaration, even though the

17  Court had discussed—at some length—the reasons as to why it would be deemed deficient at

18  the final approval stage.

19       On this record, the Court cannot conclude Plaintiff has established any justification for

20  receiving an award in excess of the presumptively reasonable amount identified by the Ninth

21  Circuit, particularly where such an award significantly exceeds the award amounts of her fellow

22  class members.   Nonetheless, the Court is also mindful that, if Plaintiff had not initiated and

23  pursued this litigation, the class members would not have received any benefit.   Accordingly,

24  the Court shall recommend that Plaintiff receive an incentive award, but that the amount of the

25  award be reduced to $5,000.00.

26       **E.   Attorney Fees**

27       In this instance, the settlement has resulted in a gross settlement amount of 2,400,000.00.

28  Class counsel is seeking $600,000.00 in attorney fees, which is 25% of the gross settlement

1  amount.  Plaintiffs argue that class counsel is experienced and skilled and invested substantial

2  amounts of time and energy on behalf of the class to achieve the settlement in this action.

3  Defendant does not oppose the request.

4          In a certified class action, reasonable attorney fees and costs may be awarded where they

5  are authorized by law or the parties' agreement.  Fed. R. Civ. P. 23(h).  Even where the parties

6  have agreed to the attorney fee award, "courts have an independent obligation to ensure that the

7  award, like the settlement itself, is reasonable[.]"  In re Bluetooth, 654 F.3d at 941.  "[A] district

8  court must carefully assess the reasonableness of a fee amount spelled out in

9  a class action settlement agreement" to determine whether it is " 'fundamentally fair, adequate,

10 and reasonable' Fed. R. Civ. P. 23(e)."  Staton, 327 F.3d at 963.  To do so, the Court must

11 "carefully assess the reasonableness of a fee amount spelled out in a class action settlement

12 agreement."  Id.

13         A court "may not uncritically accept a fee request," but must review the time billed and

14 assess whether it is reasonable in light of the work performed and the context of the

15 case.  See Common Cause v. Jones, 235 F .Supp. 2d 1076, 1079 (C.D. Cal. 2002); see

16 also McGrath v. Cnty. of Nev., 67 F.3d 248, 254 n.5 (9th Cir. 1995) (noting a court may not

17 adopt representations regarding the reasonableness of time expended without independently

18 reviewing the record); Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1385 (9th Cir.

19 1984) (remanding an action for a thorough inquiry on the fee request where "the district court

20 engaged in the 'regrettable practice' of adopting the findings drafted by the prevailing party

21 wholesale" and explaining a court should not "accept[ ] uncritically [the] representations

22 concerning the time expended").

23         The party seeking fees bears the burden of establishing that the fees and costs were

24 reasonably necessary to achieve the results obtained.  See Fischer v. SJB–P.D., Inc., 214 F.3d

25 1115, 1119 (9th Cir. 2000).  Therefore, a fee applicant must provide time records documenting

26 the tasks completed and the amount of time spent.  Hensley v. Eckerhart, 461 U.S. 424, 424

27 (1983); Welch v. Metro. Life Ins. Co., 480 F.3d 942, 945–46 (9th Cir. 2007).  "Where the

28 documentation of hours is inadequate, the district court may reduce hours

accordingly."  <u>Hensley</u>, 461 U.S. at 433.

Significantly, when fees are to be paid from a common fund, as here, the relationship between the class members and class counsel "turns adversarial."  <u>In re Wash. Pub. Power Supply Sys. Sec. Litig.</u>, 19 F.3d 1291, 1302 (9th Cir. 1994).  The Ninth Circuit observed:

> [A]t the fee-setting stage, plaintiff's counsel, otherwise a fiduciary for the class, has become a claimant against the fund created for the benefit of the class.  It is obligatory, therefore, for the trial judge to act with a jealous regard to the rights of those who are interested in the fund in determining what a proper fee award is.

<u>Id.</u> at 1302 (internal quotation marks, citation omitted).  As a result, the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund.  <u>Id.</u>; <u>Rodriguez</u>, 563 F.3d at 968 ("when fees are to come out of the settlement fund, the district court has a fiduciary role for the class").

The Ninth Circuit has affirmed the use of two separate methods of calculating attorney's fees, depending upon the case.  <u>Hanlon</u>, 150 F.3d at 1029.  In "common-fund" cases where, as here, the settlement or award creates a large fund for distribution to the class, "the district court has discretion to use either a percentage or 'lodestar method.' "  <u>Id.</u>

1.    <u>Percentage of Common Fund Award</u>

In the Ninth Circuit, courts typically utilize twenty-five percent of the common fund as the "benchmark" for a reasonable fee award, with adjustments provided there is adequate explanation in the record for any special circumstances that justify departure.  <u>In re Bluetooth</u>, 654 F.3d at 942.  Prior to <u>In re Bluetooth</u>, the Ninth Circuit noted the usual range for common fund attorney fees is between twenty to thirty percent.  <u>See</u> <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th Cir. 2002).

Here, the settlement agreement provides class counsel may request fees payment of up to twenty-five percent of the settlement amount (i.e., up to $600,000) and an expenses payment of up to $20,000.  Counsel argues this amount is eminently reasonable in light of class counsel's experience, the time they have devoted to zealously advocating on behalf of Plaintiff and the class in this action, and the fact that Plaintiff's initial retainer agreement provided for fees up to one-third of the amount obtained.  (<u>See</u> ECF No. 15-2 at 29–30; <u>see also</u> ECF No. 15-6 at 28–

29.)  Moreover, the Court acknowledges the requested benchmark represents less than many fee awards in wage-and-hour class actions in California.  See, e.g., Stuart v. Radio Shack Corp., No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug 9, 2010) (noting benchmark of 1/3 of total settlement was within range of percentages courts have held reasonable in other class action lawsuits); Romero v. Producers Dairy Foods, Inc., No. 1:05cv00484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (awarding benchmark fees of 1/3 of total settlement in wage and hour class action).  Because both the Ninth Circuit and this Court have applied a twenty-five percent benchmark for the award of attorneys' fees in common fund cases, see In re Bluetooth, 654 F.3d at 942; Rodriguez v. M.J. Brothers, Inc. (M.J. Brothers), No. 1:18-cv-00252-LJO-SAB, 2019 WL 3943856 (E.D. Cal. Aug. 21, 2019), and for the other aforementioned reasons, the Court finds the attorneys' fees and expenses award is reasonable under the percentage method.

2.      The Lodestar Method

However, the Court noted in its order preliminarily approving the fee request that it would employ the lodestar method as a cross-check at the final approval stage and directed counsel to submit a thorough fee award petition detailing the hours reasonably spent representing the class in this action.  (See ECF No. 19 at 19–20.)  Counsel has submitted such records in support of their unopposed motion for attorneys' fees, which also came before the Court at the October 13, 2022 hearing.  (See ECF No. 26.)

The "lodestar" method is typically used where the benefit received by the class is primarily injunctive in nature, and therefore, monetary benefit is not easily calculated.  In re Bluetooth, 654 F.3d at 941.  The "lodestar" approach calculates attorney fees by multiplying the number of hours reasonably expended by a reasonable hourly rate.  Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013); Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008).

When applying the percentage of the common fund method in calculating attorney fees, courts use the "lodestar" method as a crosscheck to determine the reasonableness of the fee request.  See Vizcaino, 290 F.3d at 1050.  When the lodestar is used as a cross-check for a fee

20

award, the Court is not required to perform an "exhaustive cataloguing and review of counsel's hours." See Schiller v. David's Bridal, Inc., No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001, at *20 (citing In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 306 (3d Cir. 2005); In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166 (S.D. Cal. 2007)).  Assuming the hours reported are reasonable, the class counsel reports the resulting lodestar totals $184,663.79, plus additional fees incurred in completing the settlement administration process post-hearing, which results in a final approval total of $208,358.79; Plaintiff maintains these cumulative fees represent a lodestar multiplier of 2.87.  (See ECF No. 26-1 at 7; ECF No. 26-7 at 15.)

### a.    Reasonable Hourly Rates

Significantly, however, the hourly fees used to calculate this amount must be reduced to reflect the market rate within this community.  The Supreme Court explained that attorney fees are to be calculated with "the prevailing market rates in the relevant community."  Blum v. Stenson, 465 U.S. 886, 895–96, n.11 (1984).  In general, the "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits."  Camacho, 523 F.3d at 979.  Thus, when a case is filed in the Fresno Division of the Eastern District of California, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate..."  See Jadwin v. Cnty. of Kern, 767 F. Supp. 2d 1069, 1129 (E.D. Cal. 2011).

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum, 465 U.S. at 895 n.11. "Though affidavits provide satisfactory evidence of the prevailing market rate, they are not conclusive … [and] Courts should rely on their own familiarity with the market … bas[ing] their rates on the standards of the legal community in which the court sits."  Cal. Ass'n of Rural Health Clinics v. Douglas, No. 2:10-cv-00759-TLN-EFB, 2014 WL 5797154, at *3 n.7 (E.D. Cal. Nov. 6, 2014).

This Court also relies on its own knowledge of customary legal local rates and experience

with the legal market in setting a reasonable hourly rate.  Ingram v. Oroudjian, 647 F.3d 925, 926
(9th Cir. 2011).  In the Fresno Division of the Eastern District of California, across a variety of
types of litigation, generally, attorneys with experience of twenty or more years of experience are
awarded $350.00 to $400.00 per hour; attorneys with ten to twenty years of experience are
awarded $250.00 to $350.00 per hour; attorneys with five to ten years of experience are awarded
$225.00 to $300.00 per hour; and less than $200.00 per hour for attorneys with less than five
years of experience.  See Freshko Produce Servs., Inc. v. Write On Mktg., Inc. (Freshko), No.
1:18-cv-01703-DAD-BAM, 2019 WL 3798491, at *2–3 (E.D. Cal. Aug. 13, 2019), report and
recommendation adopted, 2019 WL 5390563 (E.D. Cal. Oct. 22, 2019) (finding that "[i]n the
Fresno Division of the Eastern District of California, attorneys with twenty or more years of
experience are awarded $350.00 to $400.00 per hour," that "$300 is the upper range for
competent attorneys with approximately a decade of experience," and that the accepted range for
attorneys with less than ten years of experience "is between $175 and $300 per hour"; and
awarding $350 per hour to attorney with approximately 27 years of experience, and $175 per
hour to attorney with "approximately four years of experience") (citations omitted); see also
Garcia v. FCA US LLC, No. 1:16-cv-0730-JLT, 2018 WL 1184949, at *6 (E.D. Cal. Mar. 7,
2018) (awarding $400.00 per hour to attorney with nearly thirty years of experience; $300.00 per
hour to attorney with nearly fifteen years of experience; $250.00 per hour to attorney with ten
years of experience; $225.00 per hour to attorneys attorney with five years of experience; and
$175.00 per hour to attorney with less than five years of experience); Est. of Casillas v. City of
Fresno, No. 1:16-cv-01042-AWI-SAB, 2020 WL 869117, at *4–5, *11 (E.D. Cal. Feb. 21,
2020), appeal dismissed in part, No. 19-16436, 2020 WL 3470092 (9th Cir. Jun. 5, 2020),
and appeal dismissed, No. 19-16436, 2021 WL 3758352 (9th Cir. Aug. 18, 2021) (reducing
requested rate of $1,200.00 to $400.00 per hour for attorney with thirty-five years of experience,
who was considered "accomplished and reputable … with many [] years of experience in civil
rights cases and other types of litigation requiring competent trial work"); Mike Murphy's
Enters., Inc. v. Fineline Indus., Inc., No. 1:18-cv-0488-AWI-EPG, 2018 WL 1871412, at *3
(E.D. Cal. Apr. 19, 2018) (awarding $325.00 per hour as requested by attorney with over twenty

years of experience; $300.00 per hour as requested by attorney with nearly twenty years of experience; and $250.00 per hour as requested by attorney with seven years of experience); TBK Bank, SSB v. Singh, No. 1:17-cv-00868-LJO-BAM, 2018 WL 1064357, at *8 (E.D. Cal. Feb. 23, 2018), report and recommendation adopted, 2018 WL 3055890 (E.D. Cal. Mar. 21, 2018) (awarding $400.00 per hour to attorneys with over thirty-five years of experience; $350.00 per hour to attorney with twenty years of experience; and $300.00 per hour to attorney with ten years of experience); Phillips 66 Co. v. Cal. Pride, Inc., No. 1:16-cv-01102-LJO-SKO, 2017 WL 2875736, at *16 (E.D. Cal. Jul. 6, 2017), report and recommendation adopted, 2017 WL 3382974 (E.D. Cal. Aug. 7, 2017) (awarding $400.00 per hour to attorney with twenty years of experience); Roach v. Tate Publ'g & Enters., No. 1:15-cv-00917-SAB, 2017 WL 5070264, at *10 (E.D. Cal. Nov. 3, 2017) (awarding $325.00 per hour to attorney with sixteen years of experience in copyright action); Sanchez v. Frito-Lay, Inc., No. 1:14-cv-00797-AWI-MJS, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015) (awarding $350.00 per hour to attorneys with more than twenty years of experience in wage and hour class action; and $275.00 per hour to attorney with fourteen years of experience); Englert v. City of Merced, No. 1:18-cv-01239-NONE-SAB, 2020 WL 2215749, at *13 (E.D. Cal. May 7, 2020) (awarding $450.00 per hour to partner with nineteen years of experience; $400.00 per hour to senior associate attorney with an unspecified number of years of experience; and $325.00 per hour to associate with eight years of experience).

Here, Plaintiff is requesting an hourly rate of $919.00 for Mr. Ackermann; $764.00 for Mr. Kreitenberg; $700.00 for Mr. Melmed; $525.00 for Mr. Smith; $400.00 for Ms. Supanich; $350.00 for Ms. Lin; $208.00 for Ms. Gutierrez; and $200.00 for Ms. Blackwell.  (ECF No. 26-1 at 6–7; ECF No. 26-7 at 15.)  The Court evaluates each requested rate herein.

i.    Craig Ackermann

Mr. Ackermann is a founding and managing shareholder in the law firm of Ackermann & Tilajef, P.C., is licensed to practice law in California, Texas, and Washington, and is admitted to the Ninth and Fifth Circuit Courts of Appeals and the U.S. Supreme Court Bar.  (ECF No. 26-1 at 2 (Ackermann Fees Decl.); ECF No. 15-2 at 2–4.)   His firm has particular expertise

1  representing employees challenging on duty rest period policies, including due to a facially

2  invalid policy.  (ECF No. 26-1 at 4–5.)  Mr. Ackermann has been exclusively practicing

3  employment law for over twenty-four years and has successfully represented over 250,000

4  workers in more than 300 wage and hour class action lawsuits since 2004.  (Id. at ¶ 7; see also

5  ECF No. 15-2 at 5–9.)  He cites at least six California class action cases in federal and state

6  courts in which his firm was appointed as class counsel, and notes he was involved for several

7  years as second-chair counsel for the plaintiffs in the second largest sexual harassment case in

8  U.S. history.  (ECF No. 15-2 at 3–5.)

9         Plaintiff also cites to a number of cases in which courts approved Mr. Ackermann's

10 requested fee rate in the past.  (Id. at ¶ 11; ECF No. 26-1 at 7–8); Pagh v. Wyndham Vacation

11 Ownership, Inc., No. 8:19-cv-00812-JWH-ADSx (Mar. 23, 2021) (finding hourly rate of $800.00

12 to be reasonable); Moss v. USF Reddaway, Inc., No. 5:15-cv-01541-JAK-FFM (Jul. 25, 2018)

13 (noting the court previously approved Mr. Ackermann's fee rates from $660.00 to $800.00 in

14 prior class action suits); Santamour v. UPS Freight, Inc., No. 2:17-cv-00196 (E.D. Wash. Jun.

15 26, 2018) (approving rate of $717.00); Hollis v. Union Pac. R.R. Co., No. 5:17-cv-02449-JGB-

16 SHK (Sept. 19, 2018) (approving rate of $800.00).  However, none of the awards in these cases

17 address the relevant legal community here.[5]

18        Plaintiff additionally cites a case arising from the Eastern District of California,

19 Sacramento Division in support of Mr. Ackermann's fee rate, Bykov v. DC Transp. Servs., Inc.,

20 No. 2:18-cv-1691-DB (E.D. Cal. Mar. 3, 2020); however, Plaintiff does not indicate what hourly

21 rate was approved (an independent review by the Court reveals the rate calculated to

22

23 [5] The Court notes Plaintiff often provides incomplete case citations which do not indicate the jurisdiction of each
court from which the aforementioned cases arose, and the Court will not expend further time attempting to fill in

24 these blanks to cure the deficiencies in Plaintiff's supporting papers.  The Court additionally notes Plaintiff
repeatedly makes references to her prior briefings and multiple supporting declarations filed in this matter and
purports to incorporate them by reference so as not to have to reassert prior arguments in the instant moving papers.

25 However, by refusing to provide crucial supporting arguments and evidence in her pleadings in support of the
instant matter for final approval, under the premise of saving time, Plaintiff instead requires this Court to correlate

26 and append arguments from the prior pleadings into the instant matter; this is not well-taken.  See Greenwood v.
F.A.A., 28 F.3d 971, 977 (9th Cir. 1994) (quoting U.S. v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)) ("We will not

27 manufacture arguments for an appellant, and a bare assertion does not preserve a claim … As the Seventh Circuit in
Dunkel stated aptly: '[j]udges are not like pigs, hunting for truffles buried in briefs.' ").  In any event, with respect to

28 the requested fee rates, the Court is able to surmise from the information regarding case numbers and named judges
that the aforementioned cases were not adjudicated in the Eastern District of California, Fresno Division.

approximately $502.91, with a note that up to $650.00 may be deemed reasonable).  Similarly, Plaintiff references other Eastern District of California cases showing approved rates ranging from $405.00 to $675.00 for partners and senior associates, though these, too, appear distinguishable.[6]  (See ECF No. 26-1 at 8–9.)  Importantly, none of the cited cases indicate Mr. Ackermann's currently requested rate of $919.00 has been approved as reasonable by courts in the  Eastern District of California, Fresno Division.  Thus, Plaintiff has not established the requested rate for Mr. Ackermann of $919.00 is reasonable.  Rather, relying on its own knowledge of customary legal local rates and experience with the legal market in the Fresno Division of the Eastern District of California, Ingram, 647 F.3d at 926, and accounting for Mr. Ackermann's extensive and exclusive experience in employment litigation, the Court concludes a reasonable rate for an attorney with Mr. Ackermann's breadth of experience is $450.00 per hour.  Englert, 2020 WL 2215749, at *13 (awarding $450.00 per hour to partner with nineteen years of experience); see also Casillas, 2020 WL 869117, at *4–5, *11 (reducing requested rate of $1,200.00 to $400.00 per hour for attorney with thirty-five years of experience, who was considered "accomplished and reputable … with many [] years of experience in civil rights cases and other types of litigation requiring competent trial work").

ii.   Avi Kreitenberg

Mr. Kreitenberg, was admitted to practice law in California in 2009, and is an attorney of eleven years.  He assisted in drafting briefs, pleadings, including the preliminary approval papers and supplements, and drafting and negotiating the settlement.  (ECF No. 26-1 at 6.)  Beyond this information, Plaintiff provides no other information—such as the extent of his experience specifically in wage and hour litigation or his "skill, experience and reputation" in the legal community, Blum, 465 U.S. at 895 n.11—to justify the much-increased requested hourly rate of $764.00.  The previously identified cases are similarly unavailing for Mr. Kreitenberg, as they neither support his requested hourly rate nor arise from the Eastern District of California, Fresno

---

[6] For example, Franco v. Ruiz Food Prods., Inc. relies on Bond v. Ferguson Enterprises, Inc., which was adjudicated prior to In re Bluetooth.  Franco, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *16–22 (E.D. Cal. Nov. 27, 2012); Bond, No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. Jun. 30, 2011).  As such, Franco approved fees that amounted to one-third of the common fund—which is not the current benchmark fee amount in this Circuit; moreover, the lodestar multiplier of 1.31 in that matter was deemed reasonable.

1   Division.   Accordingly, relying on its own knowledge of customary legal local rates and

2   experience with the legal market in the Fresno Division of the Eastern District of California, the

3   Court concludes a reasonable rate for an attorney with Mr. Kreitenberg's experience is $350.00

4   per hour.  <u>Freshko</u>, 2019 WL 3798491, at *2–3 (finding that "[i]n the Fresno Division of the

5   Eastern District of California, … $300 is the upper range for competent attorneys with

6   approximately a decade of experience,"); <u>Englert</u>, 2020 WL 2215749, at *13 (awarding $400.00

7   per hour to senior associate attorney with an unspecified number of years of experience and

8   $325.00 per hour to associate with eight years of experience).

9          iii.      <u>Jonathan Melmed</u>

10         Mr. Melmed became a member of the California bar in 2013, and is an attorney with nine

11  years of experience.  (ECF No. 26-7 at 3 (Melmed Fees Decl.).)  He is a founding and managing

12  shareholder of Melmed Law Group, P.C., which represents plaintiffs in class action lawsuits.

13  (<u>Id.</u> at 3–4.)  Mr. Melmed has represented thousands of employees in wage and hour class

14  actions, and other employment-related matters.  (<u>See id.</u> at 4–14 (citing multiple class action

15  lawsuits).)  Mr. Melmed's requested rate is $700.00.  (ECF No. 26-7 at 15.)  Based on his

16  experience in employment law and as a founding and managing partner for his firm, the Court

17  concludes a reasonable rate for Mr. Melmed in the Fresno Division of the Eastern District of

18  California is $375.00 per hour.  <u>Freshko</u>, 2019 WL 3798491, at *2–3 (in Fresno, "$300 is the

19  upper range for competent attorneys with approximately a decade of experience"); <u>TBK Bank</u>,

20  2018 WL 1064357, at *8 (awarding $300.00 per hour to attorney with ten years of experience);

21  <u>see also Englert</u>, 2020 WL 2215749, at *13 (awarding higher rate to partner).

22         iv.      <u>Kyle Smith</u>

23  Mr. Smith was admitted to practice in California in 2011. He is an attorney with ten years of

24  experience, and has been practicing labor and employment law since his time in law school at

25  UCLA.   He has also posted writings about various labor and employment law topics in

26  California, which have garnered millions of views.  (ECF No. 26-7 at 15, 17.)  Mr. Smith's

27  requested hourly rate is $525.00.  (<u>Id.</u> at 15.)  Based on his experience in employment law and

28  publications, the Court concludes a reasonable rate for Mr. Smith in the Fresno Division of the

1    Eastern District of California is $325.00 per hour.  Freshko, 2019 WL 3798491, at *2–3; TBK
2    Bank, 2018 WL 1064357, at *8.

3              v.       Laura Supanich

4              Ms. Supanich was admitted to practice in California in 2017.  She is an attorney with four
5    years of experience, and has been practicing labor and employment law (almost exclusively
6    focusing on wage and hour class litigation) since during her time in law school at the University
7    of San Diego.  Ms. Supanich's requested hourly rate is $400.00.  (ECF No. 26-7 at 15, 17.)
8    Based on her breadth of experience, however, the Court concludes a reasonable rate for Ms.
9    Supanich in the Fresno Division of the Eastern District of California is $200.00 per hour.
10   Freshko, 2019 WL 3798491, at *2–3 (finding the accepted range for attorneys with less than ten
11   years of experience "is between $175 and $300 per hour," and awarding $175 per hour to
12   attorney with "approximately four years of experience"); see also Garcia, 2018 WL 1184949, at
13   *6 (awarding $175.00 per hour to attorney with less than five years of experience).

14             vi.      Sharon Lin

15             Ms. Lin is an attorney with four years of experience, with a requested hourly rate of
16   $350.00.  (ECF No. 26-7 at 15.)  No further information is provided about Ms. Lin.  Based on
17   her breadth of experience and the absence of further information, the Court concludes a
18   reasonable rate for Ms. Lin in the Fresno Division of the Eastern District of California is $175.00
19   per hour.  Freshko, 2019 WL 3798491, at *2–3; Garcia, 2018 WL 1184949, at *6.

20             vii.     Lorie Gutierrez

21             Ms. Gutierrez is a paralegal with six years of law-related experience, working exclusively
22   on complex litigation and labor and employment matters (class actions and PAGA cases).  She
23   earned a B.S. degree in Communication from California State University, Northridge and a
24   paralegal certificate through the ABA approved paralegal studies program at West Los Angeles
25   College.  She assisted with gathering, documenting, and maintaining the various data and
26   document productions and assisting with the drafting of various documents in this matter.  Ms.
27   Gutierrez's requested hourly rate is $208.00.  (ECF No. 26-7 at 15–16.)  Based on the
28   information provided regarding her education and experience, the Court concludes a reasonable

paralegal rate for Ms. Gutierrez in the Fresno Division of the Eastern District of California is $125.00 per hour.  See Freshko, 2019 WL 3798491, at *3 (reducing hourly rate to $100.00, where counsel provided no supporting information about paralegal's experience to justify requested "upper rate of $150") (citation omitted); see also Yeager, 2010 WL 2303273, at *6 (noting the paralegal rate "favored" in the Eastern District of California is $75.00 per hour).

viii.   Jaclyn Blackwell

Finally, Ms. Blackwell has over nine years of legal experience, "including working on complex litigation matters and class actions."  (ECF No. 26-1 at 6–7.)  However, it is unclear how much of Ms. Blackwell's experience is derived from employment law.  Nor is it clear from the briefings whether Ms. Blackwell is a paralegal or a legal secretary, as the supporting declaration only refers to Ms. Blackwell as a "legal assistant" and indicates that she "provided administrative assistance throughout the case."  (See id.)  No further information is provided by Plaintiff regarding Ms. Blackwell's experience and work on this matter in support of her requested rate of $200.00.  (See generally ECF No. 26-1.)  See Mo. v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."); see also Trs. of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co., 460 F.3d 1253, 1256–57 (9th Cir. 2006) (on ERISA case, noting work performed by non-attorneys such as paralegals may be billed separately, and "even purely clerical or secretarial work is compensable if it is customary to bill such work separately, … *though such tasks 'should not be billed at the paralegal rate, regardless of who performs them.'* ") (internal citations omitted) (emphasis added).  In light of the nature of the work Ms. Blackwell appears to have performed in this case, and without further information, the Court finds a reasonable rate in the Fresno Division of the Eastern District of California for the non-attorney work performed by Ms. Blackwell is $75.00 per hour.  Jenkins by Agyei, 491 U.S. at 288 n.10; Trs. of Const. Indus. & Laborers Health & Welfare Tr., 460 F.3d at 1256–57; see also Freshko, 2019 WL 3798491, at *3; Yeager, 2010 WL 2303273, at *6.

**b.   Hours Reasonably Expended**

Plaintiff seeks 171.56 hours for time expended by Mr. Ackermann's firm in connection

with this action (80.20 hours billed by Mr. Ackermann, 71.16 hours billed by Mr. Kreitenberg, and 20.20 hours billed by Ms. Blackwell, for a total of $132,102.39); and 99.3 hours for time expended by Mr. Melmed's firm (52.8 hours by Mr. Melmed, 9.4 hours by Mr. Smith, 12.7 hours by Ms. Supanich, 3.6 hours by Ms. Lin, and 20.8 hours by Ms. Gutierrez, for a total of $52,561.40).  (ECF No. 26-1 at 6–7; ECF No. 26-7 at 15.)

Further, Mr. Ackermann indicates he expects his firm to expend additional hours in the drafting and filing of Plaintiff's motion for final approval and supporting papers, as well as traveling to, preparing for, and appearing at the final approval hearing, corresponding with the settlement administrator and opposing counsel throughout the settlement process, corresponding with the client, writing tax letters to the client, notifying the LWDA of the final approval order, and other tasks described as "necessary" that arise post-final approval.  More specifically, counsel anticipates Mr. Kreitenberg will spend an additional 25.0 hours on the aforementioned tasks, with Mr. Ackermann spending an additional 5.0 hours, resulting in a total lodestar for Mr. Ackermann's firm through final approval of $208,358.79.  (ECF No. 26-1 at 7.)  Similarly, Mr. Melmed anticipates his firm will expend some (unspecified) additional time corresponding and communicating with the settlement administrator and opposing counsel throughout the remainder of the settlement administration process, plus "a number of other tasks."  (ECF No. 26-7 at 15.)

The Court has reviewed the timesheets submitted by class counsel and finds the hours expended to be reasonable with the following exception.  Mr. Ackermann's firm has estimated it will bill an additional 30.0 hours (5.0 hours by Mr. Ackermann and 25.0 hours by Mr. Kreitenberg) for time spent on necessary tasks that arise post-final approval as well as preparing the final approval briefs and traveling to, preparing for, and appearing at the final approval hearing.  As only Mr. Kreitenberg appeared for Plaintiff, via videoconference (see ECF No. 28), and the hearing itself lasted, at most, ten minutes, time to travel and attend the hearing shall be deducted from the hours expended.  Similarly, as the Court previously noted by footnote, class counsel omitted several factual bases and arguments supporting the instant motion for final approval in favor of incorporating by reference these arguments as they were asserted in Plaintiff's prior briefings and supporting exhibits.  The Court finds a reduction of the time spent

preparing the final approval briefings is therefore also appropriate.  Therefore, the Court finds a reasonable amount of time expended in the aforementioned tasks subsequent to the filing of the fees motion is 2.0 hours for Mr. Ackermann, and 20.0 hours for Mr. Kreitenberg.

As noted, Plaintiff also anticipated that Mr. Melmed's firm would expend additional time post-final approval; however, no time estimate is expressly provided, nor does counsel provide much description as to the "other tasks" Mr. Melmed's firm expects to perform throughout the remainder of the settlement administration process.  Taking into account the number of class members and split of post-final approval work between the two co-counsel firms, this Court estimates Mr. Melmed's firm will expend an additional 10.0 hours on post-final approval work. These hours are expected to be expended by Mr. Melmed, as billing records suggest the vast majority of work performed by his firm in this matter was completed by him.

In sum, the Court finds the following totals reflect the reasonable rates and hours expended by each attorney and non-attorney in this matter:

| Timekeeper | Time Reasonably Expended | Reasonable Hourly Rate | Total |
|---|---|---|---|
| Mr. Ackermann | 82.20 hours | $450.00 | $36,990.00 |
| Mr. Kreitenberg | 91.16 hours | $350.00 | $31,906.00 |
| Mr. Melmed | 62.80 hours | $375.00 | $23,550.00 |
| Mr. Smith | 9.40 hours | $325.00 | $3,055.00 |
| Ms. Supanich | 12.70 hours | $200.00 | $2,540.00 |
| Ms. Lin | 3.60 hours | $175.00 | $630.00 |
| Ms. Gutierrez | 20.80 hours | $125.00 | $2,600.00 |
| Ms. Blackwell | 20.20 hours | $75.00 | $1,515.00 |

As such, the Court finds the final lodestar total is $102,786.00.  These cumulative fees represent a lodestar multiplier of 5.83.

///

1        **c.        Reasonable Fees Under the Lodestar Multiplier**

2        Significantly, there is a strong presumption that the lodestar is a reasonable fee.

3   Gonzalez, 729 F.3d at 1202; Camacho, 523 F.3d at 978.  As a result, "a multiplier may be used

4   to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported

5   by both specific evidence on the record and detailed findings ... that the lodestar amount is

6   unreasonably low or unreasonably high."  Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d

7   1041, 1045 (9th Cir. 2000) (internal punctuation and citations omitted).  Nevertheless, the Ninth

8   Circuit observed that the lodestar is "routinely enhanced ... to reflect the risk of non-payment in

9   common fund cases."  In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d at 1299–1300;

10  see also Fischel v. Equitable Life Assur. Society of U.S., 307 F.3d 997, 1008 (9th Cir. 2002) ("It

11  is an established practice in the private legal market to reward attorneys for taking the risk of

12  non-payment by paying them a premium over their normal hourly rates for winning contingency

13  cases."); Bellinghausen, 306 F.R.D. at 265.  The "lodestar multiplier" is calculated by dividing

14  the percentage fee award by the lodestar calculation.  Fischel, 307 F.3d at 1008.  Generally, a

15  district court has discretion to apply a multiplier to the attorneys' fees calculation to compensate

16  for the risk of nonpayment.  Id.; see also In re Coordinated Pretrial Proceedings in Petroleum

17  Prods. Antitrust Litig. v. Exxon Corp., 109 F.3d 602, 609 (9th Cir. 1997); Bond, 2011 WL

18  2648879, at *13.

19        To determine whether the lodestar multiplier is reasonable, the following factors may be

20  considered: (1) the amount involved and the results obtained, (2) the novelty and difficulty of the

21  questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion

22  of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6)

23  whether the fee is fixed or contingent, (7) time limitations imposed by the client or the

24  circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation,

25  and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the

26  professional relationship with the client, and (12) awards in similar cases.  Fischel, 307 F.3d at

27  1007, n.7 (citing Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975)); see

28  also Bond, 2011 WL 2648879, at *13.

As previously noted, class counsel reported a lodestar total of $208,358.79, based on counsel's requested hourly rates and hours expended.  Based on this original lodestar total, the resulting lodestar multiplier was 2.87.  (See ECF No. 26 at 23.)  Plaintiff argues this multiplier is considered reasonable and consistent with Ninth Circuit caselaw and in light of class counsel's excellent results.  See Vizcaino, 209 F.3d at 1051 (approving 25% fee with lodestar multiplier of 3.65 on the cross-check due to good results obtained and the novelty/complexity of issues).  However, in light of the Court's finding that counsel's requested hourly rates were not sufficiently supported in the record and were inconsistent with prevailing rates in the Fresno Division of the Eastern District of California for similar services by lawyers of reasonably comparable skill, experience, and reputation,  Blum, 465 U.S. at 895 n.11, the Court discounted the hourly rates to reflect reasonable rates that are in line with those prevailing in the community.  Consequently, the final lodestar total is $102,786.00.

Here, the requested fees of $600,000.00 would result in a lodestar multiplier of approximately 5.83, which exceeds the range typically awarded in the Ninth Circuit.  See Vizcaino, 290 F.3d at 1051 ("multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied").  The Court does not find exceptional circumstances apply to use a lodestar multiplier greater than that typically awarded in the Ninth Circuit.  Certainly, a monetary settlement at an early stage of the litigation is an excellent result compared to the prospect of protected litigation resulting in summary judgment or a defense verdict at trial, and this justifies an award of reasonable fees.  However, such may be said of all class action lawsuits that settle; therefore, this result, alone, does not justify an award of exceptionally high fees.  Notably, the Court notes class counsel did not file or oppose any motions before the Court in the course of litigation until seeking approval of the Settlement, did not face complicated factual issues, did not litigate any novel issues of law,[7] and did not indicate

_____

[7] Plaintiff maintains class counsel litigated a novel issue of law with respect to whether on premises rest break policies violation California law, as to the issue of whether Augustus constituted intervening law overturning prior decisions upholding such policies in favor of the employers.  (See ECF No. 26 at 15–18.)  However, Plaintiff also acknowledges that her class counsel raised this same issue and made the same arguments before the San Joaquin County Superior Court in Diaz v. Medline Indus., Inc., No. STK-CV-UOE-2019-5651, which the court ultimately found persuasive in December 2019.  (ECF No. 26 at 16.)  Moreover, Plaintiff acknowledges the California Supreme Court has issued at least one other decision that appears supportive of counsel's arguments, and the Labor

they were precluded from other work while prosecuting this action on Plaintiff's behalf.  To the contrary, the parties engaged in informal discovery—which consisted of document productions—and then participated in mediation that ultimately resulted in settlement.  On this record, the Court finds a reduction in fees is appropriate.  Plaintiff previously indicated a lodestar multiplier of 2.87 was reasonable.  The Court agrees and recommends, in light of the aforementioned reduction in hourly rates, that the attorneys' fees award be determined with a lodestar multiplier of 3.0.  The Court is satisfied that this amount is sufficiently reasonable on the bases previously articulated.  Accordingly, the Court recommends class counsel's request for attorneys' fees be granted in the modified amount as determined by the lodestar multiplier of 3.0 on the lodestar total of reasonable fees at their reduced hourly rates, as consistent with the prevailing market rates in the Fresno Division of the Eastern District of California.  This results in an attorneys' fees award of $308,358.00.

### F.   Costs

#### 1.   Litigation Expenses

Counsel seeks reimbursement for costs of $11,514.40 expended in this action, which the Court notes is less than the $20,000.00 amount it preliminarily approved.  "[A]n award of expenses should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary."  In re Immune Response, 497 F. Supp. 2d at 1177.

Upon review of the expenses submitted, the Court finds them to be reasonable.  The Court therefore recommends costs be awarded in the amount of 11,514.40.

#### 2.   Costs of Settlement Administration

The settlement agreement authorizes the reimbursement of expenses up to $20,000.00 for administrative expenses.  (See ECF No. 19 at 4; Agreement ¶ 7.1.)  Ms. Singh reports the total costs for services incurred and anticipated in connection with the administration of this

---

Commission revised the questions and answers page of its website in November 2017 to advise that an employer *cannot* require an employee to stay on the work premises during his or her rest period.  (ECF No. 26 at 17.)  The fact that the same arguments were previously made and found persuasive, and that more legal support currently exists for Plaintiff's position suggests somewhat lower risks in the instant case, as well as a finding that class counsel may have expended less time to some extent by applying the same arguments it previously formulated for another case.

1   settlement by CPT Group, Inc., the Court-approved class action settlement administrator, amount

2   to $19,300.00.  (ECF No. 27-1 at 5; ECF No. 27-1 at 5.)

3        The administrative expenses requested are within the range of previous costs for claims

4   administration awarded in this District.  See, e.g., Bond, 2011 WL 2648879, at *8 ($18,000

5   settlement administration fee awarded in wage an hour case involving approximately 550 class

6   members); Vasquez v. Coast Valley Roofing, 266 F.R.D. 482, 483–84 (E.D. Cal. 2010) ($25,000

7   settlement administration fee awarded in wage and hour case involving approximately 170

8   potential class members).  Accordingly, the Court recommends the request for $19,300.00 in

9   administration expenses for the settlement administration by CPT Group, Inc. be granted.

10                                              **IV.**

11                           **FINDINGS AND RECOMMENDATIONS**

12        Based on the foregoing, IT IS HEREBY RECOMMENDED that:

13   1.   Plaintiff's motion for final approval of class action settlement (ECF No. 27) and

14        motion for attorneys' fees (ECF No. 26) be GRANTED, AS MODIFIED, as

15        follows:

16   2.   The conditional class certification contained in the Preliminary Approval Order be

17        made final, as to the class consisting of: "All hourly non-exempt individuals who

18        are or were employed by Defendant in California at any point during the period

19        from January 21, 2016 through July 16, 2021 (the 'Class Period')";

20   3.   The Notice of Proposed Class Action Settlement and Hearing Date for Court

21        Approval and the Share Form ("Notice Packet") mailed to all class members be

22        deemed fairly and adequately described the terms of the proposed settlement

23        agreement and joint stipulation; was the best notice practicable under the

24        circumstances; was valid, due and sufficient notice to all class members; and

25        complied fully with Fed. R. Civ. P. 23(e)(1)(B), due process, and all other

26        applicable laws; afforded a full and fair opportunity to class members to

27        participate in the final approval hearing;

28   4.   All 1,992 Settlement Class members be deemed bound to the order granting final

                                                   34

approval of class action settlement and deemed to have released the released claims defined in the settlement agreement and addendum;

5.    Craig J. Ackermann and Avi Kreitenberg of Ackermann & Tilajef, P.C., and Jonathan Melmed of Melmed Law Group P.C. be appointed as counsel for the class, and found to be adequate counsel experienced in similar litigation;

6.    The settlement agreement and joint stipulation be deemed fair, reasonable, and adequate as to the class, Plaintiff, and Defendant, and the product of good faith, arm's-length negotiations between the parties, consistent with public policy, and fully compliant with all applicable provisions of law;

7.    The gross settlement of $2,400,000.00 be approved;

8.    Payment of up to $19,300.00 to CPT Group, Inc., the settlement administrator, be approved;

9.    The class representative incentive award to Plaintiff of $5,000.00 be approved;

10.    Attorneys' fees to Plaintiff's counsel in the amount of $308,358.00, and costs in the amount of $11,514.40 be approved pursuant to Fed. R. Civ. P. 23(h);

11.    The allocation of $24,000.00 be approved as payment for penalties under the California Labor Code Private Attorney Generals Act ("PAGA"), and payment of 75% thereof ($18,000.00) to the Labor and Workforce Development Agency for its portion of the PAGA penalties;

12.    The parties and the settlement administrator be directed to, following the "Effective Date" (as defined in the settlement agreement), carry out the implementation schedule set forth in the settlement agreement;

13.    The action be dismissed with prejudice, with each side to bear its own costs and attorneys' fees except as otherwise provided by the settlement and ordered by the Court; and

14.    The Court retain jurisdiction to consider any further applications arising out of or in connection with the settlement.

This findings and recommendations is submitted to the district judge assigned to this

action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  **Within fourteen (14) days** of service of this recommendation, any party may file written objections to this findings and recommendations with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 18, 2022**

UNITED STATES MAGISTRATE JUDGE