**ACKERMANN & TILAJEF, P.C.**
Craig J. Ackermann (SBN 229832)
cja@ackermanntilajef.com
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Phone: (310) 277-0614
Fax: (310) 277-0635

**MELMED LAW GROUP P.C.**
Jonathan Melmed (SBN 290218)
jm@melmedlaw.com
1801 Century Park East, Suite 850
Los Angeles, California 90067
Phone: (310) 824-3828
Fax: (310) 862-6851

Attorneys for Plaintiff, the Putative Class, and the Aggrieved Employees

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIESHIA MARIE JACKSON, an individual, on behalf of himself, the State of California, as a private attorney general, and on behalf of all others similarly situated, | Case Number: 1:20-cv-00345-JLT-SAB |
| | **Objections to Magistrate Judge's Findings and Recommendations** |
| Plaintiff, | |
| v. | Action Filed:      January 21, 2020 |
| | Removal Date:    March 4, 2020 |
| FASTENAL COMPANY, a Minnesota Corporation; and DOES 1 TO 20, | Date of Magistrate Judge's Findings and Recommendations:    October 19, 2022 |
| Defendants. | |

## OBJECTIONS TO FINDINGS AND RECOMMENDATIONS

Plaintiff Mieshia Marie Jackson ("Plaintiff") and her counsel submit the following objections to the Magistrate Judge's *Findings and Recommendations Recommending Granting in Part Final Approval of Class Action Settlement* (the "Report"), which were issued on October 19, 2022. Report, ECF No. 29; E.D. Cal. R. 304(b); Fed. R. Civ. P. 72(b)(2). The Report largely recommends the approval of Plaintiff's unopposed *Motion for Final Approval of Class Action Settlement* (the "Motion") (ECF No. 27), with two notable exceptions: **(1)** the Report recommends reducing the attorneys' fees from 25% of the common fund—the Ninth Circuit's well-established 25% benchmark—to approximately 12.8% of the common fund; and **(2)** the Report recommends reducing Plaintiff's class representative service award from the requested $7,500 down to $5,000.

As will be explained, these aspects of the Report improperly rely on outdated rates that contravene those approved in the Eastern District, ignore key factors in departing from the Ninth Circuit's 25% benchmark, overlook the potential availability of a higher lodestar multiplier, and improperly discount Plaintiff's significant contributions to the case. Accordingly, Plaintiff and her counsel respectfully object to the Report and request that the Court approve the attorneys' fees requested at a rate of 25% of the gross settlement amount and approve Plaintiff's class representative service award as requested.

**I.      Adopting the Ninth Circuit's 25% benchmark is appropriate given the risks of this case, the complete lack of objections to the proposed fees, and the excellent results achieved.**

The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). A request "of 25% of the gross settlement amount—this Circuit's benchmark percentage for reasonableness—carries with it a presumption of reasonableness." *In re China Intelligent Lighting & Elecs., Inc.*, No. CV 11-2768 PSG (SSX), 2015 WL 12765018, at *7 (C.D. Cal. Mar. 9, 2015). District courts must generally provide "adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *see also Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) ("A district court may depart from the benchmark but, '[i]f

1  such an adjustment [to the benchmark] is warranted, . . .  it must be made clear by the district court

2  how it arrives at the figure ultimately awarded.'").

3       This benchmark represents a strong default for an award of attorneys' fees and generally may

4  only be adjusted in "unusual circumstances." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268,

5  272 (9th Cir. 1989). The default benchmark is so strong, in fact, that some courts forego a lodestar

6  cross-check altogether where the benchmark is requested. *See, e.g.*, *Hirsh v. WW N. Am. Holdings, Inc.*,

7  No. 2:19-cv-9782-DSF (AFMx), 2021 WL 4622394, at *1 (C.D. Cal. Feb. 12, 2021) ("The Court finds

8  that a fee award of 25%, the Ninth Circuit benchmark, is reasonable under the common fund doctrine.

9  The Court finds that under the circumstances, the Court need not expend the effort to review evidence

10  of the reasonable hourly rate or the hours reasonably expended in order to determine the lodestar cross-

11  check.").

12       Here, the only unusual circumstances in the case favor an upward, not a downward adjustment

13  to the Ninth Circuit's benchmark. Specifically, there was significant uncertainty, and a corresponding

14  risk to Plaintiff's counsel, concerning the viability of the core claim in this case. As explained in

15  Plaintiff's *Motion for Order Granting Preliminary Approval of Class Action Settlement* ("Motion for

16  Preliminary Approval"), "Plaintiff's principal claim was that, during the Class Period, Defendant

17  promulgated an allegedly unlawful rest period policy that required Class Members to stay on the

18  premises or in designated areas during their rest periods . . . ." Motion for Preliminary Approval, ECF

19  No. 15-1, at 6:9–11. The likelihood of success on this claim was far from certain, which is evidenced

20  by *Estrada v. Royalty Carpet Mills, Inc.*, 76 Cal. App. 5th 685 (2022), in which the California Court

21  of Appeal opined that: "For [rest periods] our Supreme Court has suggested employers can lawfully

22  require employees to remain on the premises." *Id.* at 706. *Estrada* demonstrates just how novel and

23  unsettled the core claim in this case was.

24       In fact, the only Eastern District decisions to directly address the legality of on-premises rest

25  period policies have found **against** Plaintiff's position in this case. In *Bell v. Home Depot U.S.A., Inc.*,

26  No. 212CV02499JAMCKD, 2017 WL 1353779 (E.D. Cal. Apr. 11, 2017) (*Home Depot*), for example,

27  the Court refused to reconsider its grant of summary judgment in favor of the employer on the grounds

28  that the employer's on-premises rest period policy did not violate California law. *Id.* at *2. More

recently, in *Valencia v. VF Outdoor, LLC*, No. 120CV01795ADASKO, 2022 WL 4397084 (E.D. Cal. Sept. 23, 2022) (*Valencia*), the Court found that "there is nothing facially unlawful about a policy of requiring employees to stay on the premises during a rest break" and therefore recommended that class certification be denied as to the rest period class. *Id.* at *14.

Understanding these adverse decisions, the risks faced by Plaintiff's counsel were enormous and the results achieved were extraordinary. To combat these authorities, Plaintiff's counsel carefully crafted a novel theory of the case. Relying on *Bono Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th 968 (1995) (disapproved on other grounds in *Tidewater Marine W., Inc. v. Bradshaw*, 14 Cal. 4th 557, 573 (1996)), Plaintiff's counsel argued that the principles prohibiting on-premises **meal** periods applied to **rest** periods. In *Bono* the California Court of Appeal held: "When an employer directs, commands or restrains an employee from leaving the work place during his or her lunch hour and thus prevents the employee from using the time effectively for his or her own purposes, that employee remains subject to the employer's control. . . . [T]hat employee must be paid." *Id.* at 975. The California Supreme Court recently cited this aspect of *Bono* with approval in *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038, 1047 (2020). Plaintiff's counsel argued that prior federal district courts erred when examining the legality of on-premises rest breaks by failing to consider the related discussion of on-premises meal breaks in *Bono* and the issue of employer "control" when tethering employees to a particular location in *Frlekin*.

If this Court had agreed with *Estrada*'s dicta, or the Eastern District decisions in *Home Depot* or *Valencia*, the core claim in this case could have been wiped out and Plaintiff's counsel would have been left holding the bag. Despite that significant risk, Plaintiff's counsel vigorously litigated this novel issue and fought for the interests of the class members. In doing so, Plaintiff's counsel achieved an excellent result—the class members are expected to each receive an average gross payment of $872.33, with the highest being at least **$4,938.27**. ECF No. 27-1, at 5:10–12. Given these results, it came as no surprise that not a single class member objected to the requested attorneys' fees. ECF No. 27-1, at 4:21–22.

The outcome in this case, achieved by Plaintiff's counsel on a contingency basis in the face of enormous risks in litigating a novel issue, justify an *upward* departure from the Ninth Circuit's benchmark—not the reduction to nearly half of the Ninth Circuit's benchmark as suggested by the

Report. *Ferrell v. Buckingham Prop. Mgmt.*, No. 119CV00332JLTBAKEPG, 2022 WL 224025, at *1 (E.D. Cal. Jan. 25, 2022) ("Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes 'extremely risky' litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–1049 (9th Cir. 2002) ("[r]isk is a relevant circumstance" when considering attorneys' fees). Despite there being an opportunity to request an upward departure from the Ninth Circuit's benchmark, and in keeping with their commitment to the class, Plaintiff's counsel have merely requested reasonable attorneys' fees at the Ninth Circuit's default benchmark.

Reducing Plaintiff's counsel's fees to the extent proposed in the Report—to nearly **half** the Ninth Circuit's benchmark—would only serve to punish Plaintiff's counsel's efficient and effective resolution of this case, deter counsel from seeking to redress the rights of workers in novel cases, and incentivize "counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee." *Vizcaino*, 290 F.3d at 1050 n.5; *Crommie v. State of Cal., Public Utilities Com'n*, 840 F. Supp. 719, 725 (N.D. Cal. 1994) ("The purpose of contingent risk inquiry is to determine a fee that is likely to entice competent counsel to undertake difficult public interest cases.").

Moreover, the lodestar method adopted by the Report is generally reserved for cases where the relief sought and obtained is "primarily injunctive in nature and thus not easily monetized." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). That is not the case here. The relief sought, and recommended to be granted by the Report, is **exclusively** monetary in nature and is thus "easily quantified" such that a percentage-of-the-recovery method of fee calculation is most appropriate. *Id.* at 942; Report, ECF No. 29, at 34–35. In fact, the Report even concedes that a 25% award is justified under the percentage-of-the-recovery method, based on the law and facts of the case, stating: "Because both the Ninth Circuit and this Court have applied a twenty-five percent benchmark for the award of attorneys' fees in common fund cases, . . . and for the other aforementioned reasons, the Court finds the attorneys' fees and expenses award is reasonable under the percentage method." Report, ECF No. 29, at 20:7–12. Because there is no dispute that awarding the benchmark would be appropriate here, Plaintiff's counsel request that this Court grant the attorneys' fees request of 25% of the common fund, as originally sought.

**II.      The Report erred in recommending that Plaintiff's counsel's fees be slashed based on a flawed lodestar cross-check.**

Attorneys' fees are generally analyzed "at current rather than historic rates in order to adjust for inflation and loss of the use funds." *Gates v. Deukmejian*, 987 F.2d 1392, 1406 (9th Cir. 1992). Here, the Report found that fees ranging from "less than $200.00" to $400.00 per hour are generally appropriate for attorneys in the Fresno courthouse of the Eastern District of California. Report, ECF No. 29, at 22:2–7. This range roughly reflects those approved in the Eastern District **more than a decade ago**. *See, e.g.*, *Dodson v. Albertson's, Inc.*, No. CIV. S-06-01486 LKK/DAD, 2008 WL 298823, at *3 (E.D. Cal. Feb. 1, **2008**) (approving fees between $225 per hour and $350 per hour); *Bond v. Ferguson Enterprises, Inc.*, No. 1:09-CV-1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, **2011**) ("Prevailing hourly rates in the Eastern District of California are in the **$400/hour** range.") (emphasis added); *see also Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 984 (E.D. Cal. **2012**) ("**$425/hour** is a reasonable hourly rate for class counsel's services" in a wage and hour case) (emphasis added). The Report's recommended hourly rates disregards current market rates, relies on old data, is at odds with fees recently approved in this district, and ignores this district's approval of awards for the attorneys in this case.

**A.      The Report's lodestar cross check analysis was flawed, in part, because it used outdated and artificially low rates**

In contrast to the Report's finding that fees in the Eastern District generally range from $200 to $400 per hour, numerous cases in the Eastern District have approved higher rates. For example, in *Barbosa v. Cargill Meat Solutions Corp.*—a **2013** case in the Fresno courthouse of the Eastern District—hourly rates as high as $720 per hour were found to accurately reflect prevailing hourly rates in a wage-and-hour case. 297 F.R.D. 431, 453 (E.D. Cal. 2013). In *Gong-Chun v. Aetna Inc.*—a **2012** case in the Fresno courthouse of the Eastern District—hourly rates as high as $695 per hour were found to accurately reflect prevailing hourly rates in a wage-and-hour case. No. 1:09-CV-01995-SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012). In *Franco v. Ruiz Food Products, Inc.*—a **2012** case in the Fresno courthouse of the Eastern District—hourly rates as high as $675 per hour were found to accurately reflect prevailing hourly rates in a wage-and-hour case. No. 1:10-CV-02354-SKO, 2012 WL

5941801, at *20 (E.D. Cal. Nov. 27, 2012) ("prevailing rates in the Eastern District of California are in the $400 range, with rates of up to $650 to $675 approved for partners and senior associates with significant years of experience"); *see also Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324-AWI-SKO, 2012 WL 5364575, at *9 (E.D. Cal. Oct. 31, 2012). The reasonable hourly rates for attorneys in this district have certainly increased since these cases.

Likewise, in *Bond v. Ferguson Enterprises, Inc.*—a case from **2011** in the Fresno courthouse of the Eastern District—a rate of $550 per hour was found to be reasonable for attorney Craig Ackerman, lead counsel in this case. *Bond v. Ferguson Enterprises, Inc.*, No. 1:09-CV-1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011). Adjusted for inflation over the past 11 years, this amounts to approximately $725.73 per hour for Mr. Ackermann.[1] *Friend v. Kolodzieczak*, 72 F.3d 1386, 1391 n. 5 (9th Cir.1995) (upward adjustment of hourly rate was "reasonable in view of inflation and rising costs of legal services"). Adjusted for the additional decade of complex litigation experience acquired by Mr. Ackermann since *Bond*, a much higher hourly rate is easily justified.

Overlooking these cases, the Report reduces the rates for all attorneys who worked on this case to a range of between $175 and $450 per hour—rates that would have been low ten years ago. Report, ECF No. 29, at 30. With attorney Craig Ackermann, for example, the Report acknowledges that Mr. Ackermann "has been exclusively practicing employment law for over twenty-four years and has successfully represented over 250,000 workers in more than 300 wage and hour class action lawsuits since 2004." Report, ECF No. 29, at 24:3–4. Nevertheless, the Report concludes that "a reasonable rate for an attorney with Mr. Ackermann's breadth of experience is $450.00 per hour." Report, ECF No. 29, at 25:11–12; *contra Bond*, 2011 WL 2648879, at *12. In essence, the Report asks this Court to find that the prevailing market rates in the Eastern District have ***gone down*** in the face of more than a decade of inflation, rising legal costs, and accumulated attorney experience. This conclusion is squarely at odds with the realities of attorney billing practices, and at odds with the evidence presented in this case. *See, e.g.*, Decl. of Nicholas Wagner, ECF No. 26-4, at 4:14–16 ("Class action litigation is very specialized and takes a high level of expertise and experience. A reasonable hourly fee for such work is between $550.00 - $750.00 per hour.").

---

[1] Coin News, *Inflation Calculator* (2022), available at https://www.usinflationcalculator.com/

**B.**     **The Eastern District, as recently as this year, has used significantly higher rates in a wage-and-hour case when doing a lodestar cross-check.**

A more sensible approach was taken in *Mondrian v. Trius Trucking, Inc.*, a 2022 case in the Fresno courthouse of the Eastern District the Court. No. 1:19-cv-00884-ADA-SKO, 2022 WL 6226843, *13 (E.D. Cal. Oct. 7, 2022). There, the Court found that fees for "partner attorneys with hourly rates from $695 to $795, associate attorneys with hourly rates from $475 to $550, and paralegals with hourly rates from $175 to $275" were "fair and reasonable." *Id.*; *see also Mathein v. Pier 1 Imports (U.S.), Inc.*, No. 1:16-cv-00087-DAD-SAB, 2018 WL 1993727, at *11 (E.D. Cal. Apr. 27, 2018) ("This court has previously accepted as reasonable for lodestar purposes hourly rates between $370 and $495 for associates, and $545 and $695 for senior counsel and partners."). Using the **lower** end of *Mondrian*'s fee schedule, an adjusted lodestar calculation would be as follows (applying the hours accepted as reasonable in the Report):

| Timekeeper | Time | Hourly Rate | Total |
|---|---|---|---|
| Craig Ackermann (Partner) | 82.20 | $695 | $57,129 |
| Avi Kreitenberg (Associate) | 91.16 | $475 | $43,301 |
| Jonathan Melmed (Owner) | 62.80 | $695 | $43,646 |
| Kyle D. Smith (Associate) | 9.40 | $475 | $4,465 |
| Laura Supanich (Associate) | 12.70 | $475 | $6,033 |
| Sharon Lin (Associate) | 3.60 | $175 | $630 |
| Lorie Gutierrez (Paralegal) | 20.80 | $175 | $3,640 |
| Jaclyn Blackwell (Staff) | 20.20 | $75 | $1,515 |
| **LODESTAR:** | | | **$160,359** |

The Report recommended a multiplier of 3.0 to the lodestar. Report, ECF No. 29, at 29:5–12. Applying the recommended multiplier to the hourly rates approved in *Mondrian*, as outlined in the table above, would result in an attorney fee award of **$481,075.50** (or roughly 20% of the common fund)—well below the Ninth Circuit's benchmark, and well below what is presumed reasonable. *Decker v. AllStates Consulting Servs., LLC*, No. 2:18-CV-03216-KJM-DB, 2020 WL 7769842, at *4

(E.D. Cal. Dec. 30, 2020) (25% benchmark is presumptively reasonable). Approving anything lower would improperly fix the fees to outdated standards that no longer reflect current market rates in the Eastern District. *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1055 (9th Cir. 2009) (fees are to be determined by application of current, rather than historic, hourly rates).

**C.    Plaintiff's evidence of appropriate local rates for employment class action lawyers in Fresno was incorrectly ignored.**

In conducting a lodestar cross-check, courts rely on "'satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Here, Plaintiff's counsel submitted evidence from Nicholas Wagner, then-senior most partner of Wagner, Jones, Kopfman & Artenian LLP (now of Wagner Law Group). Decl. of Nicholas Wagner, ECF No. 26-4. In his declaration, Mr. Wagner stated:

> "I am familiar with the reasonableness of attorney fees in the San Joaquin Valley. My firm does more class action litigation than any other law firm in the San Joaquin Valley. Class action litigation is very specialized and takes a high level of expertise and experience. A reasonable hourly fee for such work is between $550.00 - $750.00 per hour. My firm has been granted that average hourly fee in numerous class action cases. That is the reasonable fee for any jurisdiction in California for class action litigation." Decl. of Nicholas Wagner, ECF No. 26-4, at ¶ 5.

Plaintiff's counsel also submitted a declaration detailing the significant number of cases approving similar requested hourly rates. Ackermann Decl., ECF No. 26-1, at ¶¶ 12–19. Ignoring this evidence, the Report opted to rely on "its own knowledge of customary legal local rates and experience with the legal market in setting a reasonable hourly rate." Report, ECF No. 29, at 21–22.

As explained above, however, the Report's reliance on hourly rates that have remained unchanged for more than a decade failed to accurately reflect current economic and legal markets. Maintaining a static rate structure year-after-year, as proposed in the Report, violates the requirement

1  that attorneys' fees be calculated with "the **prevailing** market rates in the relevant community." *Blum*

2  *v. Stenson*, 465 U.S. 886, 895–96, n.11 (1984) (emphasis added); *see also* Dictionary.com, *Definition*

3  *of "Prevailing"* (2022), *available at* https://www.dictionary.com/browse/prevailing (defining

4  "prevailing" to mean "generally current").

5         Here, the only evidence presented concerning the reasonableness of hourly rates in the Eastern

6  District supported Plaintiff's counsel's request. Ignoring this evidence, and instead adopting outdated

7  rates for the Report's lodestar cross-check, was an error.

8         **D.      The Report erred by not using rates previously approved for Plaintiff's counsel**

9                 **in the Eastern District.**

10         Even if Plaintiff's counsel's supporting evidence were to be ignored, prior cases approving

11  Plaintiff's counsel's rates should not be. In *Bykov v. DC Transportation Services, Inc.*—a 2020 case in

12  the Sacramento courthouse of the Eastern District—Mr. Ackermann requested fees at a rate of $717

13  per hour, an amount adjusted in the nine years since *Bond* to account for inflation, the rising costs of

14  legal services in the Eastern District, and Mr. Ackermann's additional accumulated experience. *Bykov*,

15  No. 2:18-CV-1691 DB, ECF No. 26-1, at 7:12. There, the Court found that Mr. Ackermann's request

16  was "reasonable for attorneys of similar skill and experience, appearing in like cases, in this district"

17  and granted the fees request in full. *Bykov v. DC Transportation Servs., Inc.*, No. 2:18-CV-1691 DB,

18  2020 WL 1030650, at *10 (E.D. Cal. Mar. 3, 2020); *see also Scott v. Jayco Inc.*, No. 1:19-CV-0315

19  JLT, 2021 WL 6006411, at *17 n.7 (E.D. Cal. Dec. 20, 2021) (Hon. J. Thurston) ("With the Eastern

20  District, the Sacramento Division and Fresno Division award comparable rates."); *Tenorio v. Gallardo*,

21  No. 1:16-cv-00283-DAD-JLT, 2019 WL 3842892, at *2 n.1 (E.D. Cal. Aug. 15, 2019) ("This court

22  has located no authority indicating that hourly rates for attorneys in Sacramento may not be used to

23  guide the court's award of such fees in cases originating in Fresno, particularly in specialized fields of

24  litigation. Again, the typical approach looks to the *district* in which the court sits. . . . [T]his is not a

25  district court with separate divisions, as many are, but rather is a single district sitting in designated

26  locations for venue purposes.") (emphasis in original).[2]

27  ───────────────

28  [2] Plaintiff's counsel notes the perverse result that would arise if cases removed from, say, Yuba County
   were to have higher attorneys' fees applied to them than cases removed from Fresno County, solely as
   a result of how cases are assigned in this district. See E.D. Cal. R. 120(d) (designating the counties

As with the rates reflected in other prior cases, the reasonable hourly rates for attorneys in this district have certainly increased in the two years since *Bykov*, which is reflected in the rates adopted by *Mondrian v. Trius Trucking, Inc.*, No. 1:19-cv-00884-ADA-SKO, 2022 WL 6226843, *13 (E.D. Cal. Oct. 7, 2022). The Report's use of outdated rates conflicting with those previously approved for Plaintiff's counsel in the Eastern District should be rejected.

**III.    Even if reduced hourly rates are adopted, a higher lodestar is reasonable and has been approved by courts in the Ninth Circuit.**

The Report calculates Plaintiff's counsel's requested lodestar multiplier as being 5.83. Report, ECF No. 29, at 30:27. As explained above, however, this multiplier is based on hourly rates that have remained stagnant, or even gone down, over the course of more than a decade—a conclusion at odds with inflation and the realities of market rates in the Eastern District. If counsel's hourly rates were correctly adjusted to reflect those recently approved in the Eastern District in *Mondrian*, 2022 WL 6226843, at *13, the lodestar multiplier would only be **3.74**. This falls well within a reasonable range of multipliers applied in the Ninth Circuit. *In re Capacitors Antitrust Litig.*, No. 3:14-CV-03264-JD, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) ("In the Ninth Circuit, a lodestar multiplier of around 4 times has frequently been awarded in common fund cases such as this.").

As this Court recently noted, "courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 **or even higher** . . . ." *Ferrell v. Buckingham Prop. Mgmt.*, No. 119CV00332JLTBAKEPG, 2022 WL 224025, at *3 (E.D. Cal. Jan. 25, 2022) (Hon. J. Thurston) (quoting 4 Newberg on Class Actions § 14.7 with approval) (emphasis added). Indeed, "[m]ultipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (approving multiplier of 3.65). So here, a lodestar multiplier of 3.74 is reasonable based on the exceptional results for the class, the novelty and riskiness of the core

from which each location in the Eastern District is assigned cases). Accordingly, the "relevant community" for these purposes is the Eastern District generally, not just the Fresno courthouse. *Scott v. Jayco Inc.*, No. 1:19-CV-0315 JLT, 2021 WL 6006411, at *17 (E.D. Cal. Dec. 20, 2021) (Hon. J. Thurston) (law firm headquartered in Sacramento was "local" for the purposes of determining applicable rates in the relevant community).

issue in the case, and the contingent nature of Plaintiff's counsel's representation.[3] *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 955 (9th Cir. 2015).

Applying a multiplier here that brings the attorneys' fees below the Ninth Circuit's benchmark would improperly punish Plaintiff's counsel for efficiently resolving this case, encouraging counsel in future cases "to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee . . . ." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002). Notably, delay here could have had devastating effects to the class members due to the opinion in *Estrada*, 76 Cal. App. 5th at 706, discussed above, and potentially left them recovering nothing at all.

Rather than rewarding counsel for their foresight in resolving the matter before the release of adverse authority, the Report recommends cutting Plaintiff's counsel's fees nearly in half for failing to needlessly litigate this case. *See Lewis v. Starbucks Corp.*, No. 2:07-CV-00490-MCEDAD, 2008 WL 4196690, at *7 (E.D. Cal. Sept. 11, 2008) ("Use of a lodestar calculation would punish Plaintiff's counsel for the early proposed settlement, and thus may impede settlement efforts in similar cases."); *In re Critical Path, Inc.*, No. C 01-00551 WHA, 2002 WL 32627559, at *9 (N.D. Cal. June 18, 2002) ("The firms should not be unduly punished for settling early."). To avoid creating this perverse incentive, applying a multiplier as necessary to award the Ninth Circuit's benchmark is appropriate here.

Importantly, "[t]he lodestar method is merely a cross-check on the reasonableness of a percentage figure . . . ." *Vizcaino*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002). "[T]he primary basis of the fee award remains the percentage method . . . ." *Id.* at 1050. So here, application of the Ninth Circuit's 25% benchmark is appropriate and should remain the basis of the attorneys' fee award in this case.

---

[3] Of note, the Report did not find that a higher multiplier would be unreasonable in this case. Report, ECF No. 29, at 33. Instead, it merely found that the 2.87 multiplier was reasonable and "in light of the aforementioned reduction in hourly rates, that the attorneys' fees award be determined with a lodestar multiplier of 3.0." *Id.* An upward adjustment of the multiplier here is therefore consistent with the recommendations in the Report, albeit slightly modified.

**IV.    Plaintiff's requested service award should be approved, in full, due to the tremendous reputational risk Plaintiff faced, the quality of her assistance to counsel, and the excellent results achieved.**

Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Here, the Report found that $5,000 is a "presumptively reasonable" service award. Report, ECF No. 29, at 14. Indeed, this has been the presumptive default in cases dating back to at least 2009, with no corresponding adjustment for inflation or the increased risks associated with internet exposure in high-value cases. *Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau*, No. C 07-00362 MHP, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009); *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009); *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008) ("Courts have generally found that $5,000 incentive payments are reasonable.").

The Report itself cites *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. **2000**), in which service awards of $5,000 to each of the two class representatives of a class were approved in a settlement of $1.725 million. The amount of a reasonable service award has thus remained stagnant for decades. *See also In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *18 (C.D. Cal. June 10, 2005) (awarding between $5,000 and $15,000 in service awards to the named plaintiffs). Over time, however, the value of the $5,000 presumptive default has fallen quite dramatically. In 2022 terms, the $5,000 default is equal to about $3,614.07 in 2009 dollars.[4] Had the default been adjusted over time to account for inflation alone, it would be approximately $6,917.41[5]—very nearly what has been requested here.

But inflation is not the only factor that has decreased the value of the presumptive default over time. It is well-established that pursuing a class action brings with it certain reputational harms to the named plaintiff. *Rodriguez*, 563 F.3d at 958–59. With the rise of the internet and increasingly online

---

[4] Coin News, *Inflation Calculator* (2022), available at https://www.usinflationcalculator.com/
[5] *Id.*

publication of case materials, the exposure of named plaintiffs has similarly increased. Here, for example, Plaintiff sought, and won, a recovery on behalf of the class members against a Fortune 500 company at great risk to herself. Even a simple Google search of Plaintiff's name reveals that her reputation is inextricably bound to her participation in this case—**every** result on the first page of Google's search results of Plaintiff's name concerns this case. Google, *Search Results for "Mieshia Marie Jackson"* (2022), *available at* https://archive.ph/B4pr7. This would not have been the case in 2009 when the $5,000 presumptive default was set, at a time when electronic access to case records had not reached widespread availability and when Google search results were only intermittently employed by prospective employers. Plaintiff's commitment to the class in this case will necessarily have a lingering effect on her employment prospects, as future employers will likely conduct at least a cursory search of her name before employing her and will inevitably be hesitant about employing a former class representative who assisted in achieving the significant results in this case.

Moreover, as previously described in this case, Plaintiff actively and aggressively represented the class members throughout this litigation. Motion, ECF No. 27, at 16–17; Jackson Decl., ECF No. 15-7, at ¶¶ 8–10; Ackermann Decl., ECF No. 15-2, at ¶¶ 71–72. Plaintiff was an essential element in the successful prosecution and ultimate settlement of this case and was always available to provide her input on the litigation, gather evidence and provide other information that proved critical to the case. Plaintiff assisted her counsel in achieving an excellent result—the class members are expected to each receive an average gross payment of $872.33, with the highest being at least **$4,938.27**. ECF No. 27-1, at 5:10–12. Her requested service award of $7,500 represents a mere 0.3% of the $2,400,000 gross settlement amount. Given these results, it came as no surprise that not a single class member objected to the requested service award. ECF No. 27-1, at 4:21–22.

Plaintiff's requested service award also falls well-within the range of service awards approved in other cases in the Eastern District. See, e.g., *Bond v. Ferguson Enterprises, Inc.*, No. 1:09-CV-1662 OWW MJS, 2011 WL 2648879, at *2, 15 (E.D. Cal. June 30, 2011) (approving **$11,250** incentive payment to each of the two named plaintiffs in a $2,250,000 gross settlement); *Alvarado v. Nederend*, No. 1:08-CV-01099 OWW, 2011 WL 90228, at *5 (E.D. Cal. Jan. 11, 2011) (finding a **$7,500** incentive award to each of the five representatives to be reasonable in a $505,058.60 gross settlement); *Ontiveros*

*v. Zamora*, 303 F.R.D. 356, 366 (E.D. Cal. 2014) (awarding **$15,000** to the named plaintiff in a $2,000,000 settlement); Rodriguez v. Kraft Foods Grp., Inc., No. 1:14-CV-1137-LJO-EPG, 2016 WL 5844378, at *16 (E.D. Cal. Oct. 5, 2016) (approving **$10,000** service award in a $1,750,000 settlement where the average payment to the class members was $928.83). This is true even where the average recovery for the class is less than what was achieved here. *See, e.g.*, *Emmons v. Quest Diagnostics Clinical Lab'ys, Inc.*, No. 1:13-cv-00474-DAD-BAM, 2017 WL 749018, at *9 (E.D. Cal. Feb. 27, 2017) (approving award of **$8,000** in a settlement of $2,350,000 where the average class member recovery of $550). Accordingly, Plaintiff's requested service award of $7,500 is reasonable and Plaintiff respectfully requests that it be approved in full.

**V.      Conclusion**

For the foregoing reasons, Plaintiff and her counsel respectfully object to the Report and request that the Court approve an award of attorneys' fees at a rate of 25% of the gross settlement amount and Plaintiff's service award of $7,500, as originally requested.

Dated: November 1, 2022

                                                      **ACKERMANN & TILAJEF, P.C.**
                                                      **MELMED LAW GROUP P.C.**

                                                   /s/ Jonathan Melmed

                                                      **CRAIG J. ACKERMANN**
                                                      **JONATHAN MELMED**
                                                      Attorneys for Plaintiff, the Putative Class, and the Aggrieved Employees