1
2
3
4
5

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIESHIA MARIE JACKSON, et al., | Case No. 1:20-cv-00345-SAB |
| Plaintiffs, | ORDER VACATING FINDINGS AND RECOMMENDATIONS AND GRANTING IN PART FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES |
| v. | |
| FASTENAL COMPANY, | |
| Defendant. | (ECF Nos. 26, 27, 29, 33, 35) |

Plaintiff Mieshia Marie Jackson brings this action on behalf of herself and others similarly situated against Defendant Fastenal Company, alleging various wage and hour violations under California state law. (ECF No. 1-1.) Currently before the Court is Plaintiff's unopposed motion for final approval of the class action settlement and motion for attorneys' fees. (ECF Nos. 26, 27.) On October 13, 2022, the parties appeared before the Court for the hearing on the motions by videoconference. (ECF No. 28.) Attorney Avi Kreitenberg appeared on behalf of Plaintiffs; attorney Melis Atalay appeared for Defendant. No other appearances were made on this matter and the matter is now deemed submitted before Magistrate Judge Stanley A. Boone.[1] Having considered the moving papers, the declarations and exhibits attached thereto, as well as the Court's file, the Court issues the following order granting, as modified, the motions for final approval and attorneys' fees.

///

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes. (ECF Nos. 37, 38, 39.)

# I.

## BACKGROUND

### A.   Factual Background

Defendant is an industrial supply company based in Winona, Minnesota.  (See ECF No. 15-1 at 7.)  Plaintiff was employed by Defendant in California as a non-exempt employee.  (Id.)  Plaintiff's principal claim is that, during the class period, Defendant promulgated an allegedly unlawful rest period policy that required the class members to stay on the premises or in designated areas during their rest periods in violation of California Labor Code § 226.7 and Section 12 of the applicable IWC Wage Order.  (Id. at 6.)   As a result, Plaintiff and the class seek compensatory damages for all unpaid wages, penalties, expenses, pre-judgment and post-judgment interest, and fees and costs.  (ECF No. 1-1 at 27.)

The complaint brings the following causes of actions: (1) failure to pay overtime wages (Cal. Labor Code §§ 510, 1198); (2) failure to provide compliant rest breaks and/or pay missed rest break premiums (Cal. Labor Code § 226.7; IWC Wage Order); (3) failure to provide compliant meal periods and/or pay missed meal period premiums (Cal. Labor Code §§ 226.7, 512); (4) failure to reimburse business expenses (Cal. Labor Code § 2802); (5) failure to provide complete and accurate wage statements (Cal. Labor Code § 226(A)); (7) UCL Violations; and (8) PAGA penalties (Cal. Labor Code §§ 2699 et seq.).  Defendant denies any and all allegations relating to this matter and has asserted twenty-two affirmative defenses.  (ECF No. 4 at 14–19.)

### B.   Procedural History

On January 21, 2020, Plaintiff filed a putative class action against Defendant in the Stanislaus County Superior Court, on behalf of herself and all current and former California-based non-exempt individuals employed by Defendant from January 21, 2016 through July 16, 2021.  (ECF No. 1-1.)

On March 4, 2020, Defendant removed this action to the Eastern District of California.  (ECF No. 1.)  Thereafter, the parties engaged in a "robust exchange of informal discovery" and agreed to attempt to resolve the action through private mediation.  (ECF No. 27 at 8.)  After engaging in discovery and investigation of the claims and defenses, on March 1, 2021, the parties

engaged in a private mediation with wage and hour class action mediator Lou Marlin.  (Id.; ECF No. 15-2 at 10–11 (Ackermann Decl.).)  The parties were unable to settle the matter on March 1, but after several weeks of further negotiations with the assistance of Mr. Marlin, the parties agreed to resolve the case on a class-wide basis and memorialized their agreement into a Memorandum of Understanding ("MOU").  (ECF No. 27 at 8; ECF No. 15-2 at 11.)  In the following months, the parties drafted and executed the long form settlement agreement.  (ECF No. 15-2 at 11.)

On October 22, 2021, Plaintiff filed an unopposed motion for preliminary approval of the proposed class settlement agreement and for certification of the class.  (ECF No. 15.)  On December 3, 2021, the Court issued findings and recommendations to grant Plaintiff's motion for preliminary approval of class action settlement.  (ECF No. 19.)  The District Judge adopted the findings and recommendations in full on February 16, 2022.  (ECF No. 24.)  On March 1, 2022, the Court issued an order setting the hearing and schedule for the final approval of class action settlement.  (ECF No. 25.)

Pursuant to the order, on May 31, 2022, Plaintiff filed a motion for attorneys' fees and costs.  (ECF No. 26.)  On September 9, 2022, Plaintiff filed the instant motion for final approval of class action settlement.  (ECF No. 27.)  Both motions are unopposed.  On October 13, 2022, the parties appeared before the Court as detailed *supra*.  (See ECF No. 28.)  On October 19, 2022, the Court initially issued findings and recommendations, recommending the class action settlement be approved, but with reductions to the attorneys' fees request and the class representative service award.  (ECF No. 29 at 34–35.)  On November 1, 2022, Plaintiff filed objections to the findings and recommendations, arguing that the attorneys' fees and service award were reduced in error.  (ECF No. 33.)  On May 11, 2023, the parties filed a joint stipulation which appears to supplement Plaintiff's objections and further seek reconsideration of the findings and recommendations as to the attorneys' fees issue.  (See ECF No. 35.)  Thereafter, the parties consented to Magistrate Judge jurisdiction over the action, and the matter is now before this Court for final adjudication of the pending motions for final approval and attorneys' fees.  (See ECF Nos. 37, 38, 39.)

# I.

## LEGAL STANDARD

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions.  Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015).  Nevertheless, courts have long recognized that the settlement of class actions presents unique due process concerns for the absent class members.  In re Bluetooth Headset Prods. Liab. Litig. ("In re Bluetooth"), 654 F.3d 935, 946 (9th Cir. 2011).  "[T]he district court has a fiduciary duty to look after the interests of the absent class members."  Allen, 787 F.3d at 1223.

To guard against the potential for abuse, "Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate."  In re Bluetooth, 654 F.3d at 946.  Since a settlement agreement negotiated prior to formal class certification creates a greater potential for a breach of the fiduciary duty owed to the class, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."  Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1168 (9th Cir. 2013) (quoting In re Bluetooth, 654 F.3d at 946); accord Allen, 787 F.3d at 1223.

Review of the proposed settlement of the parties proceeds in two phases.  True v. Am. Honda Motor Co., 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010).  At the preliminary approval stage, the court determines whether the proposed agreement is within the range of possible approval and whether or not notice should be sent to class members.  True, 749 F. Supp. 2d at 1063.  "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing."  In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)).  At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order

to make the final fairness determination.  <u>True</u>, 749 F. Supp. 2d at 1063.

## III.

## DISCUSSION

The parties seek final approval of the class action settlement in this matter.

### A.        Final Certification of Class

To certify a class, a plaintiff must demonstrate that all of the prerequisites of Rule 23(a), and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure have been met.  <u>Wang v. Chinese Daily News, Inc.</u>, 737 F.3d 538, 542 (9th Cir. 2013).  This requires the court to "conduct a 'rigorous analysis' to determine whether the party seeking class certification has met the prerequisites of Rule 23."  <u>Wright v. Linkus Enters., Inc.</u>, 259 F.R.D. 468, 471 (E.D. Cal. 2009).

The Court has previously found that the class meets the prerequisites of numerosity, commonality, typicality, and adequacy of representation.  (<u>See</u> ECF No. 19 at 5–11; ECF No. 24.) The Court also found that common questions predominate and allowing this action to proceed as a class action is the superior method of adjudicating the controversy of these employment related claims.  (<u>See</u> ECF No. 19 at 11–12; ECF No. 24.)

No class member has objected to the settlement of this action nor has any class member opted out of the settlement.  (ECF No. 27 at 6.)  For the reasons set forth in the December 3, 2021 findings and recommendations to preliminarily grant certification of the class and the February 22, 2022 order adopting those findings and recommendations, the Court finds that the settlement classes continue to meet the requirements of Federal Rule of Civil Procedure 23(a) and (b).  (<u>See</u> ECF No. 19 at 7–12; ECF No. 24.)

Rule 23(c) provides that a class certified under Rule 23(b)(3) must be provided with the best notice that is practicable in the circumstances. Fed. R. Civ. P. 23(c)(2)(B).  In this instance, the approved notice was mailed to all 1,992 potential class members by the settlement administrator on April 11, 2022.  (ECF No. 27 at 9; ECF No. 27-1 at 3–4. (Singh Decl.).)  Eighty-nine of the notices were returned by the United States Post Office.  (ECF No. 27 at 9; ECF No. 27-1 at 4.)  Six had forwarding addresses and were re-mailed.  (<u>Id.</u>)  Addresses were located for the

1   eighty-three remaining notices via skip trace and were mailed to the new addresses.  (Id.)  Only

2   fourteen class members' addresses were unable to be located.  (Id.)  The Court finds that this

3   notice was sufficient to comply with Rule 23(c).

4           Having found the Rule 23 requirements have been met, the Court shall grant final class

5   certification.  The following class is hereby certified for settlement in this matter:

6           All hourly non-exempt individuals who are or were employed by Defendant in
        California at any point during the period from January 21, 2016 through July 16,
7           2021 (the "Class Period").

8   (See ECF No. 27 at 6.)

9           **B.      Final Approval of Class Action Settlement**

10          The Court next addresses Federal Rule of Civil Procedure 23(e)(2) which requires that any

11  settlement in a class action be approved by the court which must find that the settlement is fair,

12  reasonable, and adequate.   At the final approval stage, the court takes a closer look at the

13  settlement, taking into consideration objections and other further developments in order to make

14  the final fairness determination.  True, 749 F. Supp. 2d at 1063.

15          1.      Terms of Settlement Agreement[2]

16          To implement the terms of the proposed settlement agreement, Defendant agrees to pay a

17  gross settlement amount of $2,400,000 in exchange for full and complete satisfaction of the

18  claims released by the Agreement.  (See Agreement §§ 1, 7.)  The gross settlement amount will

19  consist of: (1) administrative expenses, not to exceed $20,000; (2) the class counsel's attorneys'

20  fees, not to exceed $600,000; (3) the class counsel's litigation costs and expenses, not to exceed

21  $20,000; (4) the incentive award, not to exceed $7,500; and (5) payment of $18,000 under

22  California's Private Attorney Generals Act ("PAGA") to the California Labor and Workforce

23  Development Agency ("LWDA").  (Id. at ¶ 7.1.)  The remaining net amount (approximately

24  $1,738,000) will be distributed as settlement shares to all participating class members (i.e., all

25  those who do not opt-out following the class notice distribution process) pro-rata based on their

26  total workweeks as a class member during the class period.  (Id. at ¶¶ 1.9, 1.25, 7.2.)  With

27

28  [2]  The full proposed settlement agreement is attached as Exhibit 1 to the Ackermann Declaration and hereby
    incorporated by reference.  (See Agreement, ECF No. 15-3.)

respect to each individual settlement amount, 20% shall constitute wages and 80% shall constitute penalties and interest.  (Id. at ¶ 5.5.)

Settlement checks shall remain valid for 180 days from the date of issue.  (Id. at ¶ 7.8.) Thereafter, the uncashed check will become void, and the amount associated with that check will be distributed to a *cy pres* to be agreed upon by the parties and approved by the Court; here, the parties have identified the Central California Legal Services, which provides free legal services to low-income populations in Fresno, Tulare, Kings, Merced, Mariposa, and Tuolumne Counties. (Id.; see also ECF No. 15-1 at 10–11 n.6; www.centralcallegal.org/pro-bono-opportunities (last visited October 13, 2022).)

The parties seek to have CPT Group, Inc. appointed as the settlement administrator. (ECF No. 27 at 2.)

Additionally, if the Court approves the parties' settlement and authorizes the dissemination of the class notice, Plaintiff's counsel will apply to the Court for an award of up to 25% of the gross settlement amount for reasonable attorneys' fees, and for reimbursement of litigation expenses not to exceed $20,000.  (Agreement ¶ 5.7; ECF No. 15-2 at 29–30.)  Plaintiff will also apply for approval of an incentive award for her efforts on behalf of the Settlement Class in this action, in an amount not to exceed $7,500.  (Agreement at ¶ 5.2.)

2.   Analysis

The court considers a number of factors in making the fairness determination including: "[a] the strength of the plaintiffs' case; [b] the risk, expense, complexity, and likely duration of further litigation; [c] the risk of maintaining class action status throughout the trial; [d] the amount offered in settlement; [e] the extent of discovery completed and the stage of the proceedings; [f] the experience and views of counsel; [g] the presence of a governmental participant; and [h] the reaction of the class members to the proposed settlement."[3]  Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).  Not all of these factors will apply to every class action settlement and one factor alone may prove

---

[3] There is no government participant in this matter so this factor is not considered in the analysis.

1   sufficient grounds for court approval.   Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.

2   (DIRECTV), 221 F.R.D. 523, 525–26 (C.D. Cal. 2004).   "The relative degree of importance to be

3   attached to any particular factor will depend upon and be dictated by the nature of the claim(s)

4   advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each

5   individual case."   Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of S.F., 688 F.2d 615,

6   625 (9th Cir. 1982).

7          **a.        The Strength of Plaintiffs' Case**

8          "An important consideration in judging the reasonableness of a settlement is the strength of

9   the plaintiffs' case on the merits balanced against the amount offered in the settlement."

10   DIRECTV, 221 F.R.D. at 526 (quoting 5 Moore Federal Practice, § 23.85[2][b] (Matthew Bender

11   3d. ed.)).   The court's role is not to reach any ultimate conclusion on the facts or law which

12   underlies the merits of the dispute as the very uncertainty of the outcome and the avoidance of

13   expensive and wasteful litigation is what induces consensual settlements.   Officers for Just., 688

14   F.2d at 625.   In reality, the reasonable range of settlement is arrived at by considering the

15   likelihood of a verdict for the plaintiff or defendant, "the potential recovery, and the chances of

16   obtaining it, discounted to a present value."   Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245,

17   255 (N.D. Cal. 2015) (quoting Rodriguez v. W. Publ'g Corp. (Rodriguez), 563 F.3d 948, 965 (9th

18   Cir. 2009)).

19          This action is based on Plaintiff's claim that Defendant promulgated a facially invalid rest

20   period policy in which it required Plaintiff and the class to remain on the company's

21   premises/designated areas during their rest periods, and that Defendant failed to authorize rest

22   periods every four hours or major fraction thereof.   (ECF No. 1.)   Plaintiff argues that, while some

23   caselaw supports her position, the likelihood of success at trial is nonetheless uncertain.   (See ECF

24   No. 15-1 at 15–20); see also, e.g., Augustus v. ABM Sec. Servs., Inc., 2 Cal. 5th 257, 269 (2016)

25   (rejecting employer's assertion that it could provide an on-duty rest period to employees who

26   worked as security guards); Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1039–40

27   (2012) (upholding class certification for rest break claim).   Plaintiff contends Defendant has raised

28   several defenses to Plaintiff's individual claims that it avers would ultimately have defeated the

1  claims of the class.  For example, Defendant contended that several federal judges have recently

2  ruled that on-premises rest period polices are lawful, that Plaintiff would not be able to certify the

3  class, and that the rest period policy at issue was not unlawful because requiring supervisor

4  permission/knowledge is not "control."  (See ECF No. 15-1 at 25–26.)

5      The settlement in this action provides the class members with substantial relief now; and

6  given the uncertainty of ultimate success at trial, the proposed settlement provides the parties with

7  a fair resolution of the issues presented which weighs in favor of settlement.

8      **b.      The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

9      "In most situations, unless the settlement is clearly inadequate, its acceptance and approval

10  are preferable to lengthy and expensive litigation with uncertain results."  DIRECTV, 221 F.R.D.

11  at 526 (quoting 4 A Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed.

12  2002)); see also Munoz v. Giumarra Vineyards Corp., No. 1:09-cv-00703-AWI-JLT, 2017 WL

13  2665075, *9 (E.D. Cal. Jun. 21, 2017) (quoting DIRECTV, 221 F.R.D. at 529).  Absent settlement

14  in this action, the parties would continue to engage in discovery, motions for summary judgment,

15  and trial, which would have likely required experts to be hired.  These costs could exceed the

16  maximum recovery in the action.

17      Further, if this action were to proceed to trial, the class would be subjected to the

18  aforementioned risks of receiving less recovery or being denied any recovery in this action.

19  Resolving the action at this time saves the parties the expense of conducting further litigation and

20  confers substantial benefit to the class without being subjected to the risks inherent with

21  proceeding to trial of the matter.

22      The risks inherent in continuing to litigate this action, the additional expenses that would be

23  incurred were this action to proceed, and the complexity of this action thus weigh in favor of

24  settlement.

25      **c.      The Amount Offered in Settlement**

26      Defendants have offered to settle this action for $2,400,000.00, with administration costs,

27  attorney fees, and the class incentive award to be paid separately.  This offer was reached after

28  extensive negotiations with a mediator, and consideration of Defendant's realistic exposure which,

1  taking into account all of its defenses to the asserted claims, amounted to $2,471,849.88.  (ECF

2  No. 27 at 15; ECF No. 15-2 at 26–27.)   Considering the aforementioned risk factors, the Court

3  finds the non-reversionary gross settlement amount of $2,400,000.00 is a fair, reasonable and

4  adequate compromise of the claims because it takes into account calculations of each class

5  member's employment records as well as the previously discussed risks and Defendant's "realistic

6  risk-adjusted exposure."

7       Thus, the Court finds that the amount offered in settlement of this action weighs in favor of

8  approving the settlement.

9       **d.      The Stage of the Proceedings**

10      A settlement that occurs in an advanced stage of the proceedings indicates that the parties

11  have carefully investigated the claims before resolving the action.  Ontiveros v. Zamora, 303

12  F.R.D. 356, 370 (E.D. Cal. 2014).  In considering the fairness of the settlement, the court's focus

13  is on whether "the parties carefully investigated the claims before reaching a resolution."

14  Ontiveros, 303 F.R.D. at 371.

15      In this action, the parties maintain they engaged in a "robust exchange of informal

16  discovery" and attempted to resolve the action through private mediation.  The informal discovery

17  productions included information about the class and aggrieved employees, the class size, number

18  of aggrieved employees, total number of weeks worked and pay periods during the class period

19  and PAGA period, Plaintiff's personnel file and timesheets, payroll date for the class, and all

20  relevant polices and handbooks.  Plaintiff therefore argues the parties exchanged sufficient

21  information to gauge the strengths and weaknesses of their claims and defenses.  Based on these

22  productions, Plaintiff's counsel drafted detailed damage models, which were incorporated in a

23  comprehensive mediation brief.  The full-day mediation was productive; however, the parties were

24  unable to settle the matter until after several weeks of further negotiations with the mediator.

25      The fact that the parties believe they engaged in sufficient discovery to weigh the merits of

26  the action weighs in favor of approving the class action settlement.

27      **e.      The Experience and Views of Counsel**

28      The Court is to accord great weight to the recommendation of counsel because they are

1   aware of the facts of the litigation and in a better position than the court to produce a settlement

2   that fairly reflects the parties' expected outcome in the litigation.  DIRECTV, 221 F.R.D. at 528

3   ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted

4   with the facts of the underlying litigation"); Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431,

5   447 (E.D. Cal. 2013) ("In considering the adequacy of the terms of a settlement, the trial court is

6   entitled to, and should, rely upon the judgment of experienced counsel for the parties.").  Class

7   counsel has collectively represented tens of thousands of employees in similar wage and hour

8   cases; thus, counsel is experienced in class action litigation.  Counsel has opined that the

9   settlement agreement in this action is fair, reasonable and adequate to the members of the class.

10  (See ECF No. 27 at 16.)  This weighs in favor of approving the class action settlement.

11           **f.       The Reaction of the Class Members to the Proposed Settlement**

12           "It is established that the absence of a large number of objections to a proposed class

13  action settlement raises a strong presumption that the terms of a proposed class settlement action

14  are favorable to the class members."  DIRECTV, 221 F.R.D. at 529.  The class here consists of

15  1,992 class members.  (ECF No. 27-1 at 3.)  No class members have filed objections or opted out

16  of the class, and no class members appeared at the hearing on the motion for final approval to

17  contest the settlement.  (See ECF No 27 at 16–17; ECF No. 27-1 at 4.)  The absence of any

18  objections is compelling evidence that the settlement is fair, adequate and reasonable.

19  DIRECTV, 221 F.R.D. at 529; see also Patel v. Axesstel Inc., No. 3:14-cv-1037-CAB-BGS,

20  2015 WL 6458073, at *6 (S.D. Cal. Oct. 23, 2015) (the "absence of a single objection to the

21  settlement is compelling evidence that the Proposed Settlement is fair, just, reasonable, and

22  adequate."); Hanlon, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class

23  willingly approved the offer and stayed in the class presents at least some objective positive

24  commentary as to its fairness.").

25           Thus, the absence of class members opting out of the class and the absence of objections

26  by class members weighs in favor of settlement.

27           **g.       Risk of Collusion**

28           The Court additionally considers the risk of collusion.  The Ninth Circuit has provided

examples of signs that a settlement is the product of collusion between the parties, such as "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds … ; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." In re Bluetooth, 654 F.3d at 947.

Here, none of the signs of collusion are present.  The class in this action is receiving a substantial award with a net settlement amount of $1,737,685.60 being distributed to the class while class counsel is seeking 20% of the common fund in attorneys' fees.[4]  Additionally, as previously noted, the settlement represented approximately 97% of Defendant's realistic, risk-adjusted exposure, the unclaimed funds in this action do not revert to the defendants, and no class members opted out or objected to the settlement.  Finally, the settlement agreement here was negotiated with the assistance of a mediator who was experienced in wage and hour litigation.  See Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 613 (E.D. Cal. 2015) (stating participation in mediation supports determination that settlement process was not collusive); Villegas v. J.P. Morgan Chase & Co., No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (stating that the fact settlement was reached following two sessions with a private mediator experienced in wage and hour class action "tend[ed] to support the conclusion that the settlement process was not collusive."); Satchell v. Fed. Express Corp., Nos. C03-2659 SI, C03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

The foregoing supports the finding that there was no collusion between the parties in reaching the agreement.

///

///

---

[4] The parties initially requested the benchmark fees amount of 25% of the common fund.  The Court, in its findings and recommendations, recommended reduction of the requested attorneys' fees based on its lodestar cross-check analysis, as discussed in its opinion.  (See ECF No. 29 at 20–33.)  However, as discussed in greater detail herein, the parties later stipulated to a request for 20% of the common fund in attorneys' fees, which the Court has found to be reasonable.  (See ECF No. 35.)

1

2

> **h.   The Factors Weigh in Favor of Approving the Class and Collective Action Settlement**

3

4

5

After considering the foregoing factors, the Court finds that the settlement is fair, adequate, and reasonable pursuant to Rule 23(e).  Further, the Court finds no evidence that the settlement is the result of any collusion between the parties.  In re Bluetooth, 654 F.3d at 946–47.

6

**C.    *Cy Pres* Award**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

Any unclaimed funds will be distributed to a *cy pres* beneficiary.  Since most class action settlements result in unclaimed funds, a plan is required for distributing the unclaimed funds.  Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1305 (9th Cir. 1990).  The alternatives available are *cy pres* distribution, escheat to the government, and reversion to the defendants.  Id. at 1307.  *Cy pres* distribution allows the distribution of unclaimed funds to indirectly benefit the entire class.  Id. at 1305.  This requires the *cy pres* award to qualify as "the next best distribution" to giving the funds directly to the class members.  Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012).  "Not just any worthy charity will qualify as an appropriate *cy pres* beneficiary[,]" there must be "a driving nexus between the plaintiff class and the *cy pres* beneficiary."  Dennis, 697 F.3d at 865 (quoting Nachshin v. AOL, LLC, 663 F.3d 1034, (9th Cir. 2011)).  "A *cy pres* award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members and must not benefit a group too remote from the plaintiff class."  Dennis, 697 F.3d at 865 (internal punctuation and citations omitted).  The *cy pres* award must "be tethered to the objectives of the underlying statutes or the interests of the class members."  Koby v. ARS Nat'l Servs., Inc., 846 F.3d 1071, 1080 (9th Cir. 2017).

22

23

24

25

26

27

28

Plaintiff has designated the legal aid organization, Central California Legal Services as the *cy pres* beneficiary to receive any unclaimed funds.  As previously noted, Central California Legal Services provides free legal services to low-income populations in Fresno, Tulare, Kings, Merced, Mariposa, and Tuolumne Counties.  (See ECF No. 15-1 at 10–11 n.6.)  The Court finds that the required nexus is present in that Central California Legal Services is providing legal services to low-income residents of the Central California counties through a variety of programs addressing employment issues, including helping workers with disputes about wages

1  and overtime pay, and providing free one-on-one consultations to workers with wage claims.

2  See www.centralcallegal.org/pro-bono-opportunities (last visited Oct. 13, 2022).   Thus, the

3  Court finds that Central California Legal Services is an appropriate *cy pres* beneficiary.

### D.      Class Representative Service Award

5          Incentive awards are "intended to compensate class representatives for work done on

6  behalf of the class, to make up for financial or reputational risk undertaken in bringing the action,

7  and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez,

8  563 F.3d at 958–59.   They are considered "fairly typical in class actions cases," Id. at 958

9  (emphasis omitted), and "are particularly appropriate in wage-and-hour actions where plaintiffs

10  undertake a significant 'reputational risk' by bringing suit against their former employers."

11  Bellinghausen, 306 F.R.D. at 267 (citation omitted); see also In re Online DVD-Rental Antitrust

12  Litig., 779 F.3d 934, 943 (9th Cir. 2015) (holding that the incentive payments to the class

13  representative by themselves do not create an impermissible conflict between the class members

14  and the class representatives).

15          In assessing the appropriateness of class representative enhancements or incentive

16  payments, the Court must consider factors such as: (1) the actions the plaintiff took to protect

17  the interests of the class; (2) the degree to which the class has benefitted from those actions; (3)

18  the duration of the litigation and the amount of time and effort the plaintiff expended in

19  pursuing litigation;   and   (4)   any   notoriety   or   personal   difficulties   encountered   by   the

20  representative plaintiff.   Khanna v. Intercon Sec. Systems, Inc., No. 2:09-CV-2214 KJM EFB,

21  2014 WL 1379861, at *10 (E.D. Cal. Apr. 8, 2014); Reibstein v. Rite Aid Corp., 761 F. Supp.

22  2d 241, 257 (E.D. Penn. 2011); see also Staton v. Boeing Co., 327 F.3d 938, 975–77 (9th Cir.

23  2003).

24          In the Ninth Circuit, courts have found that $ 5,000 is a presumptively reasonable service

25  award.   See Harris v. Vector Marketing Corp., No. C-08-5198 MEC, 2012 WL 381202, at *7

26  (N.D. Cal. Feb. 6, 2012) (collecting cases).   Where the representative seeks an award over the

27  "presumptively reasonable" amount, many courts in this Circuit also consider the proportionality

28  between the incentive payment and the range of class members' settlement awards and the

settlement amount to determine whether the requested incentive payment is excessive.  See id. (collecting cases); Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014); Hopson v. Hanesbrands Inc., No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009).  Importantly, such payments must be "scrutinize[d] carefully ... so that they do not undermine the adequacy of the class representatives."  Radcliffe, 715 F.3d at 1163 (citing Staton, 327 F.3d at 977).  Given that service awards are at the discretion of the district court, see In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000), whatever the method used, the Court must make sure that where there is a "very large differential in the amount of damage awards between the named and unnamed class members," that differential is justified by the record.  Staton, 327 F.3d at 978.

Here, the class representative is seeking a service award of $7,500.00, which is to be awarded from the gross settlement amount of $2,400,000 prior to division of the net settlement amount of $1,737,685.60 amongst the 1,992 class members.  Meanwhile, the Court notes the settlement provides an average net payment of $872.33 per class member.[5]  (ECF No. 27 at 7; ECF No. 27-1 at 5.)  As the requested service award is 8.6 times the size of the average net payment,[6] it constitutes a large differential with respect to the amounts to be awarded to the named Plaintiff versus the 1,991 unnamed class members.  The proportionality between these payments, alone, suggests the requested award amount is excessive.  In addition, however, the Court does not find that the record supports an award higher than the Ninth Circuit average of

---

[5] Plaintiff also notes that the "maximum net payment" is $4,938.27 (id.); however, there is no evidence in the record indicating how many class members would actually receive a net award close to this amount.  Indeed, in light of the fact that the average net payment is only $872.33, less than one-fourth the amount of this "maximum" net payment amount, the Court surmises the number is relatively small and the payment of $4,938.27 may even be an outlier.

[6] The Court acknowledges that, in light of the parties' stipulated reduction in attorneys' fees, this average net payment amount should increase, to some extent.  Nonetheless, even under such circumstances, the Court finds the remaining difference between the service award and average net award, in combination with the minimal actions and amount of effort Plaintiff had to expend in this case, still does not justify an incentive payment that exceeds the presumptively reasonable amount by $2,500.00, as discussed herein.  In addition, the Court notes that, while Plaintiff originally objected to the proposed reduction of the service award amount in her objections to the findings and recommendations issued in this matter prior to the parties' consent to magistrate jurisdiction (ECF No. 33 at 13–15), she proffered her withdrawal of this objection in the event that the Court adopted a 20% benchmark for the attorneys fees requested by the parties in their May 11, 2023 stipulation (see ECF No. 35 at 5).  As the Court is adopting the requested 20% fees benchmark, it finds Plaintiff's objection to the reduction in class representative award amount is withdrawn and no objections currently lie with respect to this reduction.

1    $5,000.00.

2        At the preliminary approval stage, Plaintiff submitted a declaration averring that she

3    provided invaluable assistance to class counsel by providing factual background for the

4    mediation and complaint, participated in phone calls to discuss litigation and settlement

5    strategy, and provided and reviewed relevant documents.  (ECF No. 15-7 at 3 (Jackson Decl.).)

6    Plaintiff also averred that, in agreeing to serve as class representative, she undertook a financial

7    risk because she could become liable for defense costs if she did not win in the lawsuit and

8    exposed herself to the risk of negative publicity and reputational harm.  (Id. at 3–4; see also

9    ECF No. 15-2 at 28–29.)  Class counsel similarly asserted they believed the award amount was

10   reasonable compensation "given the time and effort that Plaintiff devoted to this case," such as

11   participating in phone calls with class counsel, gathering highly relevant documents, and

12   speaking to and interviewing other class members.  (ECF No. 15-6 at 29 (Melmed Decl.); ECF

13   No. 15-2 at 28–29.)  And the parties proffered that Plaintiff signed a general release of claims

14   that is broader than the release of the other class members.  (See ECF No. 15-6 at 29.)  At the

15   preliminary approval stage, the Court found such declarations were adequate for purposes of

16   recommending preliminary approval of the service award.  (See ECF No. 19 at 23.)

17       However, the Court expressed skepticism at that time as to whether Plaintiff's

18   "comparatively high amount of $7,500 is justified" in light of Plaintiff's contributions as class

19   representative.  (Id. at 21–22.)  For example, the Court noted Plaintiff's "negative publicity and

20   reputational harm" assertion was speculative and vague, lacking a factual basis.  (Id. at 22–23

21   (citing Harris, 2012 WL 381202, at *7 (noting concerns about retaliation only apply where the

22   plaintiff is still employed by the defendant and reducing incentive award where asserted threat

23   to future employment was "entirely speculative")).)  The Court also noted the declarations were

24   vague as to Plaintiff's "invaluable" contributions, as "no one identifies the number of hours

25   Plaintiff actually spent assisting in this litigation on behalf of the class members as opposed to

26   merely her individual claims … or indicates whether Plaintiff was deposed, provided any

27   affidavits in support of the litigation, or other tasks to benefit the class as opposed to her

28   individual claims."  (Id. at 22 (citing Ogbuehi v. Comcast of CA/CO/FL/OR, Inc., 303 F.R.D.

337, 353 (E.D. Cal. 2014) (noting counsel's generalized summary of services the class representative provided was insufficient to enable the court to make a well-informed decision regarding approval of the proposed enhancement award); see also Torchia v. W.W. Grainger, Inc., 304 F.R.D. 256, 270–80 (E.D. Cal. 2014) (in determining amount of incentive to be awarded, court must consider time expended and the fairness of the plaintiff's hourly rate); Harris, 2012 WL 381202, at *7 (reducing incentive award where plaintiff failed to distinguish time spent for benefit of class from time spent on the merits of her individual claims)).)  And the Court noted Plaintiff did not indicate what additional claims she had against Defendant that she released, as compared to the other class members.  (Id. at 23.)

Finally, even though it preliminarily approved the service award amount, the Court advised Plaintiff that, on final approval, she would need to justify the full amount requested, by providing "a detailed declaration prior to the final approval hearing that describes her current employment status, any risks she faced as class representative, specific activities she performed as class representative, and the amount of time she spent on each activity, in accordance with the requirements discussed by the Court."  (Id.)  Yet, even despite the Court's statement and clearly established legal authorities that a motion for final approval is more carefully scrutinized by the court than is the preliminary approval request, see, e.g., True, 749 F. Supp. 2d at 1063, Plaintiff did not submit further declarations to support the requested incentive award payment amount.  Instead, as with many of the arguments asserted in the motion for final approval, Plaintiff appears to rely largely upon prior arguments and statements asserted in support of the motion for preliminary approval.  (See, e.g., ECF No. 27 at 17 (directly citing to Plaintiff's declaration attached to preliminary approval motion and nothing else).)  However, this is insufficient at the final approval stage.

The Court notes the parties did not engage in significant, protracted litigation in this matter; rather, after "robust" informal discovery—which appears to consist solely of document productions (see id. at 15–16)—the parties entered mediation and settled the case.  Plaintiff continues to maintain her contributions to the class were "significant," but there is no indication that she was deposed, was required to respond to discovery, or undertook other significant

1    actions.  Indeed, at the hearing on the motion for final approval, counsel conceded that Plaintiff
2    was not present at the mediation.  Furthermore, Plaintiff ignored the Court's invitation to
3    supplement the record, and instead decided to rest on her prior declaration, even though the
4    Court had discussed—at some length—the reasons as to why it would be deemed deficient at
5    the final approval stage.[7]

6         On this record, the Court cannot conclude Plaintiff has established any justification for
7    receiving an award in excess of the presumptively reasonable amount identified by the Ninth
8    Circuit, particularly where such an award significantly exceeds the award amounts of her fellow
9    class members.  Nonetheless, the Court is also mindful that, if Plaintiff had not initiated and
10   pursued this litigation, the class members would not have received any benefit.  Accordingly,
11   the Court finds that an incentive award is justified, but in the reduced amount of $5,000.00.

12        **E.    Attorney Fees**

13        In this instance, the settlement has resulted in a gross settlement amount of 2,400,000.00.
14   Class counsel originally sought $600,000.00 in attorney fees, which is 25% of the gross
15   settlement amount.  This Court initially considered the 25% benchmark too high in this case,
16   based on its Lodestar cross-check of the requested fee award within the context of reasonable
17   attorney rates and the hours reasonably expended in this litigation, and recommended a reduction
18   in fees.  (See ECF No. 29 at 20–33.)  Plaintiff initially objected to these findings; however, the
19   parties subsequently submitted a stipulated request to reduce the benchmark for fees to 20% of
20   the common fund, or $480,000.00; this represents a reduction of $120,000.00 from the
21   $600,000.00 originally requested.  (ECF No. 35 at 4–5.)  For the reasons discussed herein, the
22   Court finds the requested 20% benchmark is appropriate in this case.

23

---

24   [7] Although the Court deems Plaintiff's objections to the findings and recommendations as to the reduction of the
25   representative award to be withdrawn in light of the parties' most recent stipulation, it nevertheless addresses the
     arguments asserted therein.  In her objections, Plaintiff proffers additional argument that inflation and the increased
     risks associated with greater internet exposure than experienced by parties in cases dating back to 2009 justifies the
26   increased award.  (ECF No. 33 at 13–14.)  However, she still does not submit further information detailing the actual
     tasks or amount of time she contributed to assisting the litigation on behalf of the class members as opposed to in
27   furtherance of her personal claims, but again relies on the vague assertions made in the prior declarations of counsel
     that she "actively and aggressively represented the class members" and she was "an essential element" to the
28   prosecution of the case.  (Id. at 14 (citations omitted).)  This lack of specificity remains insufficient to persuade this
     Court that a greater award amount is warranted.

In a certified class action, reasonable attorney fees and costs may be awarded where they are authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h). Even where the parties have agreed to the attorney fee award, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable[.]" In re Bluetooth, 654 F.3d at 941. "[A] district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement" to determine whether it is " 'fundamentally fair, adequate, and reasonable' Fed. R. Civ. P. 23(e)." Staton, 327 F.3d at 963. To do so, the Court must "carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." Id.

A court "may not uncritically accept a fee request," but must review the time billed and assess whether it is reasonable in light of the work performed and the context of the case. See Common Cause v. Jones, 235 F .Supp. 2d 1076, 1079 (C.D. Cal. 2002); see also McGrath v. Cnty. of Nev., 67 F.3d 248, 254 n.5 (9th Cir. 1995) (noting a court may not adopt representations regarding the reasonableness of time expended without independently reviewing the record); Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1385 (9th Cir. 1984) (remanding an action for a thorough inquiry on the fee request where "the district court engaged in the 'regrettable practice' of adopting the findings drafted by the prevailing party wholesale" and explaining a court should not "accept[ ] uncritically [the] representations concerning the time expended").

The party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. See Fischer v. SJB–P.D., Inc., 214 F.3d 1115, 1119 (9th Cir. 2000). Therefore, a fee applicant must provide time records documenting the tasks completed and the amount of time spent. Hensley v. Eckerhart, 461 U.S. 424, 424 (1983); Welch v. Metro. Life Ins. Co., 480 F.3d 942, 945–46 (9th Cir. 2007). "Where the documentation of hours is inadequate, the district court may reduce hours accordingly." Hensley, 461 U.S. at 433.

Significantly, when fees are to be paid from a common fund, as here, the relationship between the class members and class counsel "turns adversarial." In re Wash. Pub. Power

1  Supply Sys. Sec. Litig., 19 F.3d 1291, 1302 (9th Cir. 1994).  The Ninth Circuit observed:

2      [A]t the fee-setting stage, plaintiff's counsel, otherwise a fiduciary for the class,
       has become a claimant against the fund created for the benefit of the class.  It is
3      obligatory, therefore, for the trial judge to act with a jealous regard to the rights of
       those who are interested in the fund in determining what a proper fee award is.
4

5  Id. at 1302 (internal quotation marks, citation omitted).  As a result, the district court must

6  assume a fiduciary role for the class members in evaluating a request for an award of attorney

7  fees from the common fund.  Id.; Rodriguez, 563 F.3d at 968 ("when fees are to come out of the

8  settlement fund, the district court has a fiduciary role for the class").

9      The Ninth Circuit has affirmed the use of two separate methods of calculating attorney's

10  fees, depending upon the case.  Hanlon, 150 F.3d at 1029.  In "common-fund" cases where, as

11  here, the settlement or award creates a large fund for distribution to the class, "the district court

12  has discretion to use either a percentage or 'lodestar method.' "  Id.  In consideration of the

13  evidence of record and the Court's file, this Court finds use of the percentage method is

14  appropriate in this case.

15      In the Ninth Circuit, courts typically utilize twenty-five percent of the common fund as

16  the "benchmark" for a reasonable fee award, with adjustments provided there is adequate

17  explanation in the record for any special circumstances that justify departure.  In re Bluetooth,

18  654 F.3d at 942.  Prior to In re Bluetooth, the Ninth Circuit noted the usual range for common

19  fund attorney fees is between twenty to thirty percent.  See Vizcaino v. Microsoft Corp., 290

20  F.3d 1043, 1047 (9th Cir. 2002).

21      Here, the settlement agreement provides class counsel may request fees payment of up

22  to 25% of the settlement amount (i.e., up to $600,000) and an expenses payment of up to

23  $20,000.  However, pursuant to the parties' stipulated request in this matter, counsel has

24  departed from the 25% benchmark and now seeks 20% of the settlement amount instead.  (ECF

25  No. 35.)  Counsel argues this amount is reasonable in light of class counsel's experience, the

26  time they have devoted to zealously advocating on behalf of Plaintiff and the class in this

27  action, and the fact that Plaintiff's initial retainer agreement provided for fees up to one-third of

28  the amount obtained.  (See ECF No. 15-2 at 29–30; see also ECF No. 15-6 at 28–29.)

1    The Court generally agrees.  The requested fees benchmark of 20% of the gross
2    settlement award is reasonable in light of the settlement results achieved for Plaintiff and the
3    class, in light of the risk associated with not prevailing in the litigation.  The Court also
4    acknowledges the requested benchmark represents less than many fee awards in wage-and-hour
5    class actions in California.  See, e.g., Stuart v. Radio Shack Corp., No. C-07-4499 EMC, 2010
6    WL 3155645 (N.D. Cal. Aug 9, 2010) (noting benchmark of 1/3 of total settlement was within
7    range of percentages courts have held reasonable in other class action lawsuits); Romero v.
8    Producers Dairy Foods, Inc., No. 1:05cv00484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov.
9    14, 2007) (awarding benchmark fees of 1/3 of total settlement in wage and hour class action).

10    However, the Court finds a reduction of fees from the 25% benchmark is appropriate for
11    the reasons previously discussed at length in its original findings and recommendations.  (See
12    ECF No. 29 at 17–33.)  More specifically, the Court notes its previous Lodestar cross-check
13    revealed counsel's hourly rates were not sufficiently supported in the record, and exceptional
14    circumstances did not exist to justify a Lodestar multiplier that generally exceeds the range
15    typically awarded in the Ninth Circuit, particularly where the work completed for this case did
16    not appear particularly complex or time-consuming.  For example, class counsel did not file or
17    oppose any motions before the Court in the course of litigation until seeking approval of the
18    settlement, did not face complicated factual issues, did not litigate any novel issues of law, and
19    did not indicate they were precluded from other work while prosecuting this action on
20    Plaintiff's behalf; to the contrary, the parties engaged in informal discovery and then proceeded
21    directly to mediation, which ultimately resulted in the instant settlement agreement.

22    Nonetheless, the Court also notes that, in adopting the parties' stipulated request for a
23    benchmark reduction to 20% of the gross settlement amount, the amount of fees reduced
24    ($120,000.00) will be reapportioned to the net settlement amount for distribution to the
25    settlement class members, resulting in larger settlement awards per class member than
26    previously anticipated.  Furthermore, adoption of the parties' stipulated benchmark amount at
27    this time satisfies the class members' need for expediency in the final resolution of this
28    litigation, which was initiated and has been pending since March 2020, and it eliminates the

1  need for further expenditure of time and resources—and therefore accrual of additional
2  attorneys' fees which detract from the net settlement amount to be distributed to the class—
3  merely to continue litigating and disputing the amount of attorneys' fees to be awarded in this
4  case.

5      In sum, because both the Ninth Circuit and this Court have applied benchmarks within
6  the range of 20–30% for the award of attorneys' fees in common fund cases, see In re
7  Bluetooth, 654 F.3d at 942; Rodriguez v. M.J. Brothers, Inc. (M.J. Brothers), No. 1:18-cv-
8  00252-LJO-SAB, 2019 WL 3943856 (E.D. Cal. Aug. 21, 2019), and for the other
9  aforementioned reasons, the Court finds the attorneys' fees and expenses award of 20% of the
10  gross settlement amount is reasonable under the percentage method.

11      **F.      Costs**

12          1.      Litigation Expenses

13      Counsel seeks reimbursement for costs of $11,514.40 expended in this action, which the
14  Court notes is less than the $20,000.00 amount it preliminarily approved.  "[A]n award of
15  expenses should be limited to typical out-of-pocket expenses that are charged to a fee paying
16  client and should be reasonable and necessary."  In re Immune Response, 497 F. Supp. 2d at
17  1177.

18      Upon review of the expenses submitted, the Court finds them to be reasonable.  The Court
19  shall therefore award costs in the amount of 11,514.40.

20          2.      Costs of Settlement Administration

21      The settlement agreement authorizes the reimbursement of expenses up to $20,000.00 for
22  administrative expenses.  (See ECF No. 19 at 4; Agreement ¶ 7.1.)  Ms. Singh reports the total
23  costs for services incurred and anticipated in connection with the administration of this
24  settlement by CPT Group, Inc., the Court-approved class action settlement administrator, amount
25  to $19,300.00.  (ECF No. 27-1 at 5; ECF No. 27-1 at 5.)

26      The administrative expenses requested are within the range of previous costs for claims
27  administration awarded in this District.  See, e.g., Bond, 2011 WL 2648879, at *8 ($18,000
28  settlement administration fee awarded in wage an hour case involving approximately 550 class

members); <u>Vasquez v. Coast Valley Roofing</u>, 266 F.R.D. 482, 483–84 (E.D. Cal. 2010) ($25,000 settlement administration fee awarded in wage and hour case involving approximately 170 potential class members).  Accordingly, the Court shall grant CPT Group, Inc.'s request for $19,300.00 in administration expenses for the settlement administration.

## IV.

### CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.     The October 19, 2022 findings and recommendations (ECF No. 29) are VACATED;

2.     Plaintiff's motion for final approval of class action settlement (ECF No. 27) and motion for attorneys' fees (ECF No. 26) is GRANTED, AS MODIFIED, as follows:

3.     The conditional class certification contained in the Preliminary Approval Order is deemed final, as to the class consisting of: "All hourly non-exempt individuals who are or were employed by Defendant in California at any point during the period from January 21, 2016 through July 16, 2021 (the 'Class Period')";

4.     The Notice of Proposed Class Action Settlement and Hearing Date for Court Approval and the Share Form ("Notice Packet") mailed to all class members is deemed to fairly and adequately describe the terms of the proposed settlement agreement and joint stipulation; was the best notice practicable under the circumstances; was valid, due and sufficient notice to all class members; and complied fully with Fed. R. Civ. P. 23(e)(1)(B), due process, and all other applicable laws; and afforded a full and fair opportunity to class members to participate in the final approval hearing;

5.     All 1,992 Settlement Class members are deemed bound to the order granting final approval of class action settlement and are deemed to have released the released claims defined in the settlement agreement and addendum;

6.     Craig J. Ackermann and Avi Kreitenberg of Ackermann & Tilajef, P.C., and

Jonathan Melmed of Melmed Law Group P.C. are appointed as counsel for the class, and found to be adequate counsel experienced in similar litigation;

7.   The settlement agreement and joint stipulation is deemed fair, reasonable, and adequate as to the class, Plaintiff, and Defendant, and the product of good faith, arm's-length negotiations between the parties, consistent with public policy, and fully compliant with all applicable provisions of law;

8.   The gross settlement of $2,400,000.00 is approved;

9.   Payment of up to $19,300.00 is approved to CPT Group, Inc., for fulfilling its duties as the settlement administrator;

10.   Plaintiff is awarded a class representative incentive award in the amount of $5,000.00;

11.   Plaintiff's counsel is awarded attorneys' fees in the amount of $480,000.00, and costs in the amount of $11,514.40, pursuant to Fed. R. Civ. P. 23(h);

12.   The allocation of $24,000.00 as payment for penalties under the California Labor Code Private Attorney Generals Act ("PAGA"), and payment of 75% thereof ($18,000.00) to the Labor and Workforce Development Agency for its portion of the PAGA penalties is approved;

13.   The parties and the settlement administrator are directed to, following the "Effective Date" (as defined in the settlement agreement), carry out the implementation schedule set forth in the settlement agreement;

14.   The action is DISMISSED with prejudice, with each side to bear its own costs and attorneys' fees except as otherwise provided by the settlement and ordered by the Court; and

///

///

///

///

///

15.   The Court shall retain jurisdiction to consider any further applications arising out of or in connection with the settlement.

IT IS SO ORDERED.

Dated: __**May 18, 2023**__

UNITED STATES MAGISTRATE JUDGE